1  STEPHEN YOUNG, CASB No. 58711
   steve.young@kyl.com
2  STACEY M. GARRETT, CASB No. 155319
   stacey.garrett@kyl.com
3  KEESAL, YOUNG & LOGAN
   A Professional Corporation
4  400 Oceangate, Suite 1400
   Long Beach, California  90802
5  Telephone:     (562) 436-2000
   Facsimile:     (562) 436-7416
6
   BEN SUTER, CASB No. 107680
7  ben.suter@kyl.com
   KEESAL, YOUNG & LOGAN
8  A Professional Corporation
   450 Pacific Avenue
9  San Francisco, California  94133
   Telephone:     (415) 398-6000
10 Facsimile:     (415) 981-0136

11 Attorneys for Defendants
   E*TRADE Securities LLC and
12 E*TRADE Futures LLC

13              **UNITED STATES DISTRICT COURT**

14       **NORTHERN DISTRICT OF CALIFORNIA– SAN FRANCISCO**

15

16 BENJAMIN WHITESIDES, AZIZ SI HADJ      )  Case No. 3:20-cv-5803-JSC
   MOHAND, and MATTHEW CHEUNG,            )
17 individually and on behalf of all others similarly )  Hon. Jacqueline Scott Corley
   situated,                               )
18                                         )  **E*TRADE SECURITIES LLC'S AND**
                                Plaintiffs, )  **E*TRADE FUTURES LLC'S NOTICE OF**
19                                         )  **MOTION AND MOTION TO DISMISS**
              vs.                          )  **COMPLAINT OR IN THE ALTERNATIVE,**
20                                         )  **MOTION TO STRIKE; MEMORANDUM**
   E*TRADE SECURITIES, LLC, a Delaware    )  **OF POINTS AND AUTHORITIES IN**
21 limited liability company; and E*TRADE )  **SUPPORT THEREOF**
   FUTURES, LLC, an Illinois limited liability )
22 company, and DOES 1 through 50, inclusive, )  [Fed. R. Civ. P. 12(b)(6) and 12(f)]
                                           )
23                              Defendants. )  Date:      November 19, 2020
                                           )  Time:      9:00 a.m.
24 _____ )  Place:     Courtroom E – 15th Floor

25 ///

26

27

28 ///

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on November 19, 2020 at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom E of the U.S. District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Jacqueline Scott Corley, Defendants E*TRADE Securities LLC and E*TRADE Futures LLC will move, and hereby move, for an Order dismissing the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Complaint fails to state a claim upon which relief can be granted.  In the alternative, Defendants E*TRADE Securities LLC and E*TRADE Futures LLC will move, and hereby move, for an Order striking Paragraph 32 (p. 10, line 25 – p. 11, line 2) and Paragraph 33 from the Complaint pursuant to Federal Rule of Civil Procedure 12(f) because they contain impertinent and immaterial matter that is prejudicial to E*TRADE Securities LLC and E*TRADE Futures LLC. This motion is based on this Notice of Motion, the accompanying Memorandum of Law, Request for Judicial Notice, Declaration of E*TRADE Custodian of Records Erik J. Renga, Declaration of James Reilly, all Exhibits thereto, and all other matters properly before this Court.

## DESCRIPTION OF RELIEF SOUGHT

E*TRADE Securities LLC and E*TRADE Futures LLC seek an order dismissing the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The dismissal should be without leave to amend because amendment would be futile based on the facts of this case.

In the alternative, E*TRADE Securities LLC and E*TRADE Futures LLC seek an order striking Paragraph 32 (p. 10, line 25 – p. 11, line 2) and Paragraph 33 from the Complaint pursuant to Federal Rule of Civil Procedure 12(f) because they contain impertinent and immaterial matter that is prejudicial to E*TRADE Securities LLC and E*TRADE Futures LLC.

DATED:  October 14, 2020

STEPHEN YOUNG
BEN SUTER
STACEY M. GARRETT
KEESAL, YOUNG & LOGAN
Attorneys for Defendants
E*TRADE Securities LLC and E*TRADE
Futures LLC

1

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

2          E*TRADE Securities LLC and E*TRADE Futures LLC (collectively, "E*TRADE")[1]

3    offer an electronic trading service that allows users to buy and sell securities and commodities online.

4    E*TRADE's relationship with Plaintiffs is governed by a written Customer Agreement.

5          Plaintiffs bought May 2020 crude oil futures contracts on the worst day in history for

6    crude oil investors.  On April 20, 2020, crude oil prices plummeted to historic lows, falling into

7    negative territory for the first time in history.  At times during the final 22 minutes of the trading

8    session, the price of May 2020 e-mini crude oil futures contracts traded *below zero,* meaning that

9    *sellers* had to *pay buyers* to close out the contracts.  As a result of this market turmoil, demand for the

10   May 2020 e-mini contracts evaporated and market liquidity dried up.  Plaintiffs allege that they

11   attempted to enter sell orders with negative prices (limit orders) during the last 22 minutes of trading,

12   but E*TRADE's trading system did not accept orders to sell at negative prices.

13         This action arises out of Plaintiffs' claim that E*TRADE failed to deliver trading

14   features that it never promised to provide:  access to E*TRADE's trading service "at all times," and

15   the unusual ability to enter *sell orders* at *negative prices*.  The Customer Agreement does not obligate

16   E*TRADE to deliver either of those things.  In fact, the Customer Agreement expressly *relieves*

17   E*TRADE of the obligation to provide Plaintiffs with an uninterrupted, error-free trading experience.

18   The Customer Agreement also states that E*TRADE is not liable for system failure or software

19   malfunction, both of which Plaintiffs allege happened here.  Finally, E*TRADE did not cause

20   Plaintiffs' damage.  Plaintiffs fail to plead a single fact establishing that their negatively priced sell

21   orders would have been filled in the illiquid market of April 20 if they had been entered into

22   E*TRADE's system.  This motion therefore presents the following issues to be decided under Federal

23   Rules of Civil Procedure 12(b)(6) and 12(f):

24         1.   Does the Complaint state a claim for breach of contract where:  (a) Plaintiffs fail to

25              identify a specific contract provision that E*TRADE allegedly breached;

26

27   [1] As of October 2, 2020, E*TRADE Securities LLC and E*TRADE Futures LLC became wholly
     owned subsidiaries of Morgan Stanley.

28

(b) Plaintiffs agreed that E*TRADE shall not be liable for losses arising from system failure or software malfunctions; (c) Plaintiffs agreed that limit orders may not be executed if there was insufficient market liquidity; and (d) Plaintiffs fail to plead facts establishing causation?

2. Does the Complaint state a claim for breach of the implied covenant of good faith and fair dealing where it:  (a) fails to identify the specific contractual benefit that was frustrated; (b) seeks to impose obligations that are contrary to the express terms of the Customer Agreement; (c) is duplicative of the breach of contract claim; and (d) fails to plead facts establishing causation?

3. Does the Complaint state claims for negligence or gross negligence where: (a) Plaintiffs fail to establish the existence of a legal duty independent of the Customer Agreement; (b) the tort claims seek only economic losses; (c) Plaintiffs fail to plead facts establishing causation; and (d) the Customer Agreement contains an express clause stating that E*TRADE will not be liable for negligence?

4. Does the Complaint state a claim for violation of California's Unfair Competition Law where:  (a) Plaintiffs lack standing; (b) Plaintiffs fail to establish any unlawful or unfair business practice; (c) the UCL claims are dependent on the defective breach of contract and tort claims; and (d) Plaintiffs have failed to establish a basis for either injunctive relief or restitution?

5. Does the Complaint state a claim for punitive damages?

6. Does the Complaint state a claim for attorneys' fees?

7. Does the Complaint engage in prohibited "shotgun pleading?"

8. If any claim is not dismissed, should the Court strike impertinent and immaterial matter from the Complaint consisting of (a) a settlement agreement made by a competitor online firm with its customers, (b) E*TRADE's allegedly "misleading" statement to customers after April 20, where the Complaint fails to allege facts establishing that the statement was misleading and does not plead a claim for fraud?

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................ 7

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 15

I.   STATEMENT OF FACTS ............................................................................... 15

    A.   THE PARTIES. ....................................................................................... 15

    B.   THE CUSTOMER AGREEMENT. ....................................................... 15

    C.   THE OIL MARKET CRASH AND E*TRADE'S TRADING SYSTEM.................... 17

II.  JURISDICTION ............................................................................................... 18

III. LEGAL STANDARD ...................................................................................... 18

    A.   MOTION TO DISMISS. ......................................................................... 18

    B.   APPLICABLE LAW. .............................................................................. 19

IV. ARGUMENT .................................................................................................... 19

    A.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT. ............................................................. 19

        1.   The complaint fails to identify any provision of the Customer Agreement that E*TRADE allegedly breached. ............................................. 19

        2.   The Customer Agreement excludes liability for losses caused by "system failures" and "software malfunction." ........................................ 22

        3.   Plaintiffs fail to establish that E*TRADE—as opposed to market illiquidity on April 20—caused their sell orders to go unfilled. ............................................................................. 22

    B.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING. ...................................... 25

        1.   The implied covenant claim fails to identify the specific contractual term that E*TRADE allegedly frustrated. ......................... 25

        2.   The implied covenant claim must be dismissed because it seeks to alter the express terms of the Customer Agreement. .................... 26

        3.   The implied covenant claim is duplicative of the breach of contract claim and must be dismissed as superfluous. .................... 27

        4.   The implied covenant claim fails to allege causation and damage. ................................................................................ 27

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5

C.  THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENCE OR GROSS NEGLIGENCE. ........................................................ 28

    1.  Plaintiffs fail to establish any duty independent of the Customer Agreement. ........................................................ 28

    2.  Plaintiffs' tort claims are barred by the Economic Loss Rule. ...................... 29

    3.  Plaintiffs fail to establish causation and damage. .......................................... 30

    4.  Plaintiffs' negligence claim is barred by the Customer Agreement. ........................................................ 30

D.  THE COMPLAINT FAILS TO STATE A UCL CLAIM. .......................... 31

    1.  Plaintiffs lack standing to assert a UCL claim. ............................................. 31

    2.  Plaintiffs fail to establish any "unlawful" business practice. ........................ 31

    3.  Plaintiffs fail to establish any "unfair" business practice. ............................ 32

    4.  Plaintiffs' UCL claim fails because it is dependent on the inadequately pled contract and tort claims. ...................................... 33

    5.  Plaintiffs fail to establish an entitlement to restitution or an injunction. ........................................................ 34

        a.  Plaintiffs fail to state a basis for injunctive relief. .............................. 34

        b.  Plaintiffs fail to state a basis for restitution. ...................................... 34

    6.  The UCL does not apply to securities transactions. ...................................... 36

E.  THE COMPLAINT FAILS TO STATE A CLAIM FOR PUNITIVE DAMAGES. ........................................................ 36

F.  THE COMPLAINT FAILS TO STATE A CLAIM FOR ATTORNEYS' FEES. ........................................................ 36

G.  THE COMPLAINT ENGAGES IN PROHIBITED SHOTGUN PLEADING. ........................................................ 37

H.  THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND. ........................................................ 37

I.  IF THE COMPLAINT IS NOT DISMISSED, THE IMMATERIAL AND IMPERTINENT MATTER SHOULD BE STRICKEN. ............................... 38

    1.  Interactive Brokers' settlement of complaints. ............................................... 38

    2.  E*TRADE's allegedly misleading statement regarding market liquidity. ........................................................ 39

V.  CONCLUSION ........................................................ 39

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

### FEDERAL CASES

4

*2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.*,
5
    96 F. Supp. 3d 182 (S.D.N.Y. 2015) ...................................................................28

6
*Abbate v. Wells Fargo Bank, N.A.*,
    No. CV 10-6561 DOC (RNBx)
7
    2011 U.S. Dist. LEXIS 139749, at *21 (C.D. Cal. Nov. 17, 2011) ...............................29

8
*In re Anthem Data Breach Litig.*,
9
    162 F. Supp. 3d 953 (N.D. Cal. 2016).................................................................19

10
*Artifex Software v. Hancom, Inc.*,
    No. 16-cv-06982-JSC
11
    2017 U.S. Dist. LEXIS 62815 (N.D. Cal. Apr. 25, 2017) ........................................36

12
*Ashcroft v. Iqbal*,
13
    556 U.S. 662 (2009) ............................................................................19, 33

14
*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988)..............................................................................18

15
*Barajas v. Countrywide Home Loans, Inc.*,
16
    No. CV 10-07961 DDP
    2012 U.S. Dist. LEXIS 24237 (C.D. Cal. Feb. 24, 2012) ........................................25

17
*Barnes v. AT & T Pension Ben. Plan-NonBargained Program*,
18
    718 F. Supp. 2d 1167 (N.D. Cal. 2013).................................................................38

19
*Bell Atl. Corp. v. Twombly*,
20
    550 U.S. 544 (2007) ........................................................................................18

21
*Benson v. Citibank, N.A.*,
    (N. D. Cal. Dec. 6, 2012, No. 12-0760 JSC)
22
    2012 U.S. Dist. LEXIS 199984 ...........................................................................32

23
*Berger v. Home Depot U.S.A., Inc.*,
24
    476 F. Supp. 2d 1174 (C.D. Cal. 2007) ................................................................25

25
*Berkeley v. Wells Fargo Bank*,
    No. 15-cv-00749-JSC
26
    2016 U.S. Dist. LEXIS 1295 (N.D. Cal. Jan. 6, 2016).................................... *passim*

27
*Byrne v. Nezhat*,
    261 F.3d 1075 (11th Cir. 2001)...........................................................................37

28

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5

*Card v. Ralph Lauren Corp.*,
  No. 18-cv-02553-JSC
  2018 U.S. Dist. LEXIS 147609 (N.D. Cal. Aug. 29, 2018) ................................................33

*Cedar Point Nursery v. Shiroma*,
  923 F.3d 524 (9th Cir. 2019) ................................................15

*Champion Home Builders Co. v. ADT Sec. Servs.*,
  179 F. Supp. 2d 16 (N.D.N.Y. 2001) ................................................30

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ................................................19

*Dehoog v. Anheuser-Busch InBev SA/NV*,
  899 F.3d 758 (9th Cir. 2018) ................................................37

*DocMagic, Inc. v. Ellie Mae, Inc.*,
  745 F. Supp. 2d 1119 (N.D. Cal. 2010) ................................................33

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
  525 F.3d 822 (9th Cir. 2008) ................................................32

*Gasperini v. Ctr. for Humans.*,
  518 U.S. 415 (1996) ................................................19

*Gillibeau v. Richmond*,
  417 F.2d 426 (9th Cir. 1969) ................................................23

*Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  No. 96 Civ. 7874 (RWS)
  2002 U.S. Dist. LEXIS 7535 (S.D.N.Y. Apr. 30, 2002) ................................................23

*Grant v. Aurora Loan Servs.*,
  736 F. Supp. 2d 1257 (C.D. Cal. 2010) ................................................25

*Greene v. Wells Fargo Bank, N.A.*,
  No. 18-cv-06689-JSC
  2018 U.S. Dist. LEXIS 217597 (N.D. Cal. Dec. 28, 2018) ................................................31

*Harris v. Provident Life & Accident Ins. Co.*,
  310 F.3d 73 (2d Cir. 2002) ................................................27

*Hicks v. PGA Tour, Inc.*,
  165 F. Supp. 3d 898 (N.D. Cal. 2016), *aff'd in part sub nom. vacated in part on
  other grounds*, 897 F.3d 1109 (9th Cir. 2018) ................................................33

*Kelly v. L.L. Cool J.*,
  145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994) ................................................38

- 8 -

KYL4812-6982-9579.5

*Knowles v. TD Ameritrade Holding Corp.*,
   427 F. Supp. 3d 1070 (D. Neb. 2019) ..................................................21, 26

*Landucci v. State Farm Ins. Co.*,
   65 F. Supp. 3d 694 (N.D. Cal. 2014)..........................................................27

*Linares v. CitiMortgage, Inc.*,
   No. C-14-3435 EMC
   2015 U.S. Dist. LEXIS 58919 (N.D. Cal. May 5, 2015)................................36

*Lingad v. IndyMac Fed. Bank*,
   682 F. Supp. 2d 1142 (E.D. Cal. 2010) ......................................................25

*LNC Invs. v. First Fid. Bank, N.A.*,
   173 F.3d 454 (2d Cir. 1999) ......................................................................22

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) .....................................................................15

*In re Merrill Lynch Sec. Litig.*,
   191 F.R.D. 391 (D.N.J. 1999), *aff'd sub. nom. Newton v. Merrill Lynch, Pierce,
   Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) ...................................24

*Monaco v. Bear Stearns Residential Mortg. Corp.*,
   554 F. Supp. 2d 1034 (C.D. Cal. 2008) .....................................................36

*Napster Copyright Litig. v. Hummer Winblad Venture Partners*,
   354 F. Supp. 2d 1113 (N.D. Cal. 2005)................................................34, 35

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
   392 F.3d 520 (2d Cir. 2004) ................................................................22, 27

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) .....................................................39

*O'Connor v. Wells Fargo, N.A.*,
   No. C-14-00211 DMR
   2014 U.S. Dist. LEXIS 136451 (N.D. Cal. Sept. 26, 2014) ...........................34

*Oracle USA, Inc. v. XL Glob. Servs.*,
   No. C 09-00537 MHP
   2009 U.S. Dist. LEXIS 59999 (N.D. Cal. July 13, 2009) ..............................29

*Point Prods. A.G. v. Sony Music Ent., Inc.*,
   215 F. Supp. 2d 336 (S.D.N.Y. 2002).........................................................23

*Pollok v. Vanguard Grp.*,
   No. 2:16-cv-6482-JLS-JCGx
   2017 U.S. Dist. LEXIS 182999, at *16 (C.D. Cal. Aug. 21, 2017) ................30

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5

*Prudential Ins. Co. of Am. v. Herman*,
    (C.D. Cal. Aug. 31, 2009, No. SACV 09-00432-JVS (ANx))
    2009 U.S. Dist. LEXIS 135351 ......................................................................33

*S.M. Wilson & Co. v. Smith Int'l, Inc.*,
    587 F.2d 1363 (9th Cir. 1978) .......................................................................29

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ...................................................................31, 32

*Sidney-Vinstein v. A.H. Robins Co.*,
    697 F.2d 880 (9th Cir. 1983) .........................................................................38

*Snyder v. Nationstar Mortg. L.L.C.*,
    No. 15-cv-03049-JSC
    2015 U.S. Dist. LEXIS 154680 (N.D. Cal. Nov. 13, 2015) .......................34, 37

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) .......................................................................33

*Taylor v. Bosco Credit, L.L.C.*,
    No. 18-cv-06310-JSC
    2019 U.S. Dist. LEXIS 130776 (N.D. Cal. Aug. 5, 2019) ..............................33

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .....................................................................................15

*Turner v. Wells Fargo Bank NA (In re Turner)*,
    859 F.3d 1145 (9th Cir. 2017) .......................................................................31

*Williams v. Scottrade, Inc.*,
    No. 06-10677
    2006 U.S. Dist. LEXIS 50306 (E.D. Mich. July 24, 2006) ...................... *passim*

*Winkler-Koch Eng'g Co. v. Universal Oil Prods. Co.*,
    79 F. Supp. 1013 (S.D.N.Y. 1947) .................................................................38

*WRI W. Gate S., L.P. v. Reliance Mediaworks Inc.*,
    No. 14-cv-03802-JD (JSC)
    2015 U.S. Dist. LEXIS 151186 (N.D. Cal. Oct. 1, 2015) ...............................27

*Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*,
    802 F. Supp. 2d 1078 (N.D. Cal. 2011).........................................................32

### STATE CASES

*Aas v. Superior Court*,
    24 Cal. 4th 627 (2000)..................................................................................29

KYL4812-6982-9579.5

*Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*,
   265 A.D.2d 513 (2d Dep't 1999)................................................................25

*Bank of the W. v. Superior Court*,
   2 Cal. 4th 1254 (1992)...........................................................................34, 37

*Barker v. Time Warner Cable, Inc.*,
   83 A.D.3d 750 (2d Dep't 2011)..............................................................19

*Bowen v. Ziasun Techs., Inc.*,
   116 Cal. App. 4th 777 (2004)..................................................................36

*Bristol-Myers Squibb, Indus. Div. v. Delta Star*,
   206 A.D.2d 177 (4th Dep't 1994)...........................................................29

*Capri v. L.A. Fitness Int'l, L.L.C.*,
   136 Cal. App. 4th 1078 (2006)................................................................30

*Carma Devs., Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992)..............................................................................25

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999)......................................................................31, 37

*Chavez v. Whirlpool Corp.*,
   93 Cal. App. 4th 363 (2001)...................................................................33

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   68 Cal. App. 4th 445 (1998)...................................................................21

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
   70 N.Y.2d 382 (1987).......................................................................28, 29

*Dalton v. Educ. Testing Serv.*,
   87 N.Y.2d 384 (1995)............................................................................26

*Empire Props. Corp. v. Mfrs. Tr. Co.*,
   288 N.Y. 242 (1942)..............................................................................21

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
   209 Cal. App. 4th 1118 (2012)................................................................22

*Frances T. v. Vill. Green Owners Ass'n*,
   42 Cal. 3d 490 (1986).............................................................................20

*Greystone Homes, Inc. v. Midtec, Inc.*,
   168 Cal. App. 4th 1194 (2008)................................................................28

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000)......................................................................25, 26

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5

*Hill v. State Farm Mut. Auto. Ins. Co.*,
   166 Cal. App. 4th 1438 (2008)........................................................................................26

*Hoang v. E\*TRADE Grp.*,
   151 Ohio App. 3d 363 (2003)........................................................................................23

*Inline, Inc. v. Apace Moving Sys., Inc.*,
   125 Cal. App. 4th 895 (2005)........................................................................................35

*Khoury v. Maly's of Cal., Inc.*,
   14 Cal. App. 4th 612 (1993)..........................................................................................32

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003).........................................................................................34, 35

*Kraus v. Visa Int'l Serv. Ass'n*,
   304 A.D.2d 408 (2003)..................................................................................................19

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011)..................................................................................................31

*M&T Bank Corp. v. Gemstone CDO VII, Ltd.*,
   68 A.D.3d 1747 (4th Dep't 2009).................................................................................19

*Madrid v. Perot Sys. Corp.*,
   130 Cal. App. 4th 440 (2005)........................................................................................35

*Merrill v. Navegar, Inc.*,
   26 Cal. 4th 465 (2001)..................................................................................................28

*Metro. Life Ins. Co. v. Noble Lowndes Int'l*,
   84 N.Y.2d 430 (1994)...................................................................................................22

*Mount Vernon City School Dist. v. Nova Cas. Co.*,
   19 N.Y. 3d 28 (2012)....................................................................................................37

*Murphy v. Am. Home Prods. Corp.*,
   58 N.Y.2d 293 (1983)...................................................................................................26

*Quigley v. Pet*,
   162 Cal. App. 3d 877 (1984).........................................................................................36

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
   11 Cal. App. 4th 1026 (1992)........................................................................................25

*Reznick v. Bluegreen Resorts Mgt., Inc.*,
   2017 N.Y. Slip Op. 07290 (2d Dep't Oct. 18, 2017).....................................................19

*Robinson Helicopter Co. v. Dana Corp.*,
   34 Cal. 4th 979 (2004)..................................................................................................29

E\*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5

*Seely v. White Motor Co.*,
    63 Cal. 2d 9 (1965) ............................................................................................29

*Sheen v. Wells Fargo Bank, N.A.*,
    38 Cal. App. 5th 346, 356 (2019) ......................................................................28

*Simmons v. S. Pac. Transp. Co.*,
    62 Cal. App. 3d 341 (1976) ................................................................................36

*Solomon v. New York*,
    66 N.Y.2d 1026 (1985) .......................................................................................28

*Third Story Music, Inc. v. Waits*,
    41 Cal. App. 4th 798 (1995) ..............................................................................27

*In re Tobacco Cases II*,
    240 Cal. App. 4th 779 (2015) ............................................................................34

*US Ecology, Inc. v. State*,
    129 Cal. App. 4th 887 (2005) ............................................................................23

*Wilens v. TD Waterhouse Grp., Inc.*,
    120 Cal. App. 4th 746 (2003) .....................................................................23, 35

*Wolkowitz v. Redland Ins. Co.*,
    112 Cal. App. 4th 154 (2003) ............................................................................27

**FEDERAL STATUTES AND RULES**

17 C.F.R.
    Rule 1.55.............................................................................................................24
    Rule 1.55(a) ........................................................................................................17
    Rule 1.55(b) ........................................................................................................17

28 U.S.C.
    § 1332(a)(1) ........................................................................................................18
    § 1332(d)(2) ........................................................................................................18
    § 1367(a) .............................................................................................................18

Fed. R. Civ. P.
    Rule 8.................................................................................................................37
    Rule 8(a) .............................................................................................................37
    Rule 8(a)(2) ........................................................................................................37
    Rule 12(b)(6) ...............................................................................................15, 18
    Rule 12(f) ...........................................................................................................38

Fed. R. Evid.
    Rule 408 .............................................................................................................38

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

1

**STATE STATUTES AND RULES**

Cal. Bus. & Prof. Code
  § 17200 ...................................................................................................................31
  § 17203 ...................................................................................................................35
  § 17204 ...................................................................................................................31

Cal. Civ. Code
  § 1641 .....................................................................................................................21
  § 3294(a) ................................................................................................................36

Cal. Civ. Proc. Code
  § 1021 .....................................................................................................................37

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. STATEMENT OF FACTS

3

### A.     THE PARTIES.

4

E*TRADE offers an electronic trading service that allows users to buy and sell

5

securities and commodities online.  (Compl. ¶1.)  Plaintiffs Whitesides, Mohand and Cheung are

6

customers of E*TRADE Securities LLC and E*TRADE Futures LLC and each accepted the terms of

7

E*TRADE's "Customer Agreement." [2]  (Compl. ¶¶12, n.2, 13, 34, 39, 45, 66, 67 and 71.)

8

### B.     THE CUSTOMER AGREEMENT.

9

The Customer Agreement governs the terms of E*TRADE's relationship with its

10

customers, including all products and services that E*TRADE offers.  (Compl. ¶¶12, n.2, 13, 34, 39,

11

45, 66, 67 and 71.)  The "**Service**" means "the securities brokerage, commodity futures brokerage,

12

financial, and other services that E*TRADE may offer from time to time."  (Renga Decl., Ex. 1, p. 4,

13

§2, "**DEFINITIONS**," and "**Service**.")

14

The Customer Agreement limits E*TRADES obligations to account holders in several

15

important ways.  First, E*TRADE did not promise to provide Plaintiffs with access to its trading

16

service at all times.  The Customer Agreement states that "… E*TRADE does not guarantee

17

uninterrupted access to the Service or to any feature of the Service." (Renga Decl., Ex. 1, p. 27, §11,

18

---

19

[2] The Customer Agreement attached as Exhibit A to the Complaint was not effective until June 30, 2020, two months *after* the events at issue in this case.  (Compl., ¶12, n.2.)  The operative Customer

20

Agreement for Plaintiffs Whitesides and Mohand is the version effective October 1, 2018. (Declaration of Erik J. Renga, E*TRADE Custodian of Business Records dated 10/13/2020 ("Renga

21

Decl."), ¶6.)  The operative Customer Agreement for Plaintiff Cheung is the version effective April 15, 2019.  (Renga Decl., ¶7.)  True and correct copies of the E*TRADE Customer Agreements

22

effective October 1, 2018 and April 15, 2019 are attached as Exhibits 1 and 2 to the Renga Declaration.  The October 1, 2018 and April 15, 2019 Customer Agreements are substantially similar.

23

E*TRADE's Motion to Dismiss therefore refers to the operative sections of the Customer Agreement effective October 1, 2018.  (Renga Decl., Exh. 1.) The Court may consider the Customer Agreements

24

attached to the Renga Declaration as Exhibits 1 and 2 because they are incorporated by reference in the Complaint.  (Compl. ¶¶12, n.2, 34, 39, 45, 66, 67 and 71.) *Tellabs, Inc. v. Makor Issues & Rights,*

25

*Ltd.*, 551 U.S. 308, 322 (2007);  *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019) (in ruling on a motion to dismiss pursuant to Rule 12(b)(6), court may consider documents

26

incorporated by reference in the complaint and matters of which the court may take judicial notice);

27

*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (same).

28

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5

"**TRADING SYSTEM**.")  Second, E*TRADE did not promise to provide Plaintiffs with a flawless, error-free trading experience.  The Customer Agreement states that E*TRADE shall not be liable for any loss caused by a system failure or a software malfunction (Renga Decl., Ex. 1, p. 30-31, §14, "**LIMITATION OF LIABILITY,**" and "**No Liability for Indirect, Consequential, Exemplary, or Punitive Damages; Force Majeure**" ¶(ii); and p. 3, §2, "**DEFINITIONS**" and "**Force Majeure Event**"), and disclaims any representation that any Automated System will operate uninterrupted or be error-free.  (Renga Decl., Ex. 1, p. 31, §14, "**LIMITATION OF LIABILITY,**" and "**Automated Systems**.")  The Customer Agreement also warns Plaintiffs that limit orders may not be executed if there is insufficient market liquidity.  (Renga Decl., Ex. 1, p. 23-24, §10 "**TRADING PROVISIONS**," and "**Order Types; Generally**.")  A "limit order" is an order to buy or sell a stock or commodity at a specific price or better.  (Request for Judicial Notice ("RJN") Fact 1, Ex. 1.)  A limit order is not guaranteed to execute.  (RJN Fact 1, Ex. 1.)  Finally, the plain language of the Customer Agreement makes it clear that E*TRADE does not guarantee the timeliness, accuracy or completeness of any "Market Data" that it provides to customers.  "Market Data" is "all data distributed by E*TRADE regarding bids, offers, and market transactions and all information based on any such data."  (Renga Decl., Ex. 1, p. 4, §2, "**DEFINITIONS**" and "**Market Data**.")  The Customer Agreement expressly states that E*TRADE does not "guarantee … the timeliness, sequence, accuracy, or completeness of Market Data," and Plaintiffs expressly agreed that E*TRADE is not liable for losses "arising out of or relating to … (i) any inaccuracy, defect, or omission in Market Data; (ii) any error or delay in the transmission of Market Data; or (iii) any interruption in Market Data due to any cause beyond the control of E*TRADE or the Market Data Providers respectively.'"  (Renga Decl., Ex. 1, p. 28, §11, "**TRADING SYSTEM**" and "**Market Data**.")

The Customer Agreement incorporates additional important disclosure documents.  One of these is the "CFTC 1.55 Risk Disclosure Statement" which Plaintiffs acknowledged they received, read and understood.  (Renga Decl., Ex. 1, p. 32, §16(x), "**OTHER PROVISIONS AND DISCLOSURES**," "**Receipt and Review of Certain Disclosures**.")  (A true and correct copy of the Risk Disclosure Statement is attached to the Renga Declaration at Exhibit 3.)  The CFTC Risk Disclosure Statement is approved by the Commodities Futures Trading Commission and is required by

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

17 C.F.R. §1.55(a) and (b).  Plaintiffs understood and agreed that that "Under certain market conditions, [they] may find it difficult or impossible to liquidate a position. This can occur, for example, when the market reaches a daily price fluctuation limit ('limit move')."  (Renga Decl., ¶7, Ex. 3, p. 2, §9.)  Plaintiffs agreed to these terms.  (Compl. ¶¶12 n.2, 13, 34, 39, 45, 66, 67 and 71.)

## C.    THE OIL MARKET CRASH AND E*TRADE'S TRADING SYSTEM.

E*TRADE Futures, LLC is a registered Futures Commission Merchant with the Commodities Futures Trading Commission and facilitates trades in futures contracts.  A futures contract is an agreement to buy or sell a commodity (or other cash settled commodity or index-based contract) at a predetermined price at a specified time in the future.  (Compl. ¶21.)  The futures contract at issue in this case are May 2020 "e-mini"[3] contracts on West Texas Intermediate ("WTI") crude oil.  (Compl. ¶¶3, 4, 35, 40, and 46.)  These futures contracts trade on the New York Mercantile Exchange (NYMEX), owned by the Chicago Mercantile Exchange (CME) Group, Inc.  (Compl. ¶3.)

In early 2020, the global coronavirus pandemic caused a precipitous decline in demand for oil.  (Compl. ¶23.)  On March 9, 2020, the price of WTI fell 25%, the largest single-day decline it had suffered in decades.  (Compl. ¶24.)  Within 10 days, the price of WTI fell below $21 per barrel, which was an 18-year low and less than half the price of just two weeks prior.  (Compl. ¶24.)

On April 20, 2020—in a falling market and on the last trading day for May 2020 crude oil futures—Plaintiffs each bought one or more "e-mini" May 2020 WTI crude oil futures contracts.  (Compl. ¶¶35, 40, 41, and 46.)  At 11:50 a.m. EDT[4], the price of the May 2020 contract plummeted to $4.00 a barrel.  (Compl. ¶30.)  At approximately 3:08 p.m. EDT (2:08 p.m. CDT), the price of the May 2020 WTI crude oil contract fell below zero.  (Compl. ¶30.)  Between 3:08 p.m. EDT (2:08 p.m. CDT) and the end of the trading session (3:30 p.m. EDT / 2:30 p.m. CDT), market liquidity dried up;

---

[3] An "e-mini" is an electronically traded futures contract that is a fraction of the value of a corresponding standard futures contract.  These contracts are settled for cash instead of physical delivery of oil.  (Compl. ¶22.)

[4] On April 20, 2020, the Eastern Time Zone of the United States observed daylight saving time (Eastern Daylight Time ("EDT")) and was one hour later than Central Daylight Time ("CDT").  (RJN Fact 3, Ex. 3.)  In other words, 3:00 p.m. EDT was 2:00 p.m. CDT.

KYL4812-6982-9579.5

1   only 64 e-mini WTI May 2020 crude oil futures contracts were traded *worldwide on the CME*. (RJN

2   Fact 4 and Ex. 4.)[5]  Of these, only 41 contracts traded at negative prices.  (RJN Fact 4, Ex. 4.)  This is

3   a fraction of the usual market volume.  For example, the 10 previous trading sessions saw volume of

4   25,429 - 99,555 e-mini WTI crude oil May 2020 contracts being traded.  (RJN Fact 5,  Ex. 5.)  In

5   addition, the volume of e-mini WTI crude oil May 2020 contracts traded in the last 22 minutes of the

6   trading session on April 20, 2020 (64 contracts) was a small fraction of the volume of the

7   same contracts traded in the last 22 minutes of the three previous trading sessions.  (RJN Facts 4-8,

8   Ex. 4 - 8.)  In the last 22 minutes of trading on April 17, April 16 and April 15, the trading volume

9   was 967 contracts, 1,190 contracts, and 2,748 contracts, respectively.  (RJN Facts 5-8, Ex. 5 - 8.)

10          Plaintiffs allege that E*TRADE's online trading system did not display negative

11  contract prices on April 20 and did not permit customers to enter limit orders to sell contracts at

12  negative prices.  (Compl. ¶¶5, 50.)  Plaintiffs' e-mini May 2020 WTI crude oil futures contracts

13  expired at 5:00 p.m. on April 20 and were closed at a price of -$37.63.  (Compl. ¶¶36, 42, 47.)

14                          **II.  JURISDICTION**

15          Plaintiffs allege subject matter jurisdiction exists under 28 U.S.C. §1332(d)(2).

16  E*TRADE contends that subject matter jurisdiction exists under 28 U.S.C. §§1332(a)(1) and 1367(a).

17                         **III.  LEGAL STANDARD**

18      **A.      MOTION TO DISMISS.**

19           A claim may be dismissed based on the lack of a cognizable legal theory or the absence

20  of sufficient facts alleged under a cognizable legal theory. Fed. R. Civ. P. 12(b)(6); *Balistreri v.*

21  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  The complaint must plead "enough facts to

22  state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

23  ─────────────────────
24  [5] Courts regularly take judicial notice of information reported by Bloomberg Finance L.P. because it is
     a reliable source of financial data.  (RJN Facts 4-8.)  The Bloomberg data attached to E*TRADE's
25  Request for Judicial Notice as Exhibits 4 – 8 reflects time, price and volume of e-mini WTI May 2020
     contracts traded April 20 – April 15, 2020.  (RJN Ex. 4 – 8; Declaration of James Reilly dated
26  October 13, 2020 ("Reilly Decl."), ¶¶3-9.)  The Bloomberg time and price reports display the time of
     transactions using a 24-hour clock, so that 14:00 is the equivalent of 2:00 p.m.  In addition, the
27  Bloomberg reports display the time in the Central time zone (2:00 p.m. CDT is 3:00 p.m. EDT).  (RJN
     Fact 3, Ex. 3.)

28

(2007).  Threadbare recitals of elements of a cause of action, supported by conclusory statements, do not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court is not required to accept as true allegations that are contradicted by exhibits attached to the complaint.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### B.   APPLICABLE LAW.

Because the Court is sitting in diversity, it applies state substantive law and federal procedural law.  *Gasperini v. Ctr. for Humans.*, 518 U.S. 415, 427 (1996).  The Customer Agreement contains a New York choice of law clause.  (Renga Decl., Ex. 1, p. 34, §16, "**OTHER PROVISIONS AND DISCLOSURES**," and "**Choice of Law**.")  If the Court does not apply New York law, California law will apply to Plaintiff Mohand's claims and to the UCL claims.  Plaintiffs fail to state a plausible claim under either New York or California law.

## IV.  ARGUMENT

### A.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

A plaintiff asserting a breach of contract claim must allege facts sufficient to establish: (1) the existence of contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) that the plaintiff suffered damage as a result of the defendant's breach. *Reznick v. Bluegreen Resorts Mgt., Inc.*, 2017 N.Y. Slip Op. 07290 (2d Dep't Oct. 18, 2017); *Berkeley v. Wells Fargo Bank*, No. 15-cv-00749-JSC, 2016 U.S. Dist. LEXIS 1295, at *15 (N.D. Cal. Jan. 6, 2016) (citing *First Com. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)).

#### 1.   The complaint fails to identify any provision of the Customer Agreement that E*TRADE allegedly breached.

With respect to the first requirement—the need to plead the contract—the plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached.  *Barker v. Time Warner Cable, Inc.*, 83 A.D.3d 750, 751 (2d Dep't 2011); *M&T Bank Corp. v. Gemstone CDO VII, Ltd.*, 68 A.D.3d 1747, 1750-51 (4th Dep't 2009).  A complaint that fails to do so must be dismissed.  *Id; Kraus v. Visa Int'l Serv. Ass'n*, 304 A.D.2d 408, 408 (2003).  The law is the same in California.  *In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953, 978-79 (N.D. Cal.

KYL4812-6982-9579.5

2016) (contract claim dismissed where complaint failed to identify any contractual provision allegedly breached); *Frances T. v. Vill. Green Owners Ass'n*, 42 Cal. 3d 490, 512 (1986) (same).

Plaintiffs fail to identify any specific provision of the Customer Agreement that E*TRADE allegedly breached.  Instead, Plaintiffs allege generally that the Customer Agreement obligated E*TRADE to provide trading services "at all times" (Compl. ¶73), but Plaintiffs fail to identify any specific provision of the Customer Agreement that creates this obligation.  Plaintiffs cannot do so because the obligation does not exist.  In fact, the Customer Agreement expressly *relieves* E*TRADE of any obligation to provide uninterrupted, error-free access to its trading service. (Renga Decl., Ex. 1, p. 27, §11, "**TRADING SYSTEM**;" see also §14, "**LIMITATION OF LIABILITY**," and "**No Liability for Indirect, Consequential, Exemplary, or Punitive Damages; Force Majeure**" ¶(ii); and p. 3, "**Force Majeure Event.**")

Plaintiffs also allege that the Customer Agreement "acknowledges" that E*TRADE "may make available 'Market Data'" to customers (Compl. ¶67) and they complain that E*TRADE's system failed to display accurate negative prices (Compl. ¶¶5, 50).  Again, Plaintiffs fail to identify any specific provision of the Customer Agreement that E*TRADE allegedly breached.  The plain language of the Customer Agreement makes it clear that E*TRADE does not guarantee the timeliness, accuracy or completeness of any "Market Data" that it provides to customers.  "Market Data" is "all data distributed by E*TRADE regarding bids, offers, and market transactions and all information based on any such data."  (Renga Decl., Ex. 1, p. 4, §2, "**DEFINITIONS**" and "**Market Data**.")  The Customer Agreement expressly states that E*TRADE does not "guarantee ... the timeliness, sequence, accuracy, or completeness of Market Data," and Plaintiffs expressly agreed that E*TRADE would not be liable for losses "arising out of or relating to ... (i) any inaccuracy, defect, or omission in Market Data; (ii) any error or delay in the transmission of Market Data; or (iii) any interruption in Market Data due to any cause beyond the control of E*TRADE or the Market Data Providers respectively.'" (Renga Decl., Ex. 1, p. 27-28, §11, "**TRADING SYSTEM**" and "**Market Data**.")

Finally, Plaintiffs allege that E*TRADE breached the Customer Agreement by failing to provide technological systems, infrastructure and alternate means to allow Plaintiffs to enter sell orders at negative prices.  (Compl. ¶68.)  This allegation adds nothing to Plaintiffs' broader (and

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

1   incorrect) allegation that E*TRADE was obligated to provide Plaintiffs with access to its trading

2   services "at all times." (Compl. ¶73.) Plaintiffs fail to point to any provision of the Customer

3   Agreement that obligates E*TRADE to provide Plaintiffs with any technological systems,

4   infrastructure or alternate means to enter orders to sell contracts at negative prices. The Customer

5   Agreement must be read as a whole, so as to give effect to every part. *Empire Props. Corp. v. Mfrs.*

6   *Tr. Co.*, 288 N.Y. 242, 248 (1942); Cal. Civ. Code §1641; *City of Atascadero v. Merrill Lynch, Pierce,*

7   *Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998).

8         The decision in *Williams v. Scottrade, Inc.*, No. 06-10677, 2006 U.S. Dist. LEXIS

9   50306, at *7-13 (E.D. Mich. July 24, 2006) is instructive. In *Williams,* the plaintiffs alleged that

10   Scottrade's online trading platform provided users with inaccurate average price information for four

11   months due to a software malfunction. Plaintiffs alleged that Scottrade breached its contract by failing

12   to provide accurate average price data and by failing to provide "reliable, fast and efficient state of the

13   art computer systems." The court dismissed the contract claim because plaintiffs failed to point to any

14   contract language in which Scottrade agreed to provide either of these things. *Id.* at *8.

15         The decision in *Knowles v. TD Ameritrade Holding Corp.*, 427 F. Supp. 3d 1070 (D.

16   Neb. 2019) also is apt. In *Knowles*, the putative plaintiff class sued TD Ameritrade after a

17   "computerized trading feature" provided by TD Ameritrade allegedly failed to work as described. *Id.*

18   at 1075. The plaintiffs alleged that TD Ameritrade failed "to properly create, establish, manage, and

19   administer the [trading] feature" and to provide appropriate technical support. *Id.* at 1080. The court

20   found that the plaintiffs' complaint failed to state a breach of contract claim because it failed to allege

21   a contractual provision that TD Ameritrade violated and failed to allege facts establishing that TD

22   Ameritrade broke any promises to the plaintiffs. *Id.* at 1079.

23         The Court should be guided by *Williams* and *Knowles.* Plaintiffs have failed to identify

24   any specific provision of the Customer Agreement that E*TRADE allegedly breached. Plaintiffs have

25   failed to identify any term in the Customer Agreement that obligates E*TRADE to provide Plaintiffs

26   with uninterrupted access to its trading service "at all times," or to provide Plaintiffs with the ability to

27   enter orders to sell contracts at negative prices. Plaintiffs' contract claim therefore must be dismissed.

28   *///*

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

2. **The Customer Agreement excludes liability for losses caused by "system failures" and "software malfunction."**

Plaintiffs allege that their losses were caused by a 22-minute period on April 20, 2020 when E*TRADE's trading system "locked out users attempting to enter orders with negative values." (Compl. ¶¶5, 30 and 31.)  Plaintiffs do not claim that they could not enter market orders.  A "market order" is an order to sell a stock at the best available price.  (RJN Fact 2, Ex. 2.)  Plaintiffs allege that the events of April 20 "exposed serious bugs in [E*TRADE's] software" (Compl. ¶32), resulting in a "system failure." (Compl. ¶¶35, 36, 41, 42, 46, and 47.)

Plaintiff's claim for damages arising out of "bugs in [E*TRADE's] software" and a "system failure" are barred by the plain language of the Customer Agreement.  The Customer Agreement contains a conspicuously marked "**LIMITATION OF LIABILITY**" clause stating that E*TRADE shall not have liability for any loss caused by a "Force Majeure Event," (Renga Decl., Ex. 1, p. 30-31, §14 "**No Liability for Indirect, Consequential, Exemplary, or Punitive Damages; Force Majeure**" ¶(ii); and p. 3, "**Force Majeure Event**"), which includes "…system or power failures" and "software malfunction."  (Renga Decl., Ex. 1, p.3, §2, "**DEFINITIONS**" and "**Force Majeure Event**.")  Parties may contractually agree to limit liability.  *Metro. Life Ins. Co. v. Noble Lowndes Int'l*, 84 N.Y.2d 430, 436 (1994); *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012).

As in *Williams v. Scottrade*, Plaintiffs' contract claim is barred by the plain language of the Customer Agreement and must be dismissed.  *See Williams*, 2006 U.S. Dist. LEXIS 50306, at *9-10 (court dismissed contract and tort claims because plaintiff's agreement with Scottrade specifically relieved Scottrade for losses caused by "equipment / software malfunction" and relieved Scottrade of liability for inaccurate information or market data).

3. **Plaintiffs fail to establish that E*TRADE—as opposed to market illiquidity on April 20—caused their sell orders to go unfilled.**

Causation and injury are essential elements of Plaintiffs' contract claim.  *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004).  The alleged breach must be the cause in fact of Plaintiffs' loss.  *LNC Invs. v. First Fid. Bank, N.A.*, 173 F.3d 454, 464-65 (2d Cir.

1    1999) (applying New York law).

2         To establish causation under New York law, Plaintiffs must establish that "but for" the

3    alleged breach of contract, the injury they suffered would not have occurred.  *Granite Partners, L.P. v.*

4    *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 96 Civ. 7874 (RWS), 2002 U.S. Dist. LEXIS 7535,

5    at *5 n.5 (S.D.N.Y. Apr. 30, 2002).  The burden is on the plaintiff to prove that the defendant's breach

6    was significant, if not the exclusive, cause of the injury.  *Point Prods. A.G. v. Sony Music Ent., Inc.*,

7    215 F. Supp. 2d 336, 343 (S.D.N.Y. 2002).  If the injury would have occurred in the absence of the

8    breach, "but for" causation is lacking.  *Granite Partners, L.P.*, 2002 U.S. Dist. LEXIS 7535, at *5 n.5.

9         California follows a similar rule.  The test for causation in a contract action is whether

10   the breach was a substantial factor in causing the damages.  *US Ecology, Inc. v. State*, 129 Cal. App.

11   4th 887, 909 (2005).  Conduct is not a substantial factor in causing harm if the same harm would have

12   occurred without that conduct.  Judicial Council of the California Civil Jury Instructions ("CACI")

13   430 (2020).  There is little distinction in practice between the "substantial factor" and "but for"

14   causation tests.  *Point Prods. A.G.*, 215 F. Supp. 2d at 344.

15        Plaintiffs fail to plead any facts establishing that E*TRADE—as opposed to market

16   illiquidity on April 20—caused their sell orders to go unfilled.  Stated differently, Plaintiffs fail to

17   establish that "but for" the fact that E*TRADE's trading system did not allow users to enter limit

18   orders to sell contracts at negative prices, the CME (NYMEX) would have accepted and executed

19   Plaintiffs' orders and Plaintiffs would have sold their e-mini WTI May 2020 futures contracts on

20   April 20 at any particular price.[6]  Plaintiffs fail to allege facts establishing what time they allegedly

21   _____

22   [6] In addition, each putative class member must establish causation and an entitlement to damages,
     meaning that they each must prove that they tried to sell their May 2020 oil futures contracts in the
23   last 22 minutes of the trading session on April 20, 2020 and that their sell orders would have been
     filled but for the inability to place orders with negative values through E*TRADE's system.  For that
24   reason (among others), the individual issues in this putative class action predominate over common
     issues.  *Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746, 756-57 (2003) (affirming order
25   denying certification of a class action arising out of interruptions in TD Waterhouse's online trading
     services); *Hoang v. E*TRADE Grp.*, 151 Ohio App. 3d 363, 371 (2003) (reversing trial court order
26   certifying class action in case arising out of an interruption of online trading service).  If any claim is
     not dismissed, E*TRADE will raise these issues at the class certification stage.  *Gillibeau v.*
27   *Richmond*, 417 F.2d 426, 432 (9th Cir. 1969).

28

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5

attempted to enter their negatively priced sell orders, the negative price(s) Plaintiffs allegedly

specified in their orders, and whether their orders to sell at the specified price would have been filled.

In reality, between 3:08 p.m. EDT and the end of the trading session (3:30 p.m. EDT), market

liquidity dried up.  Demand for the contracts evaporated and buyers exited the market; only 64 e-mini

WTI May 2020 crude oil futures contracts were traded *on the CME worldwide,* in contrast to

thousands of contracts that are bought or sold on a trading day with average trading volume.  (RJN

Facts 4-8 and Ex. 4-8.)  Of the 64 e-mini WTI May 2020 crude oil futures contracts that traded on

April 20, *only 41 contracts traded at negative prices*.  (RJN Fact 4, Ex. 4.)  This is a fraction of the

usual market volume.  The trading volume on April 20, 2020 for the e-mini WTI crude oil May

2020 contracts was drastically reduced from the volume traded in the prior two months.  (RJN Fact 5,

Ex. 5.)  In addition, the volume of e-mini WTI crude oil May 2020 contracts traded in the last

22 minutes of the trading session on April 20, 2020 was a tiny fraction of the volume of the

same contracts traded in the last 22 minutes of the three previous trading sessions.  (RJN Facts 6-8,

Exs. 6-8.)  On April 20, 2020 only 64 contracts traded in the last 22 minutes of the trading session, as

compared to the last 22 minutes of trading on April 17, April 16 and April 15, when 967, 1,190, and

2,748 contracts traded, respectively.  (RJN Facts 6-8, Ex. 6-8.)  The fact that E*TRADE's system did

not allow Plaintiffs to enter negatively priced limit orders to sell their contracts therefore was not the

cause in fact of Plaintiffs' alleged damages because Plaintiffs would have experienced the same harm

(unfilled sell orders) even if the orders had been placed.[7]  If there were insufficient buyers or if the

price Plaintiffs ultimately received was the best price available, Plaintiffs cannot establish causation or

damage.  *In re Merrill Lynch Sec. Litig.*, 191 F.R.D. 391, 397 (D.N.J. 1999) (same), *aff'd sub. nom.*

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 158 (3d Cir. 2001).  Plaintiffs

have failed to establish causation and their claim therefore should be dismissed.

---

[7] The Customer Agreement warned Plaintiffs that limit orders may not be executed if there is insufficient market liquidity offered at or better than the limit price specified in the order.  (Renga Decl., Ex. 1, p. 24, §10 **TRADING PROVISIONS**," and "**Order Types; Generally,**" (iii).), and that "[u]nder certain market conditions, [Plaintiffs] may find it difficult or impossible to liquidate a position.  This can occur, for example, when the market reaches a daily price fluctuation limit ('limit move')."  (Renga Decl. Ex. 3, CFTC Rule 1.55 "Risk Disclosure Statement," p.2, §9.)

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

**B.      THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**

The covenant of good faith and fair dealing exists to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement or hindering the other party's performance. *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 265 A.D.2d 513, 513-14 (2d Dep't 1999); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000); *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992). Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing.

**1.      The implied covenant claim fails to identify the specific contractual term that E\*TRADE allegedly frustrated.**

The scope of conduct prohibited by the implied covenant of good faith is circumscribed by the purpose and express terms of the contract. *Carma Devs., Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992). To state a claim for breach of the implied covenant, a plaintiff must identify the specific contractual provision that was frustrated. *Lingad v. IndyMac Fed. Bank*, 682 F. Supp. 2d 1142, 1154 (E.D. Cal. 2010). Where the plaintiff fails to identify an express term on which to hinge an implied duty, the implied covenant does not apply and the claim must be dismissed. *Id.; Barajas v. Countrywide Home Loans, Inc.*, No. CV 10-07961 DDP (AGRx), 2012 U.S. Dist. LEXIS 24237, at \*11-12 (C.D. Cal. Feb. 24, 2012) (implied covenant claim dismissed where contract did not create an obligation to negotiate the debt obligation); *Grant v. Aurora Loan Servs.*, 736 F. Supp. 2d 1257, 1268 (C.D. Cal. 2010) (implied covenant claim dismissed where plaintiff failed to specify the contractual provision from which the implied covenant allegedly arose); *Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007) (same).

Plaintiffs allege that E\*TRADE was obligated under the Customer Agreement to provide trading services "at all times." (Compl. ¶73.) But the Customer Agreement does not obligate E\*TRADE to provide access to its trading services "at all times." In fact, the Customer Agreement states that E\*TRADE does not guarantee uninterrupted access to its trading service and *relieves* E\*TRADE from liability for "system failures," and "software malfunction." (Renga Decl., Ex. 1, p. 27, §11; p. 30-31, §14 ("**LIMITATION OF LIABILITY,**" "No Liability for Indirect,

1  Consequential, Exemplary, or Punitive Damages; Force Majeure" ¶(ii); and p. 3, "**Force Majeure**

2  **Event.**")) There is no express contractual term upon which to hinge an implied obligation that

3  required E*TRADE to provide trading services at all times, or to provide Plaintiffs with the ability to

4  enter sell orders at negative prices. *See Williams,* 2006 U.S. LEXIS 50306, at *11-12 (2006) (implied

5  covenant did not require Scottrade to provide online trading clients with accurate average price

6  information or "reliable, convenient, fast and efficient state of the art computer systems); and

7  *Knowles*, 427 F. Supp. 3d at 1079 (implied covenant did not require TD Ameritrade to provide a "stop

8  feature" or technical support).

9              **2.      The implied covenant claim must be dismissed because it seeks to alter the**

10                   **express terms of the Customer Agreement.**

11             The implied covenant is limited to assuring compliance with the express terms of the

12  contract actually made; it cannot impose obligations on the contracting parties beyond the express

13  terms of the agreement. *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995); *Murphy v. Am.*

14  *Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983); *Guz*, 24 Cal. 4th at 350. In other words, the implied

15  covenant cannot be used to alter the express terms of a contract. *Hill v. State Farm Mut. Auto. Ins.*

16  *Co.*, 166 Cal. App. 4th 1438, 1456 (2008). For that reason, as Judge Corley concluded in *Berkeley*,

17  2016 U.S. Dist. LEXIS 1295, at *26, a claim for breach of the implied covenant that seeks to alter the

18  express contractual terms is a "non-starter" and must be dismissed.

19             Plaintiffs allege that the implied covenant obligated E*TRADE to provide trading

20  services "at all times" (Compl. ¶73) but E*TRADE failed to do so because of "serious bugs in its

21  software" (Compl. ¶32) and a resulting "system failure." (Compl. ¶¶35, 36, 41, 42, 46, and 47.)

22  E*TRADE bargained for the right to be free from liability in the event of a software malfunction or a

23  system failure. The Customer Agreement states that E*TRADE does not guarantee uninterrupted

24  access to the Service or to any feature of the Service (Renga Decl., Ex. 1, p. 27, §11 "**TRADING**

25  **SYSTEM**"), and that E*TRADE shall not be liable for any loss caused by "system failures," or

26  "software malfunction" (Renga Decl., Ex. 1, p. 27, §11; p. 30-31, §14 ("**LIMITATION OF**

27  **LIABILITY,**" "No Liability for Indirect, Consequential, Exemplary, or Punitive Damages;

28  **Force Majeure**" ¶(ii); and p. 3, "**Force Majeure Event.**").) The implied covenant cannot vary these

1  terms by requiring E*TRADE to provide trading services "at all times," or by imposing liability on

2  E*TRADE for "serious bugs in its software" or a "system failure." *Third Story Music, Inc. v. Waits*,

3  41 Cal. App. 4th 798, 808 (1995) (no obligation can be implied which would obliterate a right

4  expressly given in a written contract); *see also Williams*, 2006 U.S. LEXIS 50306, at *11-12 (implied

5  covenant cannot override express contract terms).

6  **3.   The implied covenant claim is duplicative of the breach of contract claim and**

7  **must be dismissed as superfluous.**

8  Where claims for breach of contract and breach of the implied covenant both cite the

9  same underlying breach, the implied covenant claim is superfluous and must be dismissed. *Harris v.*

10  *Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *Landucci v. State Farm Ins. Co.*,

11  65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (dismissing implied covenant claim based on the same

12  underlying breach as contract claim and therefore was superfluous); *see also Berkeley*, 2016 U.S. Dist.

13  LEXIS 1295, at *26 (Judge Corley dismissed implied covenant claim as superfluous); *WRI W.*

14  *Gate S., L.P. v. Reliance Mediaworks Inc.*, No. 14-cv-03802-JD (JSC), 2015 U.S. Dist. LEXIS

15  151186, at *23 (N.D. Cal. Oct. 1, 2015) (Judge Corley dismissed implied covenant claim as

16  redundant).

17  Plaintiffs' claim for breach of contract and breach of the implied covenant both cite the

18  same alleged underlying breaches, and both seek the same damages. (*Compare* Compl. ¶¶68-69

19  (breach of contract) with ¶¶74-75 (breach of the implied covenant).)  Plaintiffs' implied covenant

20  claim therefore is redundant of their contract claim and must be dismissed as superfluous.

21  **4.   The implied covenant claim fails to allege causation and damage.**

22  Causation is an essential element of Plaintiffs' claim for breach of the implied

23  covenant. *Nat'l Mkt. Share, Inc.*, 392 F.3d at 525; *Wolkowitz v. Redland Ins. Co.*, 112 Cal. App. 4th

24  154, 162 (2003).  As stated in Section IV.A.3, *supra*, Plaintiffs have failed to plead facts establishing

25  that their sell orders would have been executed if E*TRADE's system had allowed Plaintiffs to enter

26  limit orders to sell their contracts at negative prices.  Because Plaintiffs have failed to establish

27  causation, the implied covenant claim must be dismissed.

28  ///

KYL4812-6982-9579.5

**C.**     **THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENCE OR GROSS NEGLIGENCE.**

To state a claim for negligence, a plaintiff must establish four required elements: (1) the existence of a legal duty owed to the plaintiff; (2) breach; (3) causation; and (4) damages resulting from the breach.  *Solomon v. New York*, 66 N.Y.2d 1026, 1027 (1985) (combining third and fourth elements); *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).

**1.**     **Plaintiffs fail to establish any duty independent of the Customer Agreement.**

Entities generally have no duty to prevent purely economic loss to a potential plaintiff. *Sheen v. Wells Fargo Bank, N.A.*, 38 Cal. App. 5th 346, 356 (2019) ("there is 'no general duty to avoid the unintentional infliction of economic loss on another.'"); *Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194 (2008).  Here, Plaintiffs have failed to allege the existence of any legal duty that E*TRADE owed to them apart from the contractual obligations arising out of —and limited by—the Customer Agreement.  Plaintiffs allege that E*TRADE had a duty to "exercise reasonable care in conducting and facilitating transactions for customers," (Compl. ¶¶77, 81) and that E*TRADE "assumed a duty to ensure that its systems were sufficiently equipped to reliably deliver such services under foreseeable customer demands and market conditions, such as those that occurred on April 20, 2020." (Compl. ¶6.)  But Plaintiffs fail to plead facts giving rise to these alleged duties *other than* the fact that E*TRADE entered into the Customer Agreement with Plaintiffs.  Indeed, Plaintiffs concede that the Customer Agreement governs all of the transactions between E*TRADE and Plaintiffs, including use of E*TRADE's website and trading platform.  (Compl. ¶¶12 n.2, 34, 39, 45, 66, 67 and 71.)  E*TRADE's legal duties to Plaintiffs exist solely as a result of—and are limited by—the Customer Agreement.

Under New York law, contractual duties may not simply be restated and pursued as tort claims.  *See, e.g., Clark-Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 389 (1987).  Merely charging that the defendant breached a "duty of due care" does not transform a breach of contract into a tort claim.  *Id.; 2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 220 (S.D.N.Y. 2015) (dismissing negligence claim where parties' contract defined the scope of duties owned to plaintiff and plaintiff therefore could not assert an independent duty in tort).

California law is the same.  In California, no tort cause of action will lie where the breach of duty is nothing more than an alleged breach of a contractual promise.  *Oracle USA, Inc. v. XL Glob. Servs.*, No. C 09-00537 MHP, 2009 U.S. Dist. LEXIS 59999, at *13-14 (N.D. Cal. July 13, 2009); *see also Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000) ("A person may not ordinarily recover in tort for breaches of duties that merely restate contractual obligations").  A tort claim that is based on the same allegations as a breach of contract claim therefore must be dismissed.  *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 389; *Abbate v. Wells Fargo Bank, N.A.*, No. CV 10-6561 DOC (RNBx), 2011 U.S. Dist. LEXIS 139749, at *21 (C.D. Cal. Nov. 17, 2011) (dismissing tort claim where same basic allegations were asserted in support of tort and contract claims); *Oracle USA, Inc.*, 2009 U.S. Dist. LEXIS 59999, at *21 (same); *see also Williams*, 2006 U.S. LEXIS 50306, at *15-19 (dismissing unintentional tort claims where Scottrade's alleged duties arose from the parties contracts and the claim simply asserted that Scottrade failed to perform its alleged promises).

Plaintiffs' tort claims simply restate their contract claims.  The alleged tortious breaches (Compl. ¶¶78 and 82) are identical to the alleged breach of contract (Compl. ¶68) and breach of the implied covenant (Compl. ¶74).  The damages Plaintiffs seek on their tort claims (Compl. ¶¶79 and 84) are identical to the damages Plaintiffs seek on their contractual claims (Compl. ¶¶69 and 75).  Plaintiffs have failed to identify any legal duty that E*TRADE owed to them apart from the Customer Agreement.  Plaintiffs' claims for negligence and gross negligence therefore must be dismissed.

## 2.   <u>Plaintiffs' tort claims are barred by the Economic Loss Rule.</u>

Generally, purely economic damages are not available on negligence claims.  *Bristol-Myers Squibb, Indus. Div. v. Delta Star*, 206 A.D.2d 177, 181 (4th Dep't 1994).  Instead, the plaintiff is relegated to contractual remedies for economic losses.  *Id.; S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978) (affirming dismissal of causes of action alleging negligent performance of a contract); *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965).  This principle—known as the "economic loss rule"—requires a plaintiff to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  The purpose of the rule is to prevent the law of contract and the law of tort from dissolving into one another.  *Id.* Indeed,

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5

1   "[i]f every negligent breach of a contract [gave] rise to tort damages, the [rule] would be meaningless,

2   as would the statutory distinction between tort and contract remedies." *Id.* at 990 (quoting *Erlich v.*

3   *Menezes*, 21 Cal. 4th 543, 553-54 (1999)).

4   Plaintiffs seek only economic losses on their tort claims.  (Compl. ¶¶79 and 84.)

5   Plaintiffs do not allege any facts demonstrating harm above and beyond an allegedly broken promise

6   to perform under the contract.  Their claims for negligence and gross negligence therefore are barred

7   by the economic loss rule and must be dismissed.  *Pollok v. Vanguard Grp.*, No. 2:16-cv-6482-JLS-

8   JCGx), 2017 U.S. Dist. LEXIS 182999, at *16 (C.D. Cal. Aug. 21, 2017) (dismissing plaintiff's

9   negligence and conversion claims based on the economic loss rule because Vanguard's actions with

10   respect to the plaintiff's accounts were governed by a contract and plaintiff failed to show how his tort

11   claims arose from anything other than disappointed expectations).

### 3.   Plaintiffs fail to establish causation and damage.

13   Causation is an essential element of Plaintiffs' tort claims.  As stated in Section IV.A.3,

14   *supra*, Plaintiffs have failed to plead facts establishing that their negatively priced sell orders would

15   have been executed if E*TRADE's system had allowed Plaintiffs to enter limit orders to sell

16   their contracts at negative prices.  Plaintiffs have failed to establish causation, so the negligence and

17   gross negligence claims must be dismissed.

### 4.   Plaintiffs' negligence claim is barred by the Customer Agreement.

19   Plaintiffs expressly agreed that E*TRADE would not be liable for ordinary negligence.

20   The Customer Agreement states that E*TRADE shall not be liable "except for their breach of this

21   Customer Agreement, gross negligence, or willful misconduct."  (Renga Decl., Ex. 1, p. 30, §14,

22   "**LIMITATION OF LIABILITY**.")  Exculpatory clauses are valid and enforceable as long as they

23   do not bar claims for gross negligence, intentional torts, or affect the public interest.  *Champion Home*

24   *Builders Co. v. ADT Sec. Servs.*, 179 F. Supp. 2d 16, 23-24 (N.D.N.Y. 2001) (enforcing exculpatory

25   clause and dismissing tort claims except gross negligence); claims for breach of contract and breach of

26   fiduciary duty); *Capri v. L.A. Fitness Int'l, L.L.C.*, 136 Cal. App. 4th 1078, 1804 (2006) (exculpatory

27   clause barred negligence claim).  Plaintiffs' claim for negligence therefore must be dismissed.

28

KYL4812-6982-9579.5

**D.      THE COMPLAINT FAILS TO STATE A UCL CLAIM.**

A California subclass alleges that the failure of E*TRADE's trading system on April 20 violated California's Unfair Competition Law ("UCL").  (Compl. ¶¶52, 85-91.)  The UCL prohibits any unlawful, unfair or fraudulent business act or practice.  Cal. Bus. & Prof. Code §17200.  Plaintiffs allege E*TRADE's business practices were "unlawful" and "unfair."  (Compl. ¶¶88-90.)

**1.      Plaintiffs lack standing to assert a UCL claim.**

To satisfy the standing requirements under the UCL, a plaintiff must plead facts estab-lishing that:  (1) he suffered an injury in fact, (2) he lost money or property, and (3) the economic injury was caused by the defendant's conduct.  Cal. Bus. & Prof. Code §17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).  Plaintiffs fail to satisfy the third requirement.  As set forth in Section IV.A.3, *supra*, Plaintiffs fail to allege facts establishing their negatively-priced sell orders would have been executed in the illiquid market on April 20 if E*TRADE's system had allow-ed their negatively priced sell orders.  A plaintiff fails to satisfy the UCL causation requirement if he would have suffered "the same harm whether or not a defendant complied with the law."  *Turner v. Wells Fargo Bank NA (In re Turner)*, 859 F.3d 1145, 1151 (9th Cir. 2017).  Where Plaintiffs' UCL claim fails to plead causation, it fails to establish standing and must be dismissed.  *Id.; Greene v. Wells Fargo Bank, N.A.*, No. 18-cv-06689-JSC, 2018 U.S. Dist. LEXIS 217597, at *26-29 (N.D. Cal. Dec. 28, 2018) (Judge Corley dismissed UCL claim for lack of standing where plaintiff failed to plead causation).

**2.      Plaintiffs fail to establish any "unlawful" business practice.**

An unlawful business practice or act within the meaning of the UCL is business practice forbidden by law.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010); *Berkeley*, 2016 U.S. Dist. LEXIS 1295, at *43-44.  By proscribing "unlawful" business practices, the UCL "borrows violations" of other state and federal laws and makes them independently actionable.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999).

Plaintiffs fail to allege any state, federal, regulatory or court-made law that E*TRADE allegedly violated.  They contend that E*TRADE's conduct was "unlawful" because it allegedly was a breach of contract, breach of the implied covenant, negligent, or grossly negligent.  (Compl. ¶89.)  A

- 31 -

1  common law violation such as a breach of contract is insufficient to state a claim for a violation of the

2  UCL's "unlawful" prong.  *Shroyer*, 622 F.3d at 1044; *Berkeley*, 2016 U.S. Dist. LEXIS 1295, at *44-

3  45; *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993) (dismissing plaintiff's UCL claim

4  premised on breach of contract).  The Complaint fails to allege an unlawful business practice.

### 3.    Plaintiffs fail to establish any "unfair" business practice.

6         Although the UCL prohibits unfair business practices, the statute does not define

7  "unfairness."  Courts therefore apply either a "tethering test" or a "balancing test" to assess the

8  sufficiency of a claim.  *Benson v. Citibank, N.A.* (N. D. Cal. Dec. 6, 2012, No. 12-0760 JSC) 2012

9  U.S. Dist. LEXIS 199984, at *12), citing *Rubio v. Capital One Bank*, 613 F.3d 1195, 1205 (9th Cir.

10  2010).  The tethering test requires a plaintiff to "tether" its allegation of unfair competition to a

11  constitutional or statutory provision or regulation carrying out a statutory policy.  *Zero Motorcycles,*

12  *Inc. v. Pirelli Tyre S.p.A.*, 802 F. Supp. 2d 1078, 1089 (N.D. Cal. 2011).  In contrast, the balancing test

13  "involves an examination of [the] practice's impact on its alleged victim, balanced against the reasons,

14  justifications and motives of the alleged wrongdoer; the court must weigh the utility of the defendant's

15  conduct against the gravity of the harm to the alleged victim."  *Family Home & Fin. Ctr., Inc. v. Fed.*

16  *Home Loan Mortg. Corp.*, 525 F.3d 822, 826 (9th Cir. 2008).

17         Plaintiffs fail to establish a plausible claim under either test.  Plaintiffs have not

18  tethered their claims to any constitutional, statutory, or regulatory provision.  (Compl. ¶90.)  Instead,

19  Plaintiffs tether their UCL violation to their defective claims for breach of contract, breach of the

20  implied covenant, negligence and gross negligence.  (Compl. ¶90.)  Plaintiffs fail to establish those

21  claims, and therefore they likewise fail to establish a claim for "unfairness" under the UCL.  *Benson*,

22  2012 U.S. Dist. LEXIS 199984, at *13 (plaintiff's UCL claim was moot because it was tethered to his

23  dismissed claim for breach of contract and breach of the implied covenant).

24         Plaintiffs also fail to establish a claim under the balancing test.  Plaintiffs fail to plead

25  any facts establishing that E*TRADE's conduct was immoral, unethical, oppressive or unscrupulous,

26  or that Plaintiffs' inability to enter orders to sell contracts at negative prices caused them injuries

27  (unfilled sell orders) that they would have avoided "but for" the limitations of E*TRADE's system.

28  Rather than plead facts, Plaintiffs simply recite the elements of the balancing test.  (Compl. ¶90.)

These "threadbare" recitals do not suffice to state a plausible claim, and the Court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft*, 556 U.S. at 678. Far from being "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," a breach of contract is a morally neutral act. *Prudential Ins. Co. of Am. v. Herman* (C.D. Cal. Aug. 31, 2009, No. SACV 09-00432-JVS (ANx)) 2009 U.S. Dist. LEXIS 135351, at *9-10) citing *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 517 (1994). Without more, an alleged breach of contract should not violate the "unfairness" prong of the UCL. *Id.; Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) (UCL claim properly dismissed because mere breaches of contract, without more, were insufficient to establish violation of UCL).

### 4.  Plaintiffs' UCL claim fails because it is dependent on the inadequately pled contract and tort claims.

"[W]here the same conduct alleged to be unfair under the UCL is also alleged to be a violation of another law, the UCL claim rises or falls with the other claims." *Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 911 (N.D. Cal. 2016), *aff'd in part sub nom. vacated in part on other grounds*, 897 F.3d 1109 (9th Cir. 2018). The reason for this rule is self-evident: "To permit a separate inquiry into essentially the same question under the unfair competition law would ... invite conflict and uncertainty." *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).

Here, the conduct that Plaintiffs assert is "unlawful" and "unfair" is the same conduct that Plaintiffs contend was a breach of contract, breach of the implied covenant, negligence and gross negligence. (Compare Compl. ¶90 (UCL) with ¶¶68, 74, 78, and 82.) Because Plaintiffs have failed to adequately plead any of these predicate claims, the UCL claims also fail as a matter of law. *Hicks*, 165 F. Supp. 3d at 911; *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1146 (N.D. Cal. 2010); *Taylor v. Bosco Credit, L.L.C.*, No. 18-cv-06310-JSC, 2019 U.S. Dist. LEXIS 130776, at *8 (N.D. Cal. Aug. 5, 2019) (Judge Corley dismissed UCL claims that were dependent on defective Truth In Lending Act and contract claims); *Card v. Ralph Lauren Corp.*, No. 18-cv-02553-JSC, 2018 U.S. Dist. LEXIS 147609, at *26 (N.D. Cal. Aug. 29, 2018) (Judge Corley dismissed UCL claim tethered to plaintiff's inadequately pled price discrimination and RICO claims).

5.     **Plaintiffs fail to establish an entitlement to restitution or an injunction.**

Plaintiffs allege that are entitled to recover "restitution," "disgorgement of ill-gotten gains," and "refunds of moneys" on their UCL claim.  (Compl. ¶91.)  Plaintiffs fail to allege facts establishing that they are entitled to any relief under the UCL.  A UCL action is equitable in nature. Damages are not an available remedy.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003); *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992).

a.     **Plaintiffs fail to state a basis for injunctive relief.**

Although plaintiffs seek "injunctive relief as pleaded or as the Court may deem proper" (Compl. p. 26, ¶G), Plaintiffs fail to state what particular business practices they seek to enjoin. Plaintiffs' request for injunctive relief is not sufficiently stated.  *Snyder v. Nationstar Mortg. L.L.C.*, No. 15-cv-03049-JSC, 2015 U.S. Dist. LEXIS 154680, at *30 (N.D. Cal. Nov. 13, 2015) (Judge Corley found that plaintiff failed to sufficiently state a request for injunctive relief because plaintiff failed to state the particular unfair business practices she sought to enjoin); *O'Connor v. Wells Fargo, N.A.*, No. C-14-00211 DMR, 2014 U.S. Dist. LEXIS 136451, at *25-26 (N.D. Cal. Sept. 26, 2014) (dismissing the plaintiff's claim because the plaintiff did not specify what conduct he sought to enjoin).  In addition, Plaintiffs do not allege that they are suffering ongoing injury as a result of E*TRADE's business practices.  For that additional reason, Plaintiffs have failed to state a basis for injunctive relief under the UCL.  *Napster Copyright Litig. v. Hummer Winblad Venture Partners*, 354 F. Supp. 2d 1113, 1127 (N.D. Cal. 2005) (granting motion to dismiss the defendant's UCL counterclaim because the defendant failed to allege that it suffered any ongoing injury from the plaintiff's conduct).

b.     **Plaintiffs fail to state a basis for restitution.**

Plaintiffs likewise fail to establish that they are entitled to restitution.  (Compl. ¶91.) Under California law, there are two forms of disgorgement:  "restitutionary disgorgement, which focuses on the plaintiff's loss, and nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment."  *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 899 (2015) (quoting *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398 (2014)).  Nonrestitutionary disgorgement of profits is not available in a UCL action.  *Korea Supply Co.*, 29 Cal. 4th at 1148, 1152.

1    Plaintiffs fail to allege facts establishing that they are entitle to restitutionary disgorge-

2  ment.  Restitution under the UCL means an order "compelling …a defendant to return money obtained

3  through an unfair business practice to those persons in interest from whom the property was taken …."

4  Cal. Bus. & Prof. Code §17203; *Korea Supply Co.*, 29 Cal. 4th at 1149 (quoting *Kraus v. Trinity*

5  *Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126-27 (2000)).  In other words, the object of restitution is to

6  restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.

7  *Id.*  Thus, in order to establish a basis for restitution in a UCL action, the plaintiff must demonstrate

8  that the  defendant holds funds *in which the plaintiff* has an ownership interest.  *Madrid v. Perot Sys.*

9  *Corp.*, 130 Cal. App. 4th 440, 455 (2005) (emphasis added).  Where the complaint fails to establish

10  that the defendant has possession of funds in which the plaintiff has an ownership interest, the UCL

11  claim should be dismissed.  *Napster Copyright Litig.*, 354 F. Supp. 2d at 1127 (dismissing UCL

12  counterclaim that failed to establish that plaintiffs were in possession of funds in which the

13  counterclaimant had an ownership interest).

14    Plaintiffs have failed to plead facts establishing that E*TRADE obtained money or

15  property from them as a result of their *inability* to enter limit orders to sell their contracts at negative

16  prices on April 20, 2020.  Accordingly, the UCL claim fails to establish a basis for restitution.  *See,*

17  *e.g., Wilens*, 120 Cal. App. 4th at 756 (where TD Waterhouse did not charge a flat fee for access to its

18  online trading platform but instead charged a commission only if customers completed their trades,

19  TD Waterhouse did not make illegal profits from plaintiffs' inability to trade on the internet).  To the

20  extent that Plaintiffs lost money as a result of their expired contracts on April 20, that money is now in

21  the hands of the contra-party on their oil futures contracts, not E*TRADE, and therefore those

22  "losses" cannot form the basis of restitution under the UCL.  The decision in *Inline, Inc. v. Apace*

23  *Moving Sys., Inc.*, 125 Cal. App. 4th 895 (2005) illustrates the point.  Apace was a storage company

24  that auctioned off the entire contents of a storage lot for $20.  The plaintiff bought the auctioned items

25  from the buyer for $100,000.  The plaintiff sued Apace for violating the UCL and sought as

26  "restitution" the $100,000 that it paid to the buyer of the storage lot.  The trial court found that the

27  plaintiff was entitled to only $20 as restitution under the UCL because $20 was the only money that

28  Apace received by means of unfair competition.  The Court of Appeal affirmed because plaintiff

1    sought more from Apace than the "return [of] something [it] wrongfully received;" it sought damages,

2    which are not available under the UCL.  *Id.* at 901.

3              Similarly, in this case any restitutionary remedy is limited to the money or property

4    E*TRADE received *from Plaintiffs* as a result of the allegedly unfair competition.  Plaintiffs have

5    failed to allege facts establishing that E*TRADE received money or property from them as a result of

6    their inability to place negatively priced sell orders for 22 minutes on April 20.  Plaintiffs therefore

7    have failed to establish a basis for restitution.  The UCL claim must be dismissed.

8              **6.      The UCL does not apply to securities transactions.**

9              The UCL does not apply to securities transactions.  *Bowen v. Ziasun Techs., Inc.*, 116

10   Cal. App. 4th 777, 788 (2004).  The claims against E*TRADE Securities LLC must be dismissed.

11       **E.      THE COMPLAINT FAILS TO STATE A CLAIM FOR PUNITIVE DAMAGES.**

12             The Court may address the legal sufficiency of a request for relief on a motion to

13   dismiss.  *Artifex Software v. Hancom, Inc.*, No. 16-cv-06982-JSC, 2017 U.S. Dist. LEXIS 62815, at

14   *15, n.3 (N.D. Cal. Apr. 25, 2017) (Judge Corley, citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618

15   F.3d 970, 974 (9th Cir. 2010)).  Plaintiffs seek an award of punitive damages (Compl. "Prayer," ¶E),

16   but the Complaint fails to state any claim on which punitive damages can be awarded.  Punitive

17   damages are not available for a breach of contract.  Cal. Civ. Code §3294(a); *Quigley v. Pet*, 162 Cal.

18   App. 3d 877, 887 (1984).  Punitive damages also are not recoverable for breach of the implied

19   covenant of good faith and fair dealing outside of the insurance context.  *Monaco v. Bear Stearns*

20   *Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1043 (C.D. Cal. 2008).  Punitive damages also are

21   not available on claims for negligence or gross negligence (*Simmons v. S. Pac. Transp. Co.*, 62 Cal.

22   App. 3d 341 (1976)), or on claims based on California's UCL.  *Linares v. CitiMortgage, Inc.*, No. C-

23   14-3435 EMC, 2015 U.S. Dist. LEXIS 58919, at *24 (N.D. Cal. May 5, 2015) (citing *In re Wal-Mart*

24   *Stores, Inc.*, 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007).)  The Complaint fails to state any basis for

25   punitive damages.  The claim for punitive damages therefore must be dismissed.

26       **F.      THE COMPLAINT FAILS TO STATE A CLAIM FOR ATTORNEYS' FEES.**

27             Plaintiffs allege that they are entitled to recover attorneys' fees on their UCL claim and

28   generally.  (Compl. ¶91, Prayer "I.")  Both New York and California follow the "American Rule,"

- 36 -

1  meaning that a party is not entitled to an award of attorneys' fees unless authorized by a statute or a

2  contract.  *Mount Vernon City School Dist. v. Nova Cas. Co.*, 19 N.Y. 3d 28, 39-40 (2012); Cal. Civ.

3  Proc. Code §1021.  Attorneys' fees are not available under the UCL.  *Cel-Tech Commc'ns, Inc.,*  20

4  Cal. 4th at 179;  *Bank of the W.*, 2 Cal. 4th at 1266; *Snyder*, No. 15-cv-03049-JSC (Judge Corley).

5  The Complaint fails to state any basis for an award of attorneys' fees.  The claim for attorneys'

6  therefore must be dismissed.

7  ### G.  THE COMPLAINT ENGAGES IN PROHIBITED SHOTGUN PLEADING.

8  Federal pleading standards require that a complaint provide a plain statement showing

9  that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).  Allegations that incorporate each

10  preceding paragraph have been harshly criticized as a form of "shotgun pleading" that violates

11  Rule 8's requirement of a "short and plain statement" and interferes with the court's ability to

12  administer justice.  *See generally Byrne v. Nezhat*, 261 F.3d 1075, 1129-30 (11th Cir. 2001).

13  Here, the Complaint identifies E*TRADE Securities, LLC and E*TRADE Futures,

14  LLC in Paragraphs 12 and 13 and thereafter lumps both defendants together collectively.  The

15  Complaint never differentiates the allegations against each defendant, but instead incorporates by

16  reference every factual allegation in the Complaint (*see* Compl. ¶¶65, 70, 76, 80, and 85), and alleges

17  that "everyone did everything."  This is classic "shotgun pleading."  Rule 8(a) requires more than that.

18  E*TRADE Securities LLC and E*TRADE Futures LLC are separate legal entities, and each is entitled

19  to a plain statement of the conduct that allegedly supports Plaintiffs' claims against them.

20  ### H.  THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

21  The Court may dismiss a complaint without lave to amend where it is clear that the

22  complaint cannot be saved by amendment.  An amendment is futile when no set of facts can be proved

23  under the amendment to the pleadings that would constitute a valid claim.  *Dehoog v. Anheuser-Busch*

24  *InBev SA/NV*, 899 F.3d 758, 765-66 (9th Cir. 2018).  Plaintiffs concede that their relationship with

25  E*TRADE is governed by the terms of the Customer Agreement.  (Compl. ¶¶12 n.2, 34, 39, 45, 66

26  and 71.)  It is plain that the Customer Agreement does not obligate E*TRADE to provide Plaintiffs

27  with access to its trading service "at all times," nor does it obligate E*TRADE to provide Plaintiffs

28  with the ability to enter orders to *sell* their contracts at *negative prices*.  Plaintiffs cannot state a claim

1    for negligence or gross negligence because their claims are barred by the economic loss rule and are

2    governed by the terms of the Customer Agreement.  Plaintiffs likewise cannot state a claim under the

3    UCL because they lack standing, they cannot identify any "unlawful" or "unfair" business practice,

4    and because they cannot establish that E*TRADE obtained any money or property from them as a

5    result of their inability to sell their futures contracts on April 20.  Finally, Plaintiffs cannot establish

6    that E*TRADE caused their alleged losses because Plaintiffs have failed to plead facts establishing

7    that they would not have experienced the same result on April 20 (unfilled sell orders) even if their

8    negatively priced sell orders had been entered.  Plaintiffs cannot plead around these obstacles.  The

9    Complaint should be dismissed without leave to amend.

10            **I.      IF THE COMPLAINT IS NOT DISMISSED, THE IMMATERIAL AND**

11                    **IMPERTINENT MATTER SHOULD BE STRICKEN.**

12                Immaterial, impertinent, or scandalous matter may be stricken from a pleading.  Fed. R.

13    Civ. Pro. 12(f).  The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and

14    money that must arise from litigating spurious issues by dispensing with those issues prior to trial.

15    *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  A matter is immaterial if it has

16    no essential or important relationship to the claim for relief pleaded.  *Barnes v. AT & T Pension Ben.*

17    *Plan-NonBargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2013).  A matter is impertinent

18    if it does not pertain and is not necessary to the issues in question in the case.  *Id.*

19                    **1.      Interactive Brokers' settlement of complaints.**

20                Plaintiffs allege that a competitor brokerage firm, Interactive Brokers ("IAB"), received

21    customer complaints arising out of the negative oil market on April 20, 2020, and that IAB has

22    "admitted" that it will "make[e] its customers whole," while "E*TRADE has failed and refused to do

23    the same."  (Compl. ¶32, p. 10, line 25 – p. 11, line 2.)  Settlement discussions are inadmissible to

24    show fault and may be stricken as immaterial and potentially prejudicial.  Fed. R. Evid. 408; *Kelly v.*

25    *L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994) (striking settlement

26    discussions from complaint); *Winkler-Koch Eng'g Co. v. Universal Oil Prods. Co.*, 79 F. Supp. 1013,

27    1019 (S.D.N.Y. 1947) (striking allegations that defendant settled a similar claim with a stranger).

28    IAB's resolution of its customers' complaints has no bearing on whether E*TRADE performed its

obligations stated in the Customer Agreement with Plaintiffs.  If this allegation is not struck, E*TRADE will be forced to litigate whether IAB's customer contract contained the same terms as the Customer Agreement, whether IAB's problem on April 20 was the same as E*TRADE's, and whether extraneous factors influenced IAB's decision to settle.  E*TRADE will be prejudiced if the trier of fact erroneously concludes that IAB has admitted liability and therefore E*TRADE also must be liable to Plaintiffs.  Paragraph 32, p. 10, line 25 – p. 11, line 2 should be stricken.

### 2.   E*TRADE's allegedly misleading statement regarding market liquidity.

Plaintiffs allege that sometime after April 20, E*TRADE "misleadingly" told investors that the negative price of the oil market on April 20 demonstrated a lack of active buyers and that there was insufficient liquidity in the market to support exiting long positions.  (Compl. ¶33.) Plaintiffs fail to allege facts establishing that there was sufficient market liquidity in the last 22 minutes of the trading session on April 20, 2020 to fill their negatively priced sell orders.  Finally, Plaintiffs have not asserted a misrepresentation claim, and therefore the allegation that E*TRADE's statement was "misleading[]" is immaterial.  The matter is prejudicial because it attributes deception to E*TRADE.  *See, e.g., Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101, 1152-53 (C.D. Cal. 2003) (striking allegations that bank was motivated by greed because allegations were immaterial and prejudicial).  Paragraph 33 should be stricken.

### V.  CONCLUSION

The Customer Agreement does not obligate E*TRADE to provide Plaintiffs with access to its trading system at all times, nor does it obligate E*TRADE to provide Plaintiffs with the ability to enter sell orders at negative prices.  Plaintiffs have failed to state any claim upon which relief can be granted.  The Complaint should be dismissed without leave to amend.  In the alternative, Paragraph 32 (p. 10, line 25 – p. 11, line 2) and Paragraph 33 should be stricken from the Complaint.

DATED:  October  14, 2020

STEPHEN YOUNG
BEN SUTER
STACEY M. GARRETT
KEESAL, YOUNG & LOGAN
Attorneys for Defendants
E*TRADE Securities LLC and E*TRADE
Futures LLC

E*TRADE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE
Case No. 3:20-cv-5803-JSC

KYL4812-6982-9579.5