BRIAN S. KABATECK (SBN 152054)
bsk@kbklawyers.com
CHRISTOPHER B. NOYES (SBN 270094)
cn@kbklawyers.com
JOANA FANG (SBN 309623)
jf@kbklawyers.com
KABATECK LLP
633 W. Fifth Street, Suite 3200
Los Angeles, CA 90071
Telephone: (213) 217-5000
Facsimile: (213)217-5010


ROBERT J. GIRARD II (SBN 216949)          MICHAEL GATTO (SBN 232674)
rgirard@girardbengali.com                 mike@actiumllp.com
OMAR H. BENGALI (BAR NO. 276055)          ACTIUM LLP
obengali@girardbengali.com                5419 Hollywood Blvd, Ste C-356
STEVEN M. BUHA (BAR NO. 271798)           Los Angeles, CA 90027
sbuha@girardbengali.com                   Telephone: (323) 819-0300
GIRARD BENGALI, APC
355 South Grand Ave., Suite 2450
Los Angeles, California 90071
Telephone: (323) 302-8300
Facsimile:   (323) 302-8310



Attorneys for Plaintiff(s) Benjamin
Whitesides, Aziz Si Hadj Mohand, and
Matthew Cheung, individually and on
behalf of others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BENJAMIN WHITESIDES, AZIA SI HADJ MOHAND, and MATTHEW CHEUNG, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>E*TRADE SECURITIES, LLC, a Delaware limited liability company; and E*TRADE FUTURES, LLC, an Illinois limited liability company, and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No. 3:20-cv-5803-JSC<br><br>*Assigned to: Hon. Jacqueline Scott Corley, Courtroom E – 15th Floor*<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Action Filed: 8/18/20<br>Trial Date: None set |

GIRARD BENGALI, APC
355 South Grand Ave., Suite 2450
Los Angeles, California 90071
(323) 302-8300

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

Plaintiff(s) Benjamin Whitesides ("Whitesides"), Aziz Si Hadj Mohand ("Mohand"), and Matthew Cheung ("Cheung") (collectively and individually, "Plaintiff(s)"), individually and on behalf of all others similarly situated, bring this putative class action against Defendants E*TRADE Securities, LLC, E*TRADE Futures, LLC, and DOES 1 through 50 (collectively and individually, "Defendant(s)" or "E*TRADE"), demanding a trial by jury. Plaintiffs make the following allegations based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge. Accordingly, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.      E*TRADE is an online brokerage firm. Its customers place securities trades through the firm's website, by using a web-based application (or "app"), or by calling the firm's help center. E*TRADE permits customers, when its trading platform is operational, to purchase and sell certain securities, including futures contracts.

2.      While, for decades, ordinary retail investors did not trade commodities, electronic trading at discount brokerage firms and new investment products marketed by these firms prompted amateur investors to start buying and selling oil. Brokerage firms like E*TRADE spent years making oil products easy to trade and giving individual investors access to futures contracts like those purchased by Plaintiffs.

3.      Futures contracts are effectively a promise to deliver a commodity at a certain time, allowing an investor to speculate on price moves and producers to protect against large swings. Ordinarily, when a U.S. crude futures contract expires, the holder must either sell it or take delivery of barrels of oil the following month. E*TRADE also offered futures that are settled with cash instead of oil. Plaintiffs, along with other affected class members, purchased these "e-mini futures" that trade on CME Group Inc.'s New York Mercantile Exchange. Upon expiration of the contracts, the "e-mini futures" converge with regular U.S. crude futures.

FIRST AMENDED CLASS ACTION COMPLAINT

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

4.     That is exactly what happened on Monday, April 20, 2020, when an unprecedented crash occurred in the crude oil futures markets. Prior to the COVID-19 pandemic, the idea that oil futures could move into negative pricing territory was a known possibility. On April 20, however, that possibility turned into a reality. The benchmark West Texas Intermediate ("WTI") crude oil futures settled at negative ($37.63) by the close of the market on April 20 for the May contracts that were set to expire the following day. E-mini futures followed the slide of the regular futures and trapped traders who, due to the limitations of E*TRADE's electronic trading system, were unable to a) see accurate information pricing information and b) trade at negative prices.

5.     Simultaneous with the oil market's precipitous decline into negative territory, E*TRADE's systems was unprepared for the negative pricing, failed to display accurate prices, and locked out users attempting to enter orders with negative values, resulting in an outage of its trading platform through the end of the session on April 20, 2020 (the "Outage"). As a result of the Outage, E*TRADE's customers were unable to exercise futures contracts on WTI through E*TRADE's website, app, or call center. Customers were also unable during this time to obtain accurate information or meaningful support from E*TRADE's customer service specific to their individual investment needs.

6.     In offering trading services, E*TRADE assumed a duty to ensure that its systems were sufficiently equipped to reliably deliver such services under foreseeable customer demands and market conditions, such as those that occurred on April 20, 2020. Plaintiffs and members of the proposed class understood and reasonably believed that E*TRADE had or would take such steps, but it did not. E*TRADE failed to adequately or properly equip itself technologically and systemically to maintain Plaintiffs and class members' access to trading services. Due solely to its own negligence and failure to maintain adequate infrastructure, E*TRADE breached obligations owed to Plaintiffs and class members and caused them substantial losses.

Its failures are all the more serious due to the magnitude of the Outage, the absence of alternative means for customers to protect their investments, and the lack of communication and customer support.

7.  Despite possessing knowledge of the possibility of oil futures trading negatively for weeks, E*TRADE failed to test its online trading platform for this possibility, failed to ready its systems and correct known deficiencies, failed to disclose this possibility to its customers and openly ignored multiple red flags from the relevant exchanges.

8.  Plaintiffs thus bring this class action on behalf of themselves and all other E*TRADE customers within the United States who held futures contracts expiring during the Outage, and who thereby suffered losses in their E*TRADE accounts. Plaintiffs assert claims for negligence, gross negligence, and violation of California consumer protection laws and seeks damages, restitution, and injunctive relief.

## **PARTIES**

9.  Plaintiff Benjamin Whitesides is a citizen and resident of the State of Utah.

10.  Plaintiff Aziz Si Hadj Mohand is a citizen and resident of the State of California.

11.  Plaintiff Matthew Cheung is a citizen and resident of the State of New Hampshire.

12.  Defendant E*TRADE Securities, LLC is a Delaware limited liability company qualified to do business in California, with its principal place of business at 11 Times Square, 32nd Floor, New York, New York 10036. Defendant E*TRADE Securities, LLC acts as a clearing broker and clears trades introduced by its affiliate

/ / /

/ / /

/ / /

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

1  E*TRADE Financial, LLC.[1] Defendant E*TRADE Securities, LLC is a party to the

2  customer agreements entered into by and between Plaintiffs and Defendants.

3    13. Defendant E*TRADE Futures, LLC is an Illinois limited liability

4  company with its principal place of business at 10 S. Riverside Plaza, Suite 500,

5  Chicago, Illinois, 60606.  Defendant E*TRADE Futures, LLC acts as an introducing

6  broker and has a clearing arrangement with its affiliate Defendant E*TRADE

7  Securities, LLC. Defendant E*TRADE Futures, LLC is a member of the National

8  Futures Association (NFA ID: 0401545).

9    14. Defendants are referred to herein collectively as "E*TRADE."

10  **JURISDICTION AND VENUE**

11    15. This Court has subject-matter jurisdiction over this action pursuant to 28

12  U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed class and

13  subclasses are in excess of $5 million, exclusive of interest and costs, and there are

14  more than 100 putative class members. Many members of the proposed class are

15  citizens of a state different from Defendant.

16    16. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action

17  because a substantial part of the events, omissions, and acts giving rise to the claims

18  herein occurred in this District where E*TRADE, distributed, marketed, advertised,

19  and sold the trading services which are the subject of the present complaint. Finally,

20  venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because a

21  substantial part of the acts and omissions that gave rise to this Complaint occurred or

22  emanated from this District.

23    17. This Court has personal jurisdiction over E*TRADE because it is

24  authorized to do business and does conduct business in California, and because it has

25  specifically marketed, advertised, and made substantial sales in California, and has

26  sufficient minimum contacts with this state and/or sufficiently avails itself of the

27

28  [1] E*TRADE Financial, LLC has not been named as a party at this time, however, Plaintiff reserves the right to add the entity at a future date.

5

FIRST AMENDED CLASS ACTION COMPLAINT

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## **FACTUAL ALLEGATIONS**

18.    E*TRADE is one of the largest online focused broker-dealers in the world and has over 30 brick and mortar locations across the United States. It also offers other financial products and services including online banking. E*TRADE aims to compete with traditional financial institutions by offering cheaper and more user-friendly digital services. E*TRADE markets itself as the "original place to invest online, and still one of the best." E*TRADE, https://us.etrade.com/platforms (last visited July 20, 2020). It further markets itself as "[t]he complete package for traders who won't compromise…with intuitive, easy-to-use trading platforms and apps, specialized trading support, and stock, options and futures for traders of every level."

19.    With regard to E*TRADE's platform, it states: "Easy-to-use Power E*TRADE platform…built to bring simplicity to a complex trading world." E*TRADE markets its "Dedicated trader service team" and states: "[w]hen money is at stake, you want answers fast." E*TRADE, https://us.etrade.com/trade (last visited July 20, 2020). Referencing options, E*TRADE's website markets as follows:



E*TRADE, https://us.etrade.com/trade (last visited July 20, 2020). E*TRADE's promises of simplicity, precision, and the ability to "seize opportunities wherever they arise" were nothing more than illusory.

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

### Background on Oil Futures

20.     The "Benchmark Oil Futures Contract" is the futures contract on West Texas Intermediate ("WTI") light, sweet crude oil delivered to Cushing, Oklahoma, as traded on the New York Mercantile Exchange (the "NYMEX") that is the near-month contract to expire, except when the near-month contract is within two weeks of expiration, in which case it refers to the futures contract that is the next-month contract to expire.

21.     A futures contract is a legal agreement to buy or sell a particular commodity at a predetermined price at a specified time in the future. The buyer of a futures contract takes on the obligation to buy and receive the underlying asset when the futures contract expires, while the seller of a futures contract takes on the obligation to deliver the underlying asset at expiration. Futures contracts can be used to hedge other investments, to protect against fluctuations in the price of a commodity, or as a speculative investment.

22.     Nearly all retail investors trade commodity futures contracts without any expectation of ever taking or delivering the underlying asset. Instead, these investors close out their positions prior to contract expiration.  E*TRADE offered futures contracts that are settled with cash instead of oil known as "e-mini futures" that trade on the NYMEX. Upon expiration of the contracts, the "e-mini futures" converge with regular U.S. crude futures.

### Oil Market Crash

23.     In early 2020, the global coronavirus pandemic caused a precipitous decline in demand for oil. Between state, national and international lockdowns, businesses closed, travel halted to a crawl, and consumer spending declined.

24.     In addition, on March 8, 2020, the Kingdom of Saudi Arabia announced price discounts for its oil exports and Russia and Saudi Arabia announced increases in their oil production, both of which had the impact of depressing crude oil prices. The day following Saudi Arabia's announcement, the price of WTI fell 25%, the

FIRST AMENDED CLASS ACTION COMPLAINT

largest single-day decline it had suffered in decades. Within 10 days, WTI fell below $21 per barrel, which was an 18-year low and less than half the price of just two weeks prior.

25.    As a result, retail investors were purchasing options and/or futures in order to "buy the dip" in oil prices, expecting that the price of oil would rise as the market effects of the coronavirus pandemic and the geopolitical oil games between Russia and Saudi Arabia dissipated.

26.    Unfortunately, the futures market entered a period of "super cantango," a rare event that occurs when the spot price trades substantially below the futures price. This dynamic was exacerbated because the inventory space available to store WTI barrels in Cushing, Oklahoma was filling up due to the glut of supply and was increasing the costs to store delivered oil barrels.

27.    On April 20, 2020, the day before the May 2020 WTI futures contracts expired, the May 2020 WTI contracts closed at a negative price (-$37.63) as investors became concerned that the cost to store the barrels of oil being delivered to Cushing, Oklahoma would be more than the oil was worth.

28.    While oil futures had never before reached negative prices, it was known industrywide that the CME Group Inc.'s ("CME") benchmark oil contracts could go negative. In fact, on April 8, 2020, CME announced that it had been testing plans to support the possibility of negative options such that if, in any month, WTI oil futures settle at a price between $8.11 and $11.00 a barrel, it could switch to a different pricing model that would allow for negative pricing.

29.    Thereafter, on April 15, 2020, the owner of the NYMEX sent a notice to all its clearing-member firms advising them that they could test their systems using negative prices. Specifically. NYMEX stated: "Effective immediately, firms wishing to test such negative futures and/or strike prices in their systems may utilize CME's 'New Release' testing environments" for crude oil. Undoubtedly, E*TRADE received this notice.

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

30.     Thereafter, at approximately 11:50 a.m. on April 20, 2020, the CME reiterated that WTI futures can trade negative which sent the May contract plummeting to approximately $4.00 per barrel. Trading volume was low prior to the CME announcement but became more active after the announcement. In fact, the WTI futures price for the May contract remained positive until approximately 3:08pm EST when it began dropping precipitously almost $40.00 in the last 22 minutes of trading. Within a 3-minute span between 3:24pm and 1:27pm EST, the price dropped approximately $25.00 per barrel. Most, if not all of the price decline occurred in the last 22 minutes of trading.  The following chart produced by Bloomberg demonstrates the "super cantango" and precipitous decline in the last minutes of market trading on April 20:



Leisig, Matther "Oil Crash Busted Broker's Computers and Inflicted Big Losses" May 8, 2020 (www.bloomberg.com/news/articles/2020-05-08/oil-crash-busted-a-broker-s-computers-and-inflicted-huge-losses).

31.     While E*TRADE customers were permitted to, and did, trade when the e-mini futures prices for crude were positive, critically, E*TRADE's platform suffered an outage that failed to show the accurate price of the crude oil futures contracts when the spot price dropped below zero. In fact, once the price went negative, the platform continued to show a positive value, but did not display a bid or

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

ask price in order for its customers to close out their trades. E*TRADE's customers were flying blind, locked into their investments and blocked from trading. On April 20, 2020, E*TRADE's trading platform stopped functioning as it was supposed to, stopped processing orders entered by customers, and rendered its customers unable to enter new orders and mitigate their losses.

32.     E*TRADE was not the only brokerage firm for whom negative trading exposed serious bugs in its software. In fact, Interactive Brokers, another retail brokerage firm, admitted that it would "rebate from our own funds to our customers who were locked in with a long position during the time the price was negative any losses they suffered below zero." E*TRADE has failed and refused to make its customers whole.

33.     To the contrary, E*TRADE has misleadingly stated to multiple class members in a prepared automated response that:

> "[t]he turn to negative prices accelerated the market decline and severely diminished the amount of liquidity in the market. The severity of these events was marked by the extremely wide intraday trading range of more than $55, and extremely low trading volumes after prices turned negative…This wide trading range demonstrates a lack of active buyers in the market to support pricing levels or provide liquidity…E*TRADE [] has determined that there was not enough liquidity in the market to support existing the position you maintained in your account. Accordingly, E*TRADE will not be making any adjustments to your account."

### Plaintiff Benjamin Whitesides' Experiences

34.     Plaintiff Benjamin Whitesides is a customer of E*TRADE. He accepted E*TRADE's customer agreement by opening an E*TRADE trading account.

35.     On April 20, 2020, using his using his E*TRADE trading account, Mr. Whitesides purchased one e-mini crude oil futures contract with a May 2020 expiration date[2] for $1.55 totaling $775. He subsequently purchased a second e-mini

---

[2] It should be noted that the last trading day for an oil futures contract with a May 2020 expiration date was 5:00pm EST on April 20, 2020, the day of the Outage.

FIRST AMENDED CLASS ACTION COMPLAINT

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

crude futures contract with a May 2020 expiration date for $0.50 totaling $250. He then purchased a third e-mini crude futures contract with a May 2020 expiration date for $0.125 totaling $62.50 (collectively, the "contracts").  As the contract prices dropped into negative territory without warning, Mr. Whitesides immediately attempted to mitigate his losses by selling the contracts but, as a result of E*TRADE's system failure, he was unable to do so. Despite his best efforts, he was unable to utilize E*TRADE's system to place any trades for e-mini crude oil futures once the prices went negative.[3]

36.    At 5:00pm EST on April 20, 2020, the e-mini crude oil future contract with an expiration of May 2020 expired and was no longer traded. As an example of the system failure E*TRADE suffered; Mr. Whitesides received a statement from E*TRADE that showed that his e-mini contracts were closed at -$376.300 resulting in a margin balance owed to E*TRADE of $565,537.50 for the expired contracts:

```
                                    AVG LONG:     1775.00000
4/20/0      US          1           MAY 20 NYM EMINI CRUD      07      .125    US        188,212.50-
4/20/0      US          1           MAY 20 NYM EMINI CRUD      07      .500    US        188,400.00-
4/20/0      US          1           MAY 20 NYM EMINI CRUD      07     1.550    US        188,925.00-
            US          3*                    LTD- 4/20/20 CLOSE -376.300              565,537.50-
                                    AVG LONG:       .72500
```

```
MARGIN CALL AND AGING
   DATE      CURR       CALL AMOUNT      TYP   AGE
  -------    ----    ---------------     ---   ---
  4/20/20     US          575,048.85     (M)    1
```

37.    The following day, on April 21, 2020, E*TRADE revised its confirmation to reflect a closing price on Mr. Whitesides' position of -$37.63 and a margin balance owed of $57,532.50 for the expired contracts:

```
4/20/0      US          1           MAY 20 NYM EMINI CRUD      07      .125    US
4/20/0      US          1           MAY 20 NYM EMINI CRUD      07      .500    US
4/20/0      US          1           MAY 20 NYM EMINI CRUD      07     1.550    US
4/21/0      US                   3  MAY 20 NYM EMINI CRUD      07   -37.630    US
            US          3*        3* LTD- 4/20/20        GROSS PROFIT OR LOSS US        57,532.50-
```

38.    Mr. Whitesides attempted to contact E*TRADE throughout the Outage to, among other things, notify E*TRADE that he was unable to exercise his futures contract or otherwise execute any trades in his account, and seek assistance in

---

[3] https://www.bloombergquint.com/businessweek/are-day-traders-a-possible-cause-for-oil-prices-going-negative

1  mitigating his losses. He received no such support and was unable to mitigate his
2  losses.

3  <u>**Plaintiff Aziz Si Hadj Mohand's Experiences**</u>

4  39.   Plaintiff Aziz Si Hadj Mohand is a customer of E*TRADE. He accepted
5  E*TRADE's customer agreement by opening an E*TRADE trading account.

6  40.   On April 20, 2020, using his E*TRADE trading account, Mr. Mohand
7  purchased one e-mini crude oil futures contract with a May 2020 expiration date[4] for
8  $0.55 and sold that contract for $2.85 which resulted in a net profit of $1,150 for this
9  trade (excluding commission).

10  41.   On the same day, Mr. Mohand purchased one contract for e-mini crude
11  oil futures with a contract expiration of May 2020 for $2.40 totaling $1,200. When
12  the contract price was dropping and he tried to mitigate his losses by selling the
13  contract, as a result of E*TRADE's system failure, he was unable to do so. Despite
14  his best efforts, he was unable to utilize E*TRADE's system to place any trades for
15  e-mini crude oil futures once the prices went negative.

16  / / /
17  / / /
18  / / /
19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27
28

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

---

[4] It should be noted that the last trading day for an oil futures contract with a May 2020 expiration date was 5:00pm EST on April 20, 2020, the day of the Outage.

FIRST AMENDED CLASS ACTION COMPLAINT

42.   At 5:00pm EST on April 20, 2020, the e-mini crude oil future contract with an expiration of May 2020 expired and was no longer traded. As an example of the system failure E*TRADE suffered; Mr. Mohand received a statement from E*TRADE that showed that his contract was closed at -$376.300 resulting in a margin balance owed to E*TRADE of $189,350 for the expired contracts:

```
*   *   *   *   *   *   *   *   *       O P E N     P O S I T I O N S     *   *   *   *   *   *   *   *   *
  TRADE     SETTL     AT        LONG          SHORT       CONTRACT DESCRIPTION          EX    PRICE     CC    DEBIT/CREDIT
  ------    ------    --    -------------   -----------   --------------------------    ---   --------  ---   -------------
  4/20/0      US                 1                        MAY 20 NYM EMINI CRUD         07     2.400    US     189,350.00-
                                 1*                                LTD- 4/20/20 CLOSE -376.300          US     189,350.00-
                                                          AVG LONG:           2.40000


  MARGIN CALL AND AGING

   DATE       CURR        CALL AMOUNT     TYP   AGE
   ----       ----    --------------      ---   ---
  4/20/20      US         189,785.78      (M)    1


                                  **SEGREGATED USD**      **TOTAL SEGREGATED**    **CONVERTED TOTAL**
  BEGINNING BALANCE                    263.04                    263.04                   263.04
     COMMISSION                        148.50-                   148.50-                  148.50-
     EXCHANGE FEE                       22.80-                    22.80-                   22.80-
     NFA FEE                             1.98-                     1.98-                    1.98-
  TOTAL COMMISSION AND FEES            173.28-                   173.28-                  173.28-
  GROSS PROFIT OR LOSS                 262.50-                   262.50-                  262.50-
  CASH AMOUNTS                         263.04-                   263.04-                  263.04-
  ENDING BALANCE                       435.78-                   435.78-                  435.78-
  OPEN TRADE EQUITY                189,350.00-               189,350.00-              189,350.00-
  TOTAL EQUITY                     189,785.78-               189,785.78-              189,785.78-
  ACCOUNT VALUE AT MARKET          189,785.78-               189,785.78-              189,785.78-

  MARGIN DEFICIT                   189,785.78-               189,785.78-              189,785.78-

  MARGIN CALL                      189,785.78-               189,785.78-              189,785.78-
  ================================================================================
```

43.   The following day, on April 21, 2020, E*TRADE revised its confirmation to reflect a closing price on Mr. Mohand's position of -$37.63 and a debit balance owed of $20,015 for the expired contracts:

```
*   *   *   *   *   *   *   *   *       P U R C H A S E   &   S A L E     *   *   *   *   *   *   *   *   *
  TRADE     SETTL     AT        LONG          SHORT       CONTRACT DESCRIPTION          EX    PRICE     CC    DEBIT/CREDIT
  ------    ------    --    -------------   -----------   --------------------------    ---   --------  ---   -------------
  4/20/0      US                 1                        MAY 20 NYM EMINI CRUD         07     2.400    US
  4/21/0      US                                1         MAY 20 NYM EMINI CRUD         07    -37.630   US
              US                 1*             1*    LTD- 4/20/20           GROSS PROFIT OR LOSS  US       20,015.00-


                                  **SEGREGATED USD**      **TOTAL SEGREGATED**    **CONVERTED TOTAL**
  BEGINNING BALANCE                    435.78-                   435.78-                  435.78-
     COMMISSION                          1.50-                     1.50-                    1.50-
     NFA FEE                              .02-                      .02-                     .02-
  TOTAL COMMISSION AND FEES              1.52-                     1.52-                    1.52-
  GROSS PROFIT OR LOSS              20,015.00-                20,015.00-               20,015.00-
  ENDING BALANCE                    20,452.30-                20,452.30-               20,452.30-
  TOTAL EQUITY                      20,452.30-                20,452.30-               20,452.30-
  ACCOUNT VALUE AT MARKET           20,452.30-                20,452.30-               20,452.30-

  MARGIN DEFICIT                    20,452.30-                20,452.30-               20,452.30-
```

44.   Mr. Mohand attempted to contact E*TRADE through the Outage to, among other things, notify E*TRADE that he was unable to exercise his futures contract or otherwise execute any trades in his account, and to seek assistance in

GIRARD BENGALI, APC
355 South Grand Ave., Suite 2450
Los Angeles, California 90071
(323) 302-8300

13

mitigating his losses. He received no such support and was unable to mitigate his losses.

### Plaintiff Matthew Cheung's Experiences

45.    Plaintiff Matthew Cheung is a customer of E*TRADE. He accepted E*TRADE's customer agreement by opening an E*TRADE trading account.

46.    On April 20, 2020, using his using his E*TRADE trading account, Mr. Cheung purchased one e-mini crude oil futures contract with a May 2020 expiration date for $4.85 totaling $2,425. He subsequently purchased a second e-mini crude futures contract with a May 2020 expiration date for $3.75 totaling $1,875. He purchased a third e-mini crude futures contract with a May 2020 expiration date for $3.10 totaling $1,550.  He purchased a fourth e-mini crude futures contract with a May 2020 expiration date for $2.10 totaling $1,050. Finally, he purchased a fifth e-mini crude futures contract with a May 2020 expiration date for $0.50 totaling $250 (collectively, the "contracts").  As the e-mini crude oil futures dropped into negative territory without warning, Mr. Cheung immediately attempted to mitigate his losses by selling the contracts but, as a result of E*TRADE's system failure, he was unable to do so. Despite his best efforts, he was unable to utilize E*TRADE's system to place any trades for e-mini crude oil futures once the prices went negative.

47.    At 5:00pm EST on April 20, 2020, the e-mini crude oil future contract with an expiration of May 2020 expired and was no longer traded. As an example of the system failure E*TRADE suffered; Mr. Cheung received a statement from E*TRADE that showed that his e-mini contracts were closed at -$376.300 resulting in a margin balance owed to E*TRADE of $947,900 for the expired contracts:

```
*  *  *  *  *  *  *  *  *    O P E N    P O S I T I O N S  *  *  *  *  *  *  *  *  *  *  *  *  *

TRADE    SETTL   AT     LONG        SHORT     CONTRACT DESCRIPTION         EX    PRICE    CC   DEBIT/CREDIT
-----    -----   --     ----        -----     --------------------         --    -----    --   ------------
4/20/0           US      1                    MAY 20 NYM EMINI CRUD        07     .500    US      188,400.00-
4/20/0           US      1                    MAY 20 NYM EMINI CRUD        07    2.100    US      189,200.00-
4/20/0           US      1                    MAY 20 NYM EMINI CRUD        07    3.100    US      189,700.00-
4/20/0           US      1                    MAY 20 NYM EMINI CRUD        07    3.750    US      190,025.00-
4/20/0           US      1                    MAY 20 NYM EMINI CRUD        07    4.850    US      190,575.00-
                         5*                    LTD- 4/20/20 CLOSE  -376.300            947,900.00-
                                              AVG LONG:       2.86000
```

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

FIRST AMENDED CLASS ACTION COMPLAINT

48.     The following day, on April 21, 2020, E*TRADE revised its confirmation to reflect a closing price on Mr. Cheung's position of -$37.63 and a margin balance now owed of $101,225 for the expired contracts:

| TRADE | SETTL | AT | LONG | SHORT | CONTRACT DESCRIPTION | EX | PRICE | CC | DEBIT/CREDIT |
|-------|-------|----|------|-------|----------------------|----|-------|----|--------------|
| 4/20/0 | | US | 1 | | MAY 20 NYM EMINI CRUD | 07 | .500 | US | |
| 4/20/0 | | US | 1 | | MAY 20 NYM EMINI CRUD | 07 | 2.100 | US | |
| 4/20/0 | | US | 1 | | MAY 20 NYM EMINI CRUD | 07 | 3.100 | US | |
| 4/20/0 | | US | 1 | | MAY 20 NYM EMINI CRUD | 07 | 3.750 | US | |
| 4/20/0 | | US | 1 | | MAY 20 NYM EMINI CRUD | 07 | 4.850 | US | |
| 4/21/0 | | US | | 5 | MAY 20 NYM EMINI CRUD | 07 | -37.630 | US | |
| | | US | 5* | 5* | LTD- 4/20/20 | GROSS PROFIT OR LOSS | US | | 101,225.00- |

49.     Mr. Cheung attempted to contact E*TRADE throughout the Outage to, among other things, notify E*TRADE that he was unable to exercise his futures contract or otherwise execute any trades in his account, and seek assistance in mitigating his losses. He received no such support and was unable to mitigate his losses.

50.     Critically, for Plaintiffs Whitesides, Mohand and Cheung, at no point on March 20, 2020, nor prior thereto, was any communication made to customers regarding the possibility of negative trading in oil futures, nor was the E*TRADE trading software updated to display negative prices or to allow the entering of orders with negative values, preventing each individual (and the class) from closing their positions once the futures contracts were trading in the negative.

## **Class Action Allegations**

51.     Plaintiffs bring claims, pursuant to Federal Rule of Civil Procedure, Rule 23(a) and Rule 23(b)(1)-(3), on behalf of the following class:

*All persons and entities within the United States who, on April 20, 2020, held a futures contract for NYMEX e-mini crude oil expiring May 2020 in an E*TRADE trading account, but were unable to sell, said futures contract (hereinafter referred to as the "Class").*

52.     Plaintiff Mohand brings claims, pursuant to Federal Rules of Civil Procedure, Rule 23(a) and Rule 23(b)(1)-(3), on behalf of the following subclass:

/ / /

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

*All persons and entities within California who, on April 20, 2020, held a futures contract for NYMEX e-mini crude oil expiring May 2020 in an E\*TRADE trading account, but were unable to sell said futures contract (hereinafter referred to as the "Subclass").*

53.     Excluded from the Class and Subclass are the E\*TRADE entities, counsel for any parties to this litigation, and the Court and its personnel presiding over this action, including, at all relevant times, their employees, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which E\*TRADE have or had a controlling interest; counsel for any of the parties to this litigation, as well as the Court and its personnel presiding over this action.

54.     This action has been brought and may properly be maintained as a class action against E\*TRADE pursuant to the provisions of Federal Rule of Civil Procedure 23.

55.     Numerosity: The precise number of members of the proposed Class and Subclass is unknown to Plaintiffs at this time, but, based on information and belief, the members are so numerous that their individual joinder herein is impracticable. Based on information and belief and publicly available reports, members number in the thousands. All members may be notified of the pendency of this action by reference to E\*TRADE's records, or by other alternative means.

56.     Commonality: Numerous questions of law or fact are common to the claims of Plaintiffs and members of the proposed Class and Subclass. These common questions of law and fact exist as to all such members and predominate over questions affecting only individual members. These common legal and factual questions include, but are not limited to the following:

a.     Whether E\*TRADE's technology was inadequate to provide the trading services that were needed to handle reasonable consumer demand.

FIRST AMENDED CLASS ACTION COMPLAINT

b.      Whether E*TRADE failed to provide contingencies to customers to execute timely trades in the event of an outage.

c.      Whether E*TRADE was negligent or grossly negligent by failing to provide trading services in a timely manner due to its substandard and inadequate technology platform and lack of timely response to customers requesting to place trades.

d.      With respect to the Subclass, whether E*TRADE's conduct was unlawful or unfair in violation of Section 17201 of the California Business & Professions Code (the "Unfair Competition Law").

e.      Whether Plaintiffs and the other Class and Subclass members were injured by E*TRADE's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

f.      Whether Plaintiffs and the other Class and Subclass members are entitled to injunctive and declaratory relief.

57.     Typicality: The claims of the named Plaintiffs are typical of the claims of the proposed Class. The named Plaintiffs were customers during the class period and were unable to view accurate information about their holdings, unable to place time-sensitive trades, and sustained damages as a result of E*TRADE's wrongful conduct.  For the same reasons, Plaintiff Mohand's claims are typical of the proposed Subclass.  Additionally, Plaintiff Mohand was, at all relevant times, a resident of California.

58.     Adequate Representation: Plaintiffs will fairly and adequately represent the interests of the Class and Mr. Mohand of the Subclass.  They have no conflicts of interest with respect to this action,  in relation to other members of the Class and Subclass. Plaintiffs have retained competent counsel experienced in prosecuting complex class actions and securities-related litigation and will vigorously litigate this class action.

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

59.     Predominance and Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for E*TRADE. Additionally, given the relatively modest damages sustained by most individual class members, few, if any, proposed class members could or would sustain the economic burden of pursuing individual remedies for E*TRADE's wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

60.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudications with respect to individual class members, which may produce incompatible standards of conduct for Defendants.

61.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed class would create a risk of adjudications with respect to individual class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

62.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as E*TRADE has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the class as a whole.

63.     Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the class members predominate over any

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

18

questions affecting only individual members, and a class action is superior to other available remedies for the fair and efficient adjudication of this controversy. The amount of damages available to the Plaintiffs and individual class members of the Class and Subclass is insufficient to make litigation addressing E*TRADE's conduct economically feasible for most in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

64.     Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the class members may be certified and decided by this Court on a class-wide basis.

**COUNT I**
**Negligence**

65.     Plaintiffs hereby incorporate by reference the factual allegations set forth above.

66.     E*TRADE had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

67.     National Futures Association ("NFA") Compliance Rule 2-9 requires every "Member" to diligently supervise its employees and agents in all aspects of their futures activities. Furthermore, according to Interpretive Notice 9046, "Members who accept orders must adopt and enforce written procedures reasonably designed to maintain adequate personnel and facilities for the timely and efficient delivery of customer orders and reporting of executions." The same notice provides: "Systems Controls. An electronic trading system should also be designed to identify trading anomalies or patterns that indicate a system malfunction, especially a malfunction that results in undue risk…" (*Id*.)  With respect to "Trade Integrity",

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

Interpretive Notice 9060, interpreting Compliance Rule 2-36(e) states: "[T]rading platforms must be designed to provide bids and offers that are reasonably related to current market prices and conditions."

68.     E*TRADE unlawfully breached its duties by, among other things, (i) failing to provide adequate technological systems necessary to perform under the parties' agreement(s); (ii) failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; (iii) failing to provide bids and offers that were reasonably related to current market prices and conditions; (iv) failing to display accurate balances and/or live account values; (v) failing to identify trading anomalies or patterns that indicate a system malfunction;(vi) failing to provide access to its trading services in a timely manner; (vii) ignoring the CME Group advisory on April 15, 2020 for firms to test negative price trading, especially as it related to the NYMEX energy futures contracts; and (viii) otherwise permitting the Outage prohibiting the parties from performing in a timely manner (or at all) under the  parties' agreements

69.     E*TRADE's negligent and wrongful breaches of its duties owed to Plaintiffs and members of the Class and Subclass proximately caused losses and damages that would not have occurred but for E*TRADE's breach of its duty of due care. These losses reflect damages to Plaintiffs and members of the Class and Subclass in an amount to be determined at trial or separate proceedings as necessary.

### COUNT II
### Gross Negligence

70.     Plaintiffs hereby incorporate by reference the factual allegations set forth above.

71.     E*TRADE had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

72.     National Futures Association ("NFA") Compliance Rule 2-9 requires every "Member" to diligently supervise its employees and agents in all aspects of

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

20

their futures activities. Furthermore, according to Interpretive Notice 9046, "Members who accept orders must adopt and enforce written procedures reasonably designed to maintain adequate personnel and facilities for the timely and efficient delivery of customer orders and reporting of executions." The same notice provides: "Systems Controls. An electronic trading system should also be designed to identify trading anomalies or patterns that indicate a system malfunction, especially a malfunction that results in undue risk…" (*Id*.)  With respect to "Trade Integrity", Interpretive Notice 9060, interpreting Compliance Rule 2-36(e) states: "[T]rading platforms must be designed to provide bids and offers that are reasonably related to current market prices and conditions."

73.     E*TRADE unlawfully breached its duties by, among other things, (i) failing to provide adequate technological systems necessary to perform under the parties' agreement(s); (ii) failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; (iii) failing to provide bids and offers that were reasonably related to current market prices and conditions; (iv) failing to display accurate balances and/or live account values; (v) failing to identify trading anomalies or patterns that indicate a system malfunction;(vi) failing to provide access to its trading services in a timely manner; (vii) ignoring the CME Group advisory on April 15, 2020 for firms to test negative price trading, especially as it related to the NYMEX energy futures contracts; and (viii) otherwise permitting the Outage prohibiting the parties from performing in a timely manner (or at all) under the  parties' agreements.

74.     E*TRADE's conduct as set forth in this Complaint was want of even scant care, and its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct. Furthermore, E*TRADE essentially abandoned its customers altogether during the Outage, a standard of care so far below what is required for a business engaging in time sensitive trading services that it amounts to a complete abandonment of its duties. No other conduct than that

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

21

1  committed by E*TRADE could be more grossly negligent than abandoning its

2  customers altogether for a substantial period of times during which they incurred

3  substantial losses and were unable to contact anyone at E*TRADE and then received

4  grossly inaccurate statements.

5       75.    E*TRADE's grossly negligent and wrongful breaches of its duties owed

6  to Plaintiffs and members of the Class and Subclass proximately caused losses and

7  damages that would not have occurred but for E*TRADE's gross breach of its duty

8  of due care. These losses reflect damages to Plaintiffs and members of the Class and

9  Subclass in an amount to be determined at trial or separate proceedings as necessary.

### COUNT III
**Violation of California Unfair Competition Law,**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

13       76.    Plaintiff Mohand hereby incorporates by reference the factual

14  allegations set forth above and further asserts this cause of action with respect to

15  himself individually and on behalf of the Subclass

16       77.    E*TRADE has engaged in unfair competition within the meaning of

17  California Business & Professions Code section 17200, et seq., because E*TRADE's

18  conduct is unlawful and unfair, as herein alleged.

19       78.    Plaintiff Mohand and members of the Subclass and E*TRADE are each

20  a "person," or "persons," within the meaning of Section 17201 of the California

21  Unfair Competition Law ("UCL").

22       79.    The UCL prohibits any unlawful or unfair business practices or acts.

23  E*TRADE's conduct, as alleged herein, constitutes an unlawful and unfair business

24  practice that occurred in connection with the marketing, advertisement, and sale of its

25  services.

26       80.    E*TRADE's conduct, as described within, violated the UCL's unlawful

27  prong because it constitutes negligence or gross negligence.

28  / / /

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

81.   E*TRADE's conduct, as described within, violated the UCL's unfair prong because its conduct was and remains immoral, unethical, oppressive, or unscrupulous and has caused injuries to the Plaintiffs and the class that outweigh any purported benefit. E*TRADE's (i) failure to provide adequate technological systems necessary to perform under the parties' agreement(s); (ii) trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; (iii) bids and offers that were reasonably related to current market prices and conditions; (iv) failure to display accurate balances and/or live account values; (v) failure to identify trading anomalies or patterns that indicate a system malfunction;(vi) failure to provide access to its trading services in a timely manner; (vii) decision to ignore the CME Group advisory on April 15, 2020 for firms to test negative price trading, especially as it related to the NYMEX energy futures contracts; and (viii) decision to otherwise permit the Outage prohibiting the parties from performing in a timely manner (or at all) under the  parties' agreements.  caused Plaintiffs and class members to suffer losses. The utility of E*TRADE's conduct is far outweighed by the gravity of harm to consumers who have now incurred losses they would not have otherwise.

82.   As a direct and proximate result of E*TRADE's conduct, which constitutes unlawful and unfair business practices, Plaintiffs and class members have been damaged and suffered ascertainable losses, thereby entitling them to recover restitution and equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants and in favor of Plaintiffs and the Class and Subclass and award the following relief:

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

FIRST AMENDED CLASS ACTION COMPLAINT

A.    Certifying the Class and Subclass and naming Plaintiffs as representatives thereof and Plaintiff's attorneys as Class Counsel to represent the class members;

B.    Finding in favor of Plaintiffs and the members of the Class and Subclass on all causes of action asserted herein;

C.    Granting damages and/or restitution to Plaintiffs and members of the Class and Subclass;

D.    Granting compensatory damages, the amount of which is to be determined at trial;

E.    Granting punitive damages;

F.    Granting pre- and post-judgment interest on all amounts awarded;

G.    Granting restitution and all other forms of equitable monetary relief;

H.    Granting injunctive relief as pleaded or as the Court may deem proper;

I.    Awarding Plaintiffs and members of the Class and Subclass reasonable attorneys' fees and expenses and costs of suit; and

J.    Granting further relief as this Court may deem just and proper.


DATED: November 12, 2020          Respectfully submitted,
                                  KABATECK LLP


                              By: /s/Christopher B. Noyes
                                  BRIAN S. KABATECK
                                  CHRISTOPHER B. NOYES
                                  JOANA FANG
                                  Attorneys for Plaintiffs

DATED: November 12, 2020          Respectfully submitted,
                                  ACTIUM LLP


                              By: /s/Michael Gatto
                                  MICHAEL GATTO
                                  Attorneys for Plaintiffs

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

FIRST AMENDED CLASS ACTION COMPLAINT

DATED: November 12, 2020          Respectfully submitted,
                                  GIRARD BENGALI, APC

                           By:    /s/Omar Bengali
                                  ROBERT J. GIRARD II
                                  OMAR H. BENGALI
                                  STEVEN M. BUHA
                                  Attorneys for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, individually and on behalf of the class, demands a trial by jury for all issues so triable.

DATED: November 12, 2020        Respectfully submitted,
                                 KABATECK LLP

                                 By: /s/Christopher B. Noyes
                                 BRIAN S. KABATECK
                                 CHRISTOPHER B. NOYES
                                 JOANA FANG
                                 Attorneys for Plaintiffs

DATED: November 12, 2020        Respectfully submitted,
                                 ACTIUM LLP

                                 By: /s/Michael Gatto
                                 MICHAEL GATTO
                                 Attorneys for Plaintiffs

DATED: November 12, 2020        Respectfully submitted,
                                 GIRARD BENGALI, APC

                               By: /s/Omar Bengali
                                 ROBERT J. GIRARD II
                                 OMAR H. BENGALI
                                 STEVEN M. BUHA
                                 Attorneys for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

## CERTIFICATION AND NOTICE OF INTERESTED PARTIES
### Pursuant to Local Rule 7.1-1

**TO THE COURT AND ALL PARTIES OF RECORD:**

The undersigned, counsel of record for Plaintiff(s) Benjamin Whitesides ("Whitesides"), Aziz Si Hadj Mohand ("Mohand"), and Matthew Cheung ("Cheung") (collectively and individually, "Plaintiff(s)"), individually and on behalf of others similarly situated, certify that the following listed party(ies) may have a pecuniary interest in the outcome of this case. These representations are made to enable the Court to evaluate possible disqualification or recusal.

| PARTY(IES) | CONNECTION/INTEREST |
| --- | --- |
| Benjamin Whitesides | Plaintiff |
| Aziz Si Hadj Mohand | Plaintiff |
| Matthew Cheung | Plaintiff |
| E*Trade Securities, LLC | Defendant |
| E*Trade Futures, LLC | Defendant |

DATED: November 12, 2020      Respectfully submitted,
KABATECK LLP

By: /s/Christopher B. Noyes
BRIAN S. KABATECK
CHRISTOPHER B. NOYES
JOANA FANG
Attorneys for Plaintiffs

DATED: November 12, 2020      Respectfully submitted,
ACTIUM LLP

By: /s/Michael Gatto
MICHAEL GATTO
Attorneys for Plaintiffs

/ / /

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT

DATED: November 12, 2020          Respectfully submitted,
                                  GIRARD BENGALI, APC

                          By:   /s/Omar Bengali
                                ROBERT J. GIRARD II
                                OMAR H. BENGALI
                                STEVEN M. BUHA
                                Attorneys for Plaintiffs

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

FIRST AMENDED CLASS ACTION COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Northern District of California by using the CM/ECF system on November 12, 2020.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

DATED: November 12, 2020   Respectfully submitted,
               KABATECK LLP

             By: /s/Christopher B. Noyes
               BRIAN S. KABATECK
               CHRISTOPHER B. NOYES
               JOANA FANG
               Attorneys for Plaintiffs

DATED: November 12, 2020   Respectfully submitted,
               ACTIUM LLP

             By: /s/Michael Gatto
               MICHAEL GATTO
               Attorneys for Plaintiffs

DATED: November 12, 2020   Respectfully submitted,
               GIRARD BENGALI, APC

             By: /s/Omar Bengali
               ROBERT J. GIRARD II
               OMAR H. BENGALI
               STEVEN M. BUHA
               Attorneys for Plaintiffs

GIRARD BENGALI, APC
355 SOUTH GRAND AVE., SUITE 2450
LOS ANGELES, CALIFORNIA 90071
(323) 302-8300

FIRST AMENDED CLASS ACTION COMPLAINT