1   STEPHEN YOUNG, CASB No. 58711
    steve.young@kyl.com
2   STACEY M. GARRETT, CASB No. 155319
    stacey.garrett@kyl.com
3   KEESAL, YOUNG & LOGAN
    A Professional Corporation
4   400 Oceangate, Suite 1400
    Long Beach, California  90802
5   Telephone:     (562) 436-2000
    Facsimile:     (562) 436-7416
6
7   BEN SUTER, CASB No. 107680
    ben.suter@kyl.com
8   KEESAL, YOUNG & LOGAN
    A Professional Corporation
    450 Pacific Avenue
9   San Francisco, California  94133
    Telephone:     (415) 398-6000
10  Facsimile:     (415) 981-0136

11  Attorneys for Defendants
    E*TRADE Securities LLC and
12  E*TRADE Futures LLC

13              **UNITED STATES DISTRICT COURT**

14        **NORTHERN DISTRICT OF CALIFORNIA– SAN FRANCISCO**

15

16  BENJAMIN WHITESIDES, AZIZ SI HADJ              ) Case No. 3:20-cv-5803-JSC
    MOHAND, and MATTHEW CHEUNG,                    )
17  individually and on behalf of all others similarly ) Hon. Jacqueline Scott Corley
    situated,                                      )
18                                                 ) **E*TRADE SECURITIES LLC'S AND**
                                        Plaintiffs, ) **E*TRADE FUTURES LLC'S NOTICE OF**
19                                                 ) **MOTION AND MOTION TO DISMISS**
                   vs.                             ) **SECOND AMENDED COMPLAINT OR IN**
20                                                 ) **THE ALTERNATIVE, MOTION TO**
    E*TRADE SECURITIES, LLC, a Delaware            ) **STRIKE; MEMORANDUM OF POINTS**
21  limited liability company; and E*TRADE         ) **AND AUTHORITIES IN SUPPORT**
    FUTURES, LLC, an Illinois limited liability    ) **THEREOF**
22  company, and DOES 1 through 50, inclusive,     )
                                                   ) [Fed. R. Civ. P. 12(b)(6) and 12(f)]
23                                      Defendants. )
                                                   ) Date:    June 3, 2021
24                                                 ) Time:    9:00 a.m.
    _____           ) Place:   Courtroom E – 15th Floor
25
26  ///
27
28  ///

- 1 -

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2   PLEASE TAKE NOTICE that, on June 3, 2021 at 9:00 a.m., or as soon thereafter as

3   counsel may be heard in Courtroom E of the U.S. District Court for the Northern District of

4   California, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable

5   Jacqueline Scott Corley, Defendants E*TRADE Securities LLC and E*TRADE Futures LLC will

6   move, and hereby move, for an Order dismissing the Second Amended Complaint pursuant to Federal

7   Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted.  In

8   the alternative, Defendants E*TRADE Securities LLC and E*TRADE Futures LLC will move, and

9   hereby move, for an Order striking Paragraphs 32 and 33 from the Second Amended Complaint

10  pursuant to Federal Rule of Civil Procedure 12(f) because they contain impertinent and immaterial

11  matter that is prejudicial to Defendants. This motion is based on this Notice of Motion, the

12  accompanying Memorandum of Law, Request for Judicial Notice, Declaration of E*TRADE

13  Custodian of Records Erik J. Renga, Declaration of James Reilly, all exhibits thereto, and all other

14  matters properly before this Court.

15

## DESCRIPTION OF RELIEF SOUGHT

16  E*TRADE Securities LLC and E*TRADE Futures LLC seek an order dismissing the

17  Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The dismissal

18  should be without leave to amend because further amendment would be futile.

19  In the alternative, E*TRADE Securities LLC and E*TRADE Futures LLC seek an

20  order striking Paragraphs 32 and 33 from the Second Amended Complaint pursuant to Federal Rule of

21  Civil Procedure 12(f) because they contain impertinent and immaterial matter that is prejudicial to

22  E*TRADE Securities LLC and E*TRADE Futures LLC.

23

24  DATED:  April 26, 2021

25

26

27

28

*/s/ Stacey M. Garrett*
STEPHEN YOUNG
BEN SUTER
STACEY M. GARRETT
KEESAL, YOUNG & LOGAN
Attorneys for Defendants
E*TRADE Securities LLC and E*TRADE
Futures LLC

1

## STATEMENT OF ISSUES TO BE DECIDED

2      E*TRADE Securities LLC and E*TRADE Futures LLC (collectively, "E*TRADE")[1]

3  offer an electronic trading service that allows users to buy and sell securities and commodity futures

4  online.  E*TRADE's relationship with Plaintiffs is governed by a written Customer Agreement.

5      This case arises out of Plaintiffs' decision to day trade expiring crude oil futures

6  contracts on the worst day in history for crude oil investors.  On Monday, April 20, 2020, Plaintiffs

7  each bought e-mini May 2020 West Texas Intermediate (WTI) crude oil contracts and held them as

8  the price fell and then plummeted to zero.  Then—during the final 22 minutes of the trading session—

9  the May 2020 contract traded at prices *below $0* per barrel for the first time in history.  The negative

10  pricing turned the market on its head.  As a result of the oversupplied global oil market and an

11  unprecedented reduction in demand due to COVID-19 slowdowns and shutdowns, trading volume

12  ground to a halt and liquidity dried up.

13      The Second Amended Complaint ("SAC") asserts claims for breach of contract, breach

14  of the implied covenant of good faith and fair dealing and violation of California's Business &

15  Professions Code §17200 (Unfair Competition Law ("UCL")).  The gravamen of each claim is that

16  E*TRADE failed to deliver trading features that it never promised to provide:  access to E*TRADE's

17  trading service "at all times," and the ability for Plaintiffs to enter orders to sell commodity futures at

18  *negative prices*.  The Customer Agreement does not obligate E*TRADE to do either of those things.

19  In fact, Plaintiffs expressly agreed that E*TRADE does not guarantee uninterrupted access to its

20  trading service, and that E*TRADE shall not be liable for losses caused by system failures, which is

21  what Plaintiffs allege happened on April 20, 2020.  Finally, E*TRADE did not cause Plaintiffs' losses.

22  Plaintiffs fail to establish that their negatively-priced sell orders would have been filled in the illiquid

23  market of April 20 if those orders had been entered into E*TRADE's system.  For these and other

24  reasons, the SAC fails to state a claim for breach of contract or breach of the implied covenant of good

25  faith and fair dealing, so both claims must be dismissed.

26

27  [1] As of October 2, 2020, E*TRADE Securities LLC and E*TRADE Futures LLC became wholly owned subsidiaries of Morgan Stanley.

28

MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE, MOTION TO STRIKE – Case No. 3:20-cv-5803-JSC

KYL4819-4644-6311.1

1          The UCL claim also is defective in ways that cannot be cured.  The UCL claim is

2  barred by the New York choice-of-law clause in the Customer Agreement.  In addition, the UCL claim

3  is dependent on Plaintiffs' now-dismissed negligence claim and defective contract claims.  The SAC

4  also fails to establish standing, fails to establish that E*TRADE engaged in an unlawful or an unfair

5  business practice, fails to establish causation, and fails to establish that E*TRADE received any

6  property or money from Plaintiffs as a result of their *inability* to place orders to sell commodity

7  contracts at negative prices on April 20. This motion therefore presents the following issues:

8          1.  Does the SAC state a claim for breach of contract where:  (a) the SAC fails to

9              identify a specific term in the Customer Agreement that E*TRADE allegedly

10             breached; (b) Plaintiffs agreed that E*TRADE shall not be liable for losses arising

11             from system failures or software malfunctions; and (c) the SAC fails to establish

12             causation?

13         2.  Does the SAC state a claim for breach of the implied covenant of good faith and

14             fair dealing where it:  (a) is duplicative of the breach of contract claim; (b) fails to

15             identify any specific contractual benefit that was frustrated (c) seeks to impose

16             obligations that are inconsistent with the express terms of the Customer Agreement;

17             and (d) fails to establish causation?

18         3.  Does the SAC state a claim for violation of California's Unfair Competition Law

19             where:  (a) the Customer Agreement is governed by New York law; (b) Plaintiffs

20             lack standing; (c) the UCL claim alleges the same conduct that formed the basis of

21             Plaintiffs' now-dismissed negligence and UCL claims; (d) the UCL claim is

22             dependent on the defective contract claims; (d) Plaintiffs fail to establish any

23             unlawful or unfair business practice; and (e) Plaintiffs fail to establish a basis for

24             injunctive relief, restitution or attorneys' fees?

25         4.  If any claim is not dismissed, should the Court strike the impertinent and

26             immaterial matter at Paragraphs 32 and 33 from the SAC?

27         E*TRADE respectfully submits that the SAC fails to state a claim upon which relief

28  can be granted.  The SAC therefore should be dismissed.

1

**TABLE OF CONTENTS**

2

**Page**

3  TABLE OF AUTHORITIES ..................................................................... 7

4  MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 13

5  I.  FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT. ..................... 13

6  II.  JURISDICTION ................................................................... 14

7  III.  PROCEDURAL STATUS ........................................................ 14

8  IV.  LEGAL STANDARD ............................................................. 15

9      A.  MOTION TO DISMISS. ...................................................... 15

10     B.  APPLICABLE LAW. .......................................................... 16

11  V.  ARGUMENT ....................................................................... 17

12     A.  THE SAC FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT. ............. 17

13         1.  The SAC fails to identify any term of the Customer Agreement
               that E*TRADE allegedly breached. .................................... 17

14

15         2.  Plaintiffs' breach of contract claim is barred by the Customer
               Agreement. ........................................................... 19

16         3.  The SAC fails to establish that E*TRADE—as opposed to
               market illiquidity on April 20—caused Plaintiffs' losses. .............. 20

17

18     B.  THE SAC FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED
           COVENANT OF GOOD FAITH AND FAIR DEALING. ......................... 22

19         1.  The implied covenant claim is duplicative of the breach of
               contract claim. ...................................................... 22

20

21         2.  The implied covenant claim fails to identify any specific
               contractual right that was frustrated. ............................... 24

22         3.  The implied covenant claim seeks to impose terms that are
               inconsistent with the express terms of the Customer Agreement. ........ 25

23

24         4.  The implied covenant claim fails to establish causation. ............... 26

       C.  THE SAC FAILS TO STATE A UCL CLAIM. ................................. 26

25         1.  The UCL claim is barred by the New York choice of law
26             clause. .............................................................. 26

27         2.  Plaintiffs lack standing to assert a UCL claim. ...................... 27

28         3.  The SAC fails to establish any "unlawful" business practice. ......... 28

- 5 -

4.   Plaintiffs' claim under the "unlawful" prong of the UCL is
     dependent on the defective contract claims.................................................. 28

5.   The SAC fails to establish any "unfair" business practice. ......................... 29

     a.   Plaintiffs cannot resurrect their dismissed negligence
          and UCL claims by recasting them as a "new" UCL
          claim. ........................................................................................... 30

     b.   Plaintiffs cannot state a claim for violation of the UCL's
          "unfair" prong by relying on the defective contract
          claims............................................................................................. 31

6.   The SAC fails to establish an entitlement to an available UCL
     remedy. ...................................................................................................... 32

     a.   The SAC fails to state a basis for restitution. ................................... 32

     b.   The SAC fails to state a basis for injunctive relief. ........................... 34

     c.   Plaintiffs are not entitled to an award of attorneys' fees. ................. 34

D.   THE SAC SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND. ................ 34

E.   IF THE SAC IS NOT DISMISSED, THE IMMATERIAL AND
     IMPERTINENT MATTER SHOULD BE STRICKEN. ............................................. 35

     1.   Interactive Brokers' settlement of complaints................................................ 35

     2.   E*TRADE's allegedly misleading statement regarding market
          liquidity. ..................................................................................................... 36

VI.  CONCLUSION ............................................................................................................. 36

MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE,
MOTION TO STRIKE – Case No. 3:20-cv-5803-JSC

KYL4819-4644-6311.1

1
## TABLE OF AUTHORITIES

2                                                                      **Page(s)**

3                              FEDERAL CASES

4   *Ashcroft v. Iqbal,*
5       556 U.S. 662 (2009) ..........................................................................................16, 30

6   *Barnes v. AT&T Pension Benefit Plan,*
7       718 F. Supp. 2d 1167 (N.D. Cal. 2010).........................................................................35

8   *Bell Atl. Corp. v. Twombly,*
        550 U.S. 544 (2007) ...........................................................................................15, 22

9   *Benson v. Citibank, N.A.,*
10      No. 12-0760 JSC
        2012 U.S. Dist. LEXIS 199984 (N. D. Cal. Dec. 6, 2012).........................................29, 32

11  *Berkeley v. Wells Fargo Bank,*
12      No. 15-cv-00749-JSC
        2016 U.S. Dist. LEXIS 1295 (N.D. Cal. Jan. 6, 2016).....................................................28
13

14  *Card v. Ralph Lauren Corp.,*
        No. 18-cv-02553-JSC
15      2018 U.S. Dist. LEXIS 147609 (N.D. Cal. Aug. 29, 2018) .......................................29, 32

16  *Daniels-Hall v. Nat'l Educ. Ass'n,*
17      629 F.3d 992 (9th Cir. 2010) .........................................................................................16

18  *Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
        No. 96 Civ. 7874 (RWS)
19      2002 U.S. Dist. LEXIS 7535 (S.D.N.Y. Apr. 30, 2002) ...........................................20, 21

20  *Greene v. Wells Fargo Bank, N.A.,*
        No. 18-cv-06689-JSC
21      2018 U.S. Dist. LEXIS 217597 (N.D. Cal. Dec. 28, 2018)..............................................27

22  *Harris v. Provident Life & Accident Ins. Co.,*
23      310 F.3d 73 (2d Cir. 2002) ............................................................................................23

24  *Hicks v. PGA Tour, Inc.,*
        165 F. Supp. 3d 898 (N.D. Cal. 2016).....................................................................29, 31
25

26  *Johnson v. Riverside Healthcare Sys.,*
        534 F.3d 1116 (9th Cir. 2008) .......................................................................................16

27  *Kelly v. L.L. Cool J.,*
        145 F.R.D. 32 (S.D.N.Y. 1992)......................................................................................35
28

MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE,
MOTION TO STRIKE – Case No. 3:20-cv-5803-JSC

KYL4819-4644-6311.1

*In re Kirkland*,
   915 F.2d 1236 (9th Cir. 1990) ..........................................................................................16

*Knowles v. TD Ameritrade Holding Corp.*,
   427 F. Supp. 3d 1070 (D. Neb. 2019) ......................................................................19, 24

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) ..........................................................................................16

*LNC Invs. v. First Fid. Bank, N.A.*,
   173 F.3d 454 (2d Cir. 1999) ..............................................................................................20

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ..........................................................................................16

*Medimatch, Inc. v. Lucent Techs., Inc.*,
   120 F. Supp. 2d 842 (N.D. Cal. 2000)..........................................................................26, 27

*In re Merrill Lynch Sec. Litig.*,
   191 F.R.D. 391 (D.N.J. 1999) ..........................................................................................22

*Napster Copyright Litig. v. Hummer Winblad Venture Partners*,
   354 F. Supp. 2d 1113 (N.D. Cal. 2005)........................................................................33, 34

*Narayan v. EGL, Inc.*,
   616 F.3d 895 (9th Cir. 2010) ............................................................................................16

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
   392 F.3d 520 (2d Cir. 2004)........................................................................................20, 26

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................................36

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ..........................................................................................................16

*O'Connor v. Wells Fargo, N.A.*,
   No. C-14-00211 DMR
   2014 U.S. Dist. LEXIS 136451 (N.D. Cal. Sept. 26, 2014) ............................................34

*Point Prods. A.G. v. Sony Music Ent., Inc.*,
   215 F. Supp. 2d 336 (S.D.N.Y. 2002) ..............................................................................21

*Prudential Ins. Co. of Am. v. Herman*,
   No. SACV 09-00432-JVS (ANx) (C.D. Cal., Aug. 31, 2009)
   2009 U.S. Dist. LEXIS 135351 (C.D. Cal. Aug. 31, 2009) ............................................32

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010)..........................................................................................28

MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE,
MOTION TO STRIKE – Case No. 3:20-cv-5803-JSC

KYL4819-4644-6311.1

*Sidney-Vinstein v. A.H. Robins Co.*,
    697 F.2d 880 (9th Cir. 1983) .................................................................................35

*Snyder v. Nationstar Mortg. L.L.C.*,
    No. 15-cv-03049-JSC
    2015 U.S. Dist. LEXIS 154680 (N.D. Cal. Nov. 13, 2015) ...........................................34

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ................................................................................32

*Taylor v. Bosco Credit, L.L.C.*,
    No. 18-cv-06310-JSC
    2019 U.S. Dist. LEXIS 130776 (N.D. Cal. Aug. 5, 2019) ...................................29, 31

*Turner v. Wells Fargo Bank NA (In re Turner)*,
    859 F.3d 1145 (9th Cir. 2017) ................................................................................27

*Williams v. Scottrade, Inc.*,
    No. 06-10677
    2006 U.S. Dist. LEXIS 50306 (E.D. Mich. July 24, 2006) ...............................18, 19, 25

*Winkler-Koch Eng'g Co. v. Universal Oil Prods. Co.*,
    79 F. Supp. 1013 (S.D.N.Y. 1947) ..........................................................................35

*WRI W. Gate S., L.P. v. Reliance Mediaworks Inc.*,
    No. 14-cv-03802-JD (JSC)
    2015 U.S. Dist. LEXIS 151186 (N.D. Cal. Oct. 1, 2015) ...........................................25

**STATE CASES**

*Austin v. Gould*,
    137 A.D.3d 495 (1st Dep't 2016) ............................................................................24

*Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*,
    265 A.D.2d 513 (2d Dep't 1999) ............................................................................22

*Baer v. Complete Off. Supply Warehouse Corp.*,
    89 A.D.3d 877 (2d Dep't 2011) ..............................................................................22

*Bank of the W. v. Superior Court*,
    2 Cal. 4th 1254 (1992) ...................................................................................32, 34

*Barker v. Time Warner Cable, Inc.*,
    83 A.D.3d 750 (2d Dep't 2011) .........................................................................17, 22

*Barquis v. Merchs. Collection Ass'n*,
    7 Cal. 3d 94 (1972) ..............................................................................................28

MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE,
MOTION TO STRIKE – Case No. 3:20-cv-5803-JSC

*Canzona v. Atanasio*,
  118 A.D.3d 837 (2d Dep't 2014)................................................17, 20

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999)..........................................28, 29, 31, 34

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001)..........................................29

*Dalton v. Educ. Testing Serv.*,
  87 N.Y.2d 384 (1995)..........................................22, 25

*Deer Park Enters., L.L.C. v. Ail Sys., Inc.*,
  57 A.D.3d 711 (2d Dep't 2008)..........................................22

*Deveny v. Entropin, Inc.*,
  139 Cal. App. 4th 408 (2006)..........................................27

*Educ. Ctr. for New Ams., Inc. v. 66th Ave. Realty Co.*,
  131 A.D.3d 442 (2d Dep't 2015)..........................................22

*Gregory v. Albertson's, Inc.*,
  104 Cal. App. 4th 845 (2002)..........................................29

*Inline, Inc. v. Apace Moving Sys., Inc.*,
  125 Cal. App. 4th 895 (2005)..........................................33

*Jaffe v. Paramount Commc'ns*,
  222 A.D.2d 17 (1st Dep't 1996)..........................................24

*JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*,
  69 A.D.3d 802 (2d Dep't 2010)..........................................17, 20

*Khoury v. Maly's of Cal., Inc.*,
  14 Cal. App. 4th 612 (1993)..........................................28, 30

*Klein v. Earth Elements, Inc.*,
  59 Cal. App. 4th 965 (1997)..........................................28

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003)..........................................31, 32

*Kraus v. Visa Int'l Serv. Ass'n*,
  304 A.D.2d 408 (1st Dep't 2003)..........................................17

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011)..........................................27

*M&T Bank Corp. v. Gemstone CDO VII, Ltd.*,
  68 A.D.3d 1747 (4th Dep't 2009)..........................................17

- 10 -

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (2005) ......................................................................................33

*Metro. Life Ins. Co. v. Noble Lowndes Int'l*,
  84 N.Y.2d 430 (1994) ..................................................................................................19

*Mount Vernon City Sch. Dist. v. Nova Cas. Co.*,
  19 N.Y.3d 28 (2012) ....................................................................................................34

*Murphy v. Am. Home Prods. Corp.*,
  58 N.Y.2d 293 (1983) ..................................................................................................25

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v.*
  *Nomura Credit & Capital, Inc.,*
  30 N.Y.3d 572 (2017) ..................................................................................................20

*Pesa v. Yoma Dev. Grp., Inc.*,
  18 N.Y.3d 527 (2012.) ..................................................................................................21

*Peters v. Accurate Bldg. Inspectors Div. of Ubell Ent., Inc.*,
  29 A.D.3d 972 (2d Dep't 2006) ..................................................................................17

*Phx. Capital Invs. L.L.C. v. Ellington Mgt. Grp., L.L.C.*,
  51 A.D.3d 549 (1st Dep't 2008) ................................................................................25

*Rosenbluth Int'l v. Superior Court*,
  101 Cal. App. 4th 1073 (2002) ..................................................................................28

*Roskind v. Morgan Stanley Dean Witter & Co.*,
  80 Cal. App. 4th 345 (2000) ......................................................................................28

*Scripps Clinic v. Superior Court*,
  108 Cal. App. 4th 917 (2003) ....................................................................................29

*Smith v. Gen. Accident Ins. Co.*,
  91 N.Y.2d 648 (1998) ..................................................................................................22

*Smith v. State Farm Mutual Automobile Ins. Co.*,
  93 Cal. App. 4th 700 (2001) ......................................................................................29

*State Farm Fire & Cas. Co. v. Superior Court*,
  45 Cal. App. 4th 1093 (1996) ....................................................................................28

*Ticconi v. Blue Shield of Cal. Life & Health Ins. Co.*,
  160 Cal. App. 4th 528 (2008) ....................................................................................29

*In re Tobacco Cases II*,
  240 Cal. App. 4th 779 (2015) ....................................................................................32

MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE,
MOTION TO STRIKE – Case No. 3:20-cv-5803-JSC
KYL4819-4644-6311.1

*Trump on the Ocean, L.L.C. v. State of N.Y.*,
   79 A.D.3d 1325 (3d Dep't 2010)..................................................................24

*Wilens v. TD Waterhouse Grp., Inc.*,
   120 Cal. App. 4th 746 (2003) .....................................................................33

### FEDERAL STATUTES AND RULES

28 U.S.C.
   § 1332(a)(1).................................................................................................14
   § 1332(d)(2).................................................................................................14
   § 1367(a)......................................................................................................14

Fed. R. Civ. P.
   Rule 8(a)(2)..................................................................................................22
   Rule 12(b)(6)...........................................................................................15, 16
   Rule 12(f).....................................................................................................35

Fed. R. Evid.
   Rule 408......................................................................................................35

### STATE STATUTES AND RULES

Cal. Bus. & Prof. Code
   § 17200........................................................................................................26
   § 17203........................................................................................................32
   § 17204........................................................................................................27

Cal. Civ. Proc. Code
   § 1021..........................................................................................................34

KYL4819-4644-6311.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT.

E*TRADE is an online brokerage firm.  (Second Amended Complaint ("SAC") Dkt. No. 28, ¶ 1.)  E*TRADE's customers place orders to buy and sell securities and commodity futures by placing trades through the firm's website, by using a web-based application, or by calling the firm's help center.  (SAC ¶ 1.)  E*TRADE's platform allows retail investors to trade oil futures contracts. (SAC ¶ 2.) A futures contract is effectively a promise to deliver a commodity at a certain time. (SAC ¶ 3.)  The buyer of a futures contract takes on the obligation to buy and receive the underlying asset when the contract expires. (SAC ¶ 21.) The seller of a futures contract takes on the obligation to deliver the underlying asset at expiration. (SAC ¶ 21.)  However, nearly all retail investors trade commodity futures contracts without any expectation of receiving or delivering the underlying asset. (SAC ¶ 22.)  These investors close out their positions prior to the expiration of the contract. (SAC ¶ 22.) E*TRADE also allows customers to trade oil futures that are settled with cash instead of oil. (SAC ¶ 22.) These futures are known as "e-mini futures." (SAC ¶ 22.)  Upon expiration, the value of "e-mini futures" converges with the value of regular oil futures. (SAC ¶ 22.) The benchmark for oil futures is the contract on West Texas Intermediate ("WTI") crude oil delivered to Cushing, Oklahoma. (SAC ¶ 20.)

In early 2020, the global coronavirus pandemic caused a precipitous decline in demand for oil. (SAC ¶ 23.) On March 8, 2020, Russia and Saudi Arabia announced increases in oil production and Saudi Arabia announced price discounts. (SAC ¶ 24.) These announcements depressed crude oil prices. (SAC ¶ 23.)  On April 20, 2020, the day before the May 2020 WTI futures contracts expired, the price of these futures dropped precipitously. (SAC ¶ 30.)  At times during the last 22 minutes of the trading session, the May 2020 contract traded below zero.  (SAC ¶ 30.)  By the end of the day, the futures closed at a negative price of -$37.63 as investors became concerned that the cost to store these barrels of oil would be more than the oil was worth.  (SAC ¶ 27.) When the price of these futures dropped below zero, E*TRADE's platform suffered a system failure.  (SAC ¶ 31.)  As a result of the
///

- 13 -

KYL4819-4644-6311.1

system failure, the platform failed to display accurate prices for crude oil futures and did not allow users to close out their positions. (SAC ¶ 31.)

Plaintiffs, Benjamin Whitesides, Aziz Si Hadj Mohand, and Matthew Cheung, are customers of E*TRADE.  (SAC ¶¶ 34, 39, 45.)  Plaintiffs each accepted the "Customer Agreement," a written contract that governs Plaintiffs' relationship with E*TRADE.  (SAC ¶¶ 12, 34, 39, 45, 66, 71.)[2]  Plaintiffs each held "e-mini" oil futures contracts when the price fell below zero on April 20. (SAC ¶¶ 35, 41, 46.)  Each Plaintiff claims that he immediately attempted to sell off the contracts when the price fell below zero.  (SAC ¶¶ 35, 41, 46.)  However, each Plaintiff alleges that he was unable to do so because of the "system failure" afflicting E*TRADE's platform.  (SAC ¶¶ 35-36, 41-42, 46-47.)  Plaintiffs do not identify the negative prices at which they allegedly attempted to sell their commodity futures on April 20, 2020, nor do they allege facts establishing that their orders would have been filled if the orders had been entered on E*TRADE's platform and transmitted to the NYMEX in the volatile, illiquid market of April 20.

## II.

## JURISDICTION

Plaintiffs allege subject matter jurisdiction exists under 28 U.S.C. §1332(d)(2).
E*TRADE contends that subject matter jurisdiction exists under 28 U.S.C. §§1332(a)(1) and 1367(a).

## III.

## PROCEDURAL STATUS

On August 18, 2020, Plaintiffs filed a class action complaint against E*TRADE Securities LLC and E*TRADE Futures LLC, alleging causes of action for breach of contract, breach of the duty of good faith and fair dealing, negligence, gross negligence, and a claim under the

---

[2] The Customer Agreement attached as Exhibit A to the SAC was effective on June 30, 2020, two months after the events at issue in this case.  (SAC, ¶ 12, n.2.)  However, for purposes of this case, the material terms the Customer Agreement effective June 30, 2020 are the same as the material terms of the Customer Agreements entered into by Plaintiffs Whitesides and Mohand (effective October 1, 2018) and Plaintiff Cheung (April 15, 2019).  (Declaration of Erik J. Renga, E*TRADE Custodian of Business Records dated 4/21/2021 ("Renga Decl."), ¶¶ 6, 7.)  All versions of the Customer Agreements contain a predispute arbitration clause that prohibits compelling arbitration of a putative class action.  E*TRADE reserves all rights to enforce the arbitration clause at an appropriate time.

1  California Unfair Competition Law ("UCL").  (Dkt. No. 1.)[3]  Defendants then moved to dismiss.  (Dkt.

2  No. 12.)  However, on October 28, 2020, the parties stipulated to withdraw the motion to dismiss and

3  allow Plaintiffs to file an amended complaint. (Dkt. Nos. 13, 14.)  Plaintiffs filed a First Amended

4  Complaint ("FAC") on November 12, 2020.  (Dkt. No. 16.)  The FAC omitted the claims for breach of

5  contract and breach of the implied covenant of good faith and fair dealing, leaving only the claims for

6  negligence, gross negligence, and violation of the UCL.  On December 11, 2020, Defendants again

7  moved to dismiss, or in the alternative, to strike certain portions of the pleading.  (Dkt. No. 17.)  On

8  March 22, 2021, the Court dismissed Plaintiffs' claim for negligence without leave to amend because

9  the negligence claim was barred by an enforceable exculpatory clause in the Customer Agreement.

10  (Dkt. No. 27 at 6:22-23.)  The Court also dismissed Plaintiffs' claims for negligence and gross

11  negligence because the FAC failed to establish that E*TRADE owed Plaintiffs a duty of care to

12  prevent economic losses (Dkt. No. 27 at 13:26-14:1), and dismissed Plaintiffs' UCL claims. (Dkt.

13  No. 27 at 14:5-7.)  The Court granted Plaintiffs leave to amend the gross negligence and UCL claims,

14  and allowed Plaintiffs to reassert the contract claims from the original complaint.  (Dkt. No. 27 at

15  15:2-4.)  On April 12, 2021, Plaintiffs filed the now operative Second Amended Complaint.  (Dkt.

16  No. 28.)  The SAC alleges claims for breach of contract, breach of the implied covenant of good faith

17  and fair dealing, and violation of the UCL.  The SAC amends out the gross negligence claim.

18  **IV.**

19  **LEGAL STANDARD**

20  **A.     MOTION TO DISMISS.**

21        A Rule 12(b)(6) motion should be granted when the complaint does not allege "enough

22  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

23  570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a

24

25  [3] Record citations are to the Docket Number in the Electronic Case File ("ECF"); pinpoint or page
   citations are to the ECF-generated page numbers at the top of the documents.  For ease of reference,
26  citations to paragraphs in the SAC (Dkt. No. 28) are referred to as "SAC ¶."  Citations to the
   Customer Agreement attached to the SAC are referred to by Docket Number (Dkt. No. 28) and ECF-
27  generated page number.

28

MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE,
MOTION TO STRIKE – Case No. 3:20-cv-5803-JSC

KYL4819-4644-6311.1

1    sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

2    (internal quotation marks and citations omitted).  Threadbare recitals of elements of a cause of action,

3    supported by conclusory statements, do not suffice.  *Ashcroft,* 556 at 678 (2009).  The Court is not

4    required to accept as true allegations that are contradicted by exhibits attached to the complaint.

5    *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  In ruling on a Rule 12(b)(6)

6    motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings

7    in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,*

8    *519* F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal

9    theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside*

10   *Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted);

11   *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a

12   claim on the basis of a dispositive issue of law").

13       **B.    APPLICABLE LAW.**

14       A federal court sitting in diversity applies the choice-of-law rules of the forum state.

15   *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010). California, here the forum state, "ordinarily

16   examines the scope of a choice of law provision in a contract under the law designated in that

17   contract."  *Id.*  Here, that is New York law.  The Customer Agreement is governed by a New York

18   choice-of-law clause.  (Dkt. No. 28 at 44.)  The Court has previously determined that New York law

19   governs E*TRADE's and Plaintiffs' contractual rights and liabilities.  (Dkt. No. 27 at 5:9-15.)

20       In determining applicable law, federal courts are bound by the pronouncements of the

21   state's highest court on applicable state law.  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir.

22   2017).  A federal court must ascertain from all available data what the state law is and apply it.  *Id.*

23   "An intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be

24   disregarded by a federal court unless it is convinced by other persuasive data that the highest court of

25   the state would decide otherwise.'"  *Id.; see also In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990)

26   ("…where there is no convincing evidence that the state supreme court would decide differently, 'a

27   federal court is obligated to follow the decisions of the state's intermediate appellate courts.'")

28   ///

KYL4819-4644-6311.1

1

## V.

2

## ARGUMENT

3

**A.**  **THE SAC FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.**

4

The Customer Agreement governs the terms of E*TRADE's relationship with

5

Plaintiffs, including all transactions, products and services between E*TRADE and Plaintiffs.  (SAC

6

¶¶ 12, 66, 71; Dkt. No. 28 at 27.)

7

**1.**  **The SAC fails to identify any term of the Customer Agreement that**

8

**E*TRADE allegedly breached.**

9

The essential elements of a breach of contract cause of action are the existence of a

10

contract, the plaintiff's performance, the defendant's breach of his or her contractual obligations, and

11

damages resulting from the breach.  *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803

12

(2d Dep't 2010); *Canzona v. Atanasio*, 118 A.D.3d 837, 838 (2d Dep't 2014).

13

To state a cause of action to recover damages for a breach of contract, the SAC must

14

identify the contract term that allegedly was breached.  A complaint that fails to do so is properly

15

dismissed.  *Barker v. Time Warner Cable, Inc.*, 83 A.D.3d 750, 751-52 (2d Dep't 2011) (complaint

16

properly dismissed where plaintiff failed to identify any obligation the defendants breached); *M&T*

17

*Bank Corp. v. Gemstone CDO VII, Ltd.,* 68 A.D.3d 1747, 1750-51 (4th Dep't 2009) (court erred in

18

failing to dismiss complaint that failed to allege the provisions of the contract upon which the claim is

19

based); *Peters v. Accurate Bldg. Inspectors Div. of Ubell Ent., Inc.*, 29 A.D.3d 972 (2d Dep't 2006)

20

(complaint properly dismissed where plaintiffs failed to set forth the contract provisions the defendant

21

allegedly breached); *Kraus v. Visa Int'l Serv. Ass'n*, 304 A.D.2d 408 (1st Dep't 2003) (complaint

22

properly dismissed where plaintiff failed to allege the breach of any particular contractual provision).

23

The SAC fails to identify any particular term of the Customer Agreement that

24

E*TRADE allegedly breached.  Although Plaintiffs allege generally that E*TRADE breached the

25

Customer Agreement by failing to provide "access to its trading services" in a timely manner and

26

"technological systems" that would allow Plaintiffs to enter negatively-priced sell orders (SAC ¶ 68),

27

the SAC fails to identify any provision in the Customer Agreement that obligates E*TRADE to do

28

those things.

1    Similarly, although the SAC alleges that E*TRADE breached the Customer Agreement

2   by failing to provide access to its trading services "in a timely manner" when the price of futures

3   contracts traded below zero (SAC ¶ 68) and by failing to provide access to its trading services "at all

4   times" (SAC ¶ 73), the SAC fails to identify any term in the Customer Agreement that requires

5   E*TRADE to provide access to its trading system at all times.  To the contrary, the terms of the

6   Customer Agreement governing E*TRADE's "Trading System" expressly state that "The Account

7   Holder understands and agrees that E*TRADE does *not* guarantee uninterrupted access to the Service

8   or any feature of the Service."  (Dkt. No. 28 at 41) (emphasis added.)

9    The SAC's assertion that E*TRADE breached the Customer Agreement by failing to

10  display accurate market prices on April 20 is equally unavailing.  (SAC ¶¶ 5, 31.)  The information

11  that E*TRADE distributes regarding bids, offers and market transactions is called "Market Data."

12  (Dkt. No. 28 at 28.)  The SAC fails to identify any specific term of the Customer Agreement that

13  obligates E*TRADE to provide Plaintiffs with immediate, accurate Market Data.  Again, the plain

14  language of the Customer Agreement is to the contrary.  Plaintiffs expressly agreed that E*TRADE

15  does *not* guarantee the timeliness, accuracy or completeness of any Market Data (Dkt. No. 28 at 41)

16  (emphasis added), and agreed that E*TRADE would *not* be liable for losses arising out of "… (i) any

17  inaccuracy, defect, or omission in Market Data; or (ii) any error or delay in the transmission of Market

18  Data…" (Dkt. No. 28 at 41) (emphasis added).

19   Given the SAC's failure to identify any specific term in the Customer Agreement that

20  E*TRADE allegedly breached, the breach of contract claim must be dismissed.  Two decisions from

21  other district courts analyzing contract claims against brokerage firms arising out of problems with

22  their online trading services are instructive in this context.  In *Williams v. Scottrade, Inc.*, No. 06-

23  10677, 2006 U.S. Dist. LEXIS 50306, at *7-13 (E.D. Mich. July 24, 2006), the plaintiffs alleged that

24  Scottrade's online trading platform provided users with inaccurate average price information for four

25  months due to a software malfunction.  The *Williams* plaintiffs alleged that Scottrade breached its

26  contract by failing to provide accurate price data and by failing to provide "reliable, fast and efficient

27  state of the art computer systems."  The court dismissed the contract claim because plaintiffs failed to

28  point to any contract language in which Scottrade agreed to provide either of these things.  *Id.* at *8.

- 18 -

1    The decision in *Knowles v. TD Ameritrade Holding Corp.*, 427 F. Supp. 3d 1070 (D.

2    Neb. 2019) also is apt.  In *Knowles*, the putative plaintiff class sued TD Ameritrade after a

3    "computerized trading feature" provided by TD Ameritrade allegedly failed to work as described.  *Id.*

4    at 1075.  The plaintiffs alleged that TD Ameritrade failed "to properly create, establish, manage, and

5    administer the [trading] feature" and to provide appropriate technical support.  *Id.* at 1080. The court

6    found that the plaintiffs' complaint failed to state a breach of contract claim because it failed to allege

7    a contractual provision that TD Ameritrade violated and failed to allege facts establishing that TD

8    Ameritrade broke any promises to the plaintiffs.  *Id.* at 1079.

9         The Court should be guided by the decisions in *Williams* and *Knowles*.  The SAC fails

10   to identify any term in the Customer Agreement that obligates E*TRADE to provide Plaintiffs with

11   the ability to enter orders to sell commodity futures at negative prices, provide Plaintiffs with access to

12   E*TRADE's trading service at all times, or to provide accurate, timely Market Data.  Plaintiffs'

13   breach of contract claim therefore must be dismissed.

14         **2.      Plaintiffs' breach of contract claim is barred by the Customer Agreement.**

15         Plaintiffs' claim for breach of contract premised on alleged software malfunctions,

16   system failures and inaccurate or delayed Market Data must be dismissed for the additional reason that

17   the Customer Agreement expressly relieves E*TRADE of any liability for losses caused by those

18   events.  The New York Court of Appeals has declared that "[a] limitation on liability provision in a

19   contract represents the parties' agreement on the allocation of risk of economic loss in the event that

20   the contemplated transaction is not fully executed, which the courts should honor."  *Metro. Life Ins.*

21   *Co. v. Noble Lowndes Int'l*, 84 N.Y.2d 430, 436 (1994).  A claim for breach of contract must be

22   dismissed where it is barred by the plain language of the parties' agreement.  *See Williams*, 2006 U.S.

23   Dist. LEXIS 50306, at *9-10 (court dismissed contract and tort claims because plaintiff's agreement

24   with Scottrade specifically relieved Scottrade for losses caused by "equipment / software malfunction"

25   and relieved Scottrade of liability for inaccurate information or market data).

26         Here, the SAC alleges that after the spot price of oil dropped below $0 on April 20,

27   2020, E*TRADE's trading system "locked out users attempting to enter orders with negative values,

28   resulting in an outage of its trading platform through the end of the session on April 20, 2020 (the

- 19 -

1    "Outage")."  (SAC ¶¶ 5, 31, 68, 74, 81.)  Plaintiffs allege that the events of April 20 "exposed serious

2    bugs in [E*TRADE's] software" (SAC ¶ 32), which Plaintiffs allege resulted in a "system failure."

3    (SAC ¶¶ 35, 36, 41, 42, 46, and 47.)

4           In a section of the Customer Agreement conspicuously labeled "Limitation of

5    Liability," Plaintiffs agreed that E*TRADE shall not be held liable for "any loss of any kind" caused

6    by a "Force Majeure Event."  (Dkt. No. 28 at 42.)  Force Majeure Events include "…system or power

7    failures" and "software malfunction" (Dkt. No. 28 at 28), which is precisely what Plaintiffs allege

8    occurred on April 20, 2020.  (SAC ¶¶ 5, 31, 35-36, 41-42, 46-47, 68, 74, 81.)  Plaintiffs also expressly

9    agreed that E*TRADE would not be liable for any losses arising out of or relating to inaccurate or

10   delayed Market Data.  (Dkt. No. 28 at 41.)   Although Plaintiffs ignore this language, the law does not.

11   The parties' agreement must be enforced in a manner that reflects the express intent of the parties, so

12   as not to render any contract term meaningless.  *Nomura Home Equity Loan, Inc., Series 2006-FM2 v.*

13   *Nomura Credit & Capital, Inc.,* 30 N.Y.3d 572, 581 (2017).  Plaintiffs' claim for breach of contract

14   premised on alleged software malfunctions, system failures and inaccurate or delayed Market Data

15   must be dismissed because the Customer Agreement expressly relieves E*TRADE of liability for

16   losses caused by those events.

17          **3.      The SAC fails to establish that E*TRADE—as opposed to market illiquidity**

18                  **on April 20—caused Plaintiffs' losses.**

19          Causation and injury are essential elements of Plaintiffs' contract claim.  *JP Morgan*

20   *Chase*, 69 A.D.3d at 803; *Canzona*, 118 A.D.3d at 838; *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,

21   392 F.3d 520, 525 (2d Cir. 2004) (applying New York law).  The alleged breach must be the cause in

22   fact of Plaintiffs' loss.  *Id.* (New York law requires that a plaintiff prove that a defendant's breach

23   directly and proximately caused the plaintiff's damages); *LNC Invs. v. First Fid. Bank, N.A.*, 173 F.3d

24   454, 464-65 (2d Cir. 1999) (applying New York law, "There is, of course, a fundamental

25   requirement … that the breach of contract be the cause in fact of the loss…").  To establish causation,

26   Plaintiffs must establish that "but for" the alleged breach of contract, the injury they suffered would

27   not have occurred.  *Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No.* 96 Civ.

28   7874 (RWS), 2002 U.S. Dist. LEXIS 7535, at *5 n.5 (S.D.N.Y. Apr. 30, 2002).  In other words,

- 20 -

1   "…damages for breach of contract are not recoverable where they were not actually caused by the

2   alleged breach – i.e., where the transaction would have failed and the damage would have been

3   suffered, even if no breach occurred." *Pesa v. Yoma Dev. Grp., Inc.*, 18 N.Y.3d 527, 532-33 (2012.)

4          The burden is on the plaintiff to prove that the defendant's breach was significant, if

5   not the exclusive, cause of the injury. *Point Prods. A.G. v. Sony Music Ent., Inc.*, 215 F. Supp. 2d

6   336, 343 (S.D.N.Y. 2002). If the injury would have occurred in the absence of the breach, "but for"

7   causation is lacking. *Granite Partners, L.P.*, 2002 U.S. Dist. LEXIS 7535, at *5 n.5.

8          The SAC fails to plead facts establishing that E*TRADE—as opposed to market

9   illiquidity on April 20—caused Plaintiffs' sell orders to go unfilled, resulting in Plaintiffs' losses when

10  their e-mini contracts closed at -$37.63. Stated differently, the SAC fails to establish that "but for" the

11  fact that E*TRADE's trading system did not allow users to enter limit orders to sell contracts at

12  negative prices, the CME (NYMEX) would have accepted and executed Plaintiffs' orders and

13  Plaintiffs would have sold their e-mini WTI May 2020 futures contracts on April 20 at any particular

14  price better than -$37.63. The SAC fails to allege facts establishing what time Plaintiffs allegedly

15  attempted to enter their negatively-priced sell orders, the negative price(s) Plaintiffs allegedly

16  specified in their orders, the prevailing market price at the time they attempted to enter their orders,

17  and whether there existed sufficient trading volume to fill those sell orders on April 20. In reality,

18  between 3:08 p.m. EDT and the end of the trading session (3:30 p.m. EDT), market liquidity dried up.

19  Demand for the contracts evaporated and buyers exited the market. During the final 22 minutes of

20  trading, only 64 e-mini WTI May 2020 crude oil futures contracts were traded *on the CME worldwide,*

21  in contrast to thousands of contracts that are bought or sold on a trading day with average trading

22  volume. (RJN Facts 1-6 and Ex. 1-6.) Of the 64 e-mini WTI May 2020 crude oil futures contracts

23  that traded between 3:08 p.m. EDT and the close of trading at 3:30 p.m. EDT on April 20, *only*

24  *41 contracts traded at negative prices*. (RJN Fact 1, Ex. 1.) This is a fraction of the market volume

25  that usually changes hands. (RJN Facts 2-5 and Ex. 2-5.) The fact that E*TRADE's system did not

26  allow Plaintiffs to enter negatively-priced limit orders to sell their commodity futures therefore was

27  not the cause in fact of Plaintiffs' alleged damages because Plaintiffs would have experienced the

28  same harm (unfilled sell orders) even if the orders had been entered. If there were insufficient buyers

MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE,
MOTION TO STRIKE – Case No. 3:20-cv-5803-JSC

KYL4819-4644-6311.1

1  or if the price Plaintiffs ultimately received was the best price available, Plaintiffs cannot establish

2  causation or damage. *In re Merrill Lynch Sec. Litig.*, 191 F.R.D. 391, 397 (D.N.J. 1999) (same), *aff'd*

3  *sub. nom. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 2*59 F.3d 154, 158 (3d Cir. 2001).

4        Plaintiffs cannot satisfy the essential element of causation by relying on the conclusory

5  allegation that E\*TRADE's alleged breaches of the Customer Agreement "resulted in" or "caused"

6  losses to Plaintiffs.  (SAC ¶¶ 69, 75.)  Plaintiffs' formulaic recitation of the elements of a cause of

7  action do not satisfy Federal Rule of Civil Procedure 8(a)(2).  *Bell Atl. Corp.*, 550 U.S. at 555 (a

8  plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

9  conclusions; a formulaic recitation of the elements of a cause of action will not do).  Here, the SAC

10  fails to plead facts establishing the critical element of causation:  that Plaintiffs' negatively-priced sell

11  orders would have been filled on April 20 if Plaintiffs' orders had been entered on E\*TRADE's

12  system.  In the absence of facts establishing that Plaintiffs' negatively-priced sell orders would have

13  been filled by willing buyers if they had been entered into E\*TRADE's system, causation is absent.

14       **B.**     **THE SAC FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED**

15               **COVENANT OF GOOD FAITH AND FAIR DEALING.**

16        In New York, all contracts imply a covenant of good faith and fair dealing in the course

17  of performance.  *Smith v. Gen. Accident Ins. Co.*, 91 N.Y.2d 648, 652-53 (1998); *Dalton v. Educ.*

18  *Testing Serv.*, 87 N.Y.2d 384, 389 (1995).  The covenant of good faith and fair dealing prevents either

19  party from doing anything which will have the effect of destroying or injuring the right of the other

20  party to receive the fruits of the contract.  *Id.*; *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of*

21  *Commerce*, 265 A.D.2d 513, 513-14 (2d Dep't 1999).

22       **1.**     **The implied covenant claim is duplicative of the breach of contract claim.**

23        Where claims for breach of contract and breach of the implied covenant both cite the

24  same underlying breach, the implied covenant claim is duplicative of the breach of contract claim and

25  must be dismissed.  *Educ. Ctr. for New Ams., Inc. v. 66th Ave. Realty Co.*, 131 A.D.3d 442, 443 (2d

26  Dep't 2015) (court properly dismissed claim for breach of implied duty of good faith and fair dealing

27  because it was duplicative of breach of contract claim); *Baer v. Complete Off. Supply Warehouse*

28  *Corp.*, 89 A.D.3d 877, 878 (2d Dep't 2011) (same); *Barker*, 83 A.D.3d at 752 (same); *Deer Park*

*Enters., L.L.C. v. Ail Sys., Inc.*, 57 A.D.3d 711, 712 (2d Dep't 2008).  *See also Harris v. Provident Life & Accident Ins. Co.,* 310 F.3d 73, 81 (2d Cir. 2002) (New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when the complaint also pleads a breach of contract claim based on the same facts).

Plaintiffs' claim for breach contract (SAC ¶ 68) and breach of the implied covenant of good faith and fair dealing (SAC ¶ 74) allege identical underlying breaches, as this side-by-side analysis illustrates:

| Alleged Breaches of Contract<br><br>SAC ¶ 68 | Alleged Breaches of the Implied Covenant of Good Faith and Fair Dealing<br><br>SAC ¶74 |
|---|---|
| "E*TRADE breached its Customer Agreement by, among other things…:"<br><br>i. failing to provide adequate technological systems necessary to perform under these contracts;<br><br>ii. failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades;<br><br>iii. failing to provide access to its trading services in a timely manner; and<br><br>iv. otherwise permitting the Outage to occur and thereby prohibiting the parties from performing in a timely manner (or at all) under the contracts. | "E*TRADE unfairly interfered with the rights of Plaintiffs … to receive the benefits of the Customer Agreement by, among other things…"<br><br>i. failing to provide adequate \|technological systems necessary to perform under these contracts;<br><br>ii. failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades;<br><br>iii. failing to provide access to its trading services in a timely manner; and<br><br>iv. otherwise permitting the Outage to occur and thereby prohibiting the parties from performing in a timely manner (or at all) under the contracts. |

Because Plaintiffs' breach of contract claim alleges the same underlying breaches as the claim for breach of the implied covenant of good faith and fair dealing, the implied covenant claim is duplicative and must be dismissed.

///

///

- 23 -

KYL4819-4644-6311.1

1
2

        2.    **The implied covenant claim fails to identify any specific contractual right that was frustrated.**

3
4
5
6
7
8
9
10
11
12
13
14
15
16

       A claim for breach of the implied covenant of good faith is essentially a contract claim and may not be used as a substitute for a non-viable contract cause of action. *Austin v. Gould*, 137 A.D.3d 495, 496 (1st Dep't 2016) (*citing Smile Train, Inc. v. Ferris Consulting Corp.*, 117 A.D.3d 629, 630 (2014)). To state a cognizable claim for breach of the implied covenant, a plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract. *Trump on the Ocean, L.L.C. v. State of N.Y.*, 79 A.D.3d 1325, 1326 (3d Dep't 2010) (finding breach of the implied covenant of good faith and fair dealing cause of action fails where "claimant has not alleged any applicable term of the [agreement] to support [the implied obligation]"). Where the plaintiff fails to allege facts identifying any contractual right that he was deprived of, the claim for breach of the implied covenant is properly dismissed. *Jaffe v. Paramount Commc'ns*, 222 A.D.2d 17, 22-23 (1st Dep't 1996). *See, also, Knowles*, 427 F. Supp. 3d at 1079 (investors' claim for breach of the implied covenant was dismissed where they claimed TD Ameritrade failed to provide a "stop feature or an adequate number of replacement securities," but contract did not promise a stop feature or a definite number of available replacement securities).

17
18
19
20
21
22
23
24
25
26
27
28

       The SAC fails to allege facts establishing that E*TRADE deprived Plaintiffs of any contractual rights conferred by the Customer Agreement. Plaintiffs allege that E*TRADE failed to provide them with access to E*TRADE's trading services "at all times" (SAC ¶ 73) (including during an "Outage" (SAC ¶ 74)), failed to provide Plaintiffs with "adequate technological systems" that would allow them to enter sell orders at negative prices (SAC ¶ 74), and "permitt[ed] the Outage" on April 20, 2020. (SAC ¶ 74.) But the Customer Agreement does not promise Plaintiffs that they will have access to E*TRADE's trading services "at all times." Nor does the Customer Agreement confer on Plaintiffs the right to have a flawless trading experience free from interruptions and "Outages." In fact, the Customer Agreement expressly states that E*TRADE does *not* guarantee uninterrupted access to the Service or any feature of the Service. (Dkt. No. 28 at 41 (emphasis added).) Nor does the Customer Agreement promise that Plaintiffs will have the ability to enter negatively-priced sell orders. Because Plaintiffs have failed to identify any specific benefit that they were entitled to receive

1   under the Customer Agreement and that E\*TRADE deprived them of, the SAC fails to state a claim

2   for breach of the implied covenant of good faith and fair dealing and must be dismissed.

3        **3.    The implied covenant claim seeks to impose terms that are inconsistent**

4             **with the express terms of the Customer Agreement.**

5        The implied covenant is limited to assuring compliance with the express terms of the

6   contract actually made; it cannot impose obligations that are inconsistent with the express terms of the

7   agreement.  *Dalton*, 87 N.Y.2d at 389; *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983)

8   (implied covenant is only "in aid and furtherance of other terms of the agreement of the parties"); *Phx.*

9   *Capital Invs. L.L.C. v. Ellington Mgt. Grp., L.L.C.*, 51 A.D.3d 549, 550 (1st Dep't 2008) (noting the

10  "well-established principle that the implied covenant of good faith and fair dealing will be enforced

11  only to the extent it is consistent with the provisions of the contract").

12       Plaintiffs' implied covenant claim seeks to impose implied obligations on E\*TRADE

13  that are inconsistent with the express terms of the Customer Agreement.  The SAC alleges that the

14  implied covenant entitled Plaintiffs to the right to access to E\*TRADE's trading services "at all times"

15  (SAC ¶73) and to receive the benefit of "adequate technological systems" and "alternate means" to

16  enter sell orders at negative prices, and generally to enjoy a flawless, uninterrupted trading experience

17  in all market conditions.  (SAC ¶ 74.)  But these implied obligations are inconsistent with the parties'

18  express agreement that E\*TRADE "does not guarantee uninterrupted access to the Service or to any

19  feature of the Service" (Dkt. No. 28 at 41) and the parties' express agreement that E\*TRADE shall not

20  be liable for system failures.  (Dkt. No. 28 at 42 ("Limitation of Liability") and Dkt. No. 28 at 28

21  ("Force Majeure Event").)  The implied covenant cannot vary the express terms of the Customer

22  Agreement by requiring E\*TRADE to provide trading services "at all times," requiring E\*TRADE to

23  provide technological systems that it never promised to provide, or by imposing liability on

24  E\*TRADE for "system failures."  *See also Williams*, 2006 U.S. LEXIS 50306, at \*11-12 (2006)

25  (implied covenant cannot override express contract terms relieving Scottrade of liability for software

26  malfunctions, investment decisions, and trade losses).  Plaintiffs' implied covenant claim seeks to

27  impose implied obligations on E\*TRADE that are inconsistent with the express terms of the Customer

28  Agreement and therefore the implied covenant claim must be dismissed.

- 25 -

1

#### 4.     **The implied covenant claim fails to establish causation.**

2     Causation is an essential element of a claim for breach of the implied covenant. *Nat'l*

3  *Mkt. Share, Inc.*, 392 F.3d at 525.  As stated in Section V.A.3, *supra*, the SAC fails to plead facts

4  establishing that Plaintiffs' negatively-priced sell orders would have been executed if E*TRADE's

5  system had allowed Plaintiffs to enter orders to sell commodity futures at negative prices.  Because

6  Plaintiffs have failed to establish causation, the implied covenant claim must be dismissed.

7

### C.     **THE SAC FAILS TO STATE A UCL CLAIM.**

8     A California subclass alleges that the failure of E*TRADE's trading system on April 20

9  violated California's Unfair Competition Law ("UCL").  (SAC ¶¶ 76-82.)  The UCL prohibits any

10  unlawful, unfair or fraudulent business act or practice.  Cal. Bus. & Prof. Code §17200.  Plaintiffs

11  allege E*TRADE's business practices were "unlawful" and "unfair."  (SAC ¶¶ 80-81.)

12

#### 1.     **The UCL claim is barred by the New York choice of law clause.**

13     The Customer Agreement contains a New York choice-of-law clause stating that the

14  Customer Agreement "… will be deemed to have been made in the State of New York and will be

15  construed, and the rights and liabilities of the parties determined, in accordance with the internal laws

16  of the State of New York."  (Dkt. No. 28 at 44.)  The Court has determined that the New York choice

17  of law clause is enforceable and governs all aspects of the parties' contractual rights and liabilities.

18  (Dkt. No. 27 at 5:9-15.)  Plaintiffs have acknowledged that the application of New York law requires

19  dismissal of the UCL claim because the UCL is a product of California law, not New York law.  (Dkt.

20  No. 18 at 11:15.)

21     A valid choice-of-law clause selecting another state's law is grounds to dismiss a claim

22  with prejudice under California's Unfair Competition Law.  In *Medimatch, Inc. v. Lucent Techs., Inc.*,

23  120 F. Supp. 2d 842, 861-63 (N.D. Cal. 2000), the parties' agreements contained an express choice-of-

24  law provision similar to the choice-of-law clause in the Customer Agreement.  The choice-of-law

25  clause in *Medimatch* stated that the "construction, interpretation and performance of this Agreement

26  shall be governed by the local laws of the State of New Jersey."  *Id.* at 861.  Based on the New Jersey

27  choice of law clause and California's strong policy favoring enforcement of choice-of-law provisions

28  in contracts, the Honorable Thelton E. Henderson dismissed plaintiffs' California UCL claims with

- 26 -

KYL4819-4644-6311.1

prejudice. *Id.* at 863. Judge Henderson concluded that the mere fact that the chosen law provides greater or lesser protection than California law, or that the chosen law would not provide protection while California law would, are not reasons for applying California law. *Id.* (citing *Wong v. Tenneco*, 39 Cal. 3d 126, 135-36 (1985)) (the standard is whether the chosen law is so offensive to California public policy as to be "prejudicial to recognized standards of morality and to the general interest of the citizens"). The California Court of Appeal has stated that *Medimatch* was correctly decided. *Deveny v. Entropin, Inc.*, 139 Cal. App. 4th 408, 430 (2006) ("We believe that *Medimatch* (citation omitted) was correctly decided, and its reasoning and conclusion are persuasive.").

Plaintiffs' UCL claim is predicated entirely on contract claims that are governed by New York law. As in *Medimatch*, the UCL claim therefore should be dismissed with prejudice. If the Court determines that California law applies to Plaintiffs' UCL claim, the UCL claim nevertheless should be dismissed for the independent reasons discussed below.

### 2.   Plaintiffs lack standing to assert a UCL claim.

To satisfy the standing requirements under the UCL, a plaintiff must plead facts establishing that: (1) he suffered an injury in fact, and (2) the economic injury was caused by the unfair business practice that is the gravamen of the claim. Cal. Bus. & Prof. Code §17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). The SAC fails to satisfy the second requirement. As set forth in Section V.A.3, *supra*, the SAC fails to allege facts establishing that "but for" Plaintiffs' inability to enter negatively-priced sell orders on April 20, Plaintiffs' orders would have been filled. A plaintiff fails to satisfy the UCL causation requirement if he would have suffered "the same harm whether or not a defendant complied with the law." *Turner v. Wells Fargo Bank NA* (*In re Turner*), 859 F.3d 1145, 1151 (9th Cir. 2017). Where a UCL claim fails to plead causation, it fails to establish standing and must be dismissed. *Id.; Greene v. Wells Fargo Bank, N.A.*, No. 18-cv-06689-JSC, 2018 U.S. Dist. LEXIS 217597, at *26-29 (N.D. Cal. Dec. 28, 2018) (UCL claim dismissed for lack of standing where plaintiff failed to plead causation).

///

///

MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE, MOTION TO STRIKE – Case No. 3:20-cv-5803-JSC

KYL4819-4644-6311.1

1

**3.     The SAC fails to establish any "unlawful" business practice.**

2     An unlawful business practice or act within the meaning of the UCL is a business

3   practice forbidden by law.  *Barquis v. Merchs. Collection Ass'n*, 7 Cal. 3d 94, 113 (1972); *Shroyer v.*

4   *New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010); *Berkeley v. Wells Fargo*

5   *Bank*, No. 15-cv-00749-JSC, 2016 U.S. Dist. LEXIS 1295, at *43-44 (N.D. Cal. Jan. 6, 2016).  By

6   proscribing "unlawful" business practices, the UCL "borrows violations" of other state and federal

7   laws and makes them independently actionable.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,

8   20 Cal. 4th 163, 179 (1999).  Any law, civil or criminal, state or federal, can serve as the predicate.

9   *Roskind v. Morgan Stanley Dean Witter & Co.,* 80 Cal. App. 4th 345, 352 (2000); *State Farm Fire &*

10  *Cas. Co. v. Superior Court,* 45 Cal. App. 4th 1093, 1102–03 (1996).

11     The SAC fails to allege any state, federal, regulatory or court-made law that E*TRADE

12  allegedly violated.  The SAC alleges that E*TRADE's conduct was "unlawful" because it constituted

13  a breach of contract or a breach of the implied covenant of good faith and fair dealing.  (SAC ¶ 80.)  A

14  common law violation such as a breach of contract is insufficient to state a claim for a violation of the

15  UCL's "unlawful" prong.  *Shroyer*, 622 F.3d at 1044; *Berkeley*, 2016 U.S. Dist. LEXIS 1295, at *44-

16  45; *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993) (dismissing plaintiff's UCL claim

17  premised on breach of contract); *see also Rosenbluth Int'l v. Superior Court*, 101 Cal. App. 4th 1073,

18  1077 (2002) (UCL action based on a contract is not appropriate where the public in general is not

19  harmed by defendant's alleged unlawful practices); *see also Klein v. Earth Elements, Inc.*, 59 Cal.

20  App. 4th 965, 969 (1997) (civil liability for unintentionally distributing a defective product will not

21  support a UCL claim under the "unlawful" prong).

22

**4.     Plaintiffs' claim under the "unlawful" prong of the UCL is dependent on the**

23  **defective contract claims.**

24     Although a claim under the "unlawful" prong of the UCL cannot be premised on an

25  alleged common law breach of contract, Plaintiffs' UCL claim fails here for the additional reason that

26  the UCL claim is premised on the inadequately pleaded contract claims.  Here, the SAC alleges that

27  E*TRADE's "unlawful" conduct was its alleged breach of contract and breach of the implied

28  covenant of good faith and fair dealing.  (SAC ¶ 80.)  Because the SAC fails to adequately plead either

- 28 -

KYL4819-4644-6311.1

1    of those predicate claims, the UCL claim also fails as a matter of law.  "[W]here the same conduct

2    alleged to be unfair under the UCL is also alleged to be a violation of another law, the UCL claim

3    rises or falls with the other claims." *Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 911 (N.D. Cal.

4    2016), *aff'd in part sub nom. vacated in part on other grounds*, 897 F.3d 1109 (9th Cir. 2018);

5    *Taylor v. Bosco Credit, L.L.C.*, No. 18-cv-06310-JSC, 2019 U.S. Dist. LEXIS 130776, at *8 (N.D.

6    Cal. Aug. 5, 2019) (UCL claims dismissed where they were dependent on defective Truth In Lending

7    Act and contract claims); *Card v. Ralph Lauren Corp.*, No. 18-cv-02553-JSC, 2018 U.S. Dist. LEXIS

8    147609, at *26 (N.D. Cal. Aug. 29, 2018) (UCL claim dismissed where it was dependent on plaintiff's

9    inadequately pled price discrimination and RICO claims).  The reason for this rule is self-evident:

10   "To permit a separate inquiry into essentially the same question under the unfair competition law

11   would ... invite conflict and uncertainty."  *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375

12   (2001).  Because Plaintiffs' claims for breach of contract and breach of the implied covenant of good

13   faith and fair dealing fail to state a claim upon which relief can be granted, neither claim can be the

14   basis of Plaintiffs' dependent UCL claim.

15              **5.        The SAC fails to establish any "unfair" business practice.**

16              Although the UCL prohibits "unfair" business practices, the statute does not define

17   "unfairness."  Courts may not simply impose their own notions of what is fair or unfair.  *Cel-Tech*

18   *Commc'ns, Inc.,* 20 Cal. 4th at 182.  Courts therefore apply either a "tethering test" or a "balancing

19   test" to assess the sufficiency of a claim.  *Benson v. Citibank, N.A.* (N. D. Cal. Dec. 6, 2012, No. 12-

20   0760 JSC) 2012 U.S. Dist. LEXIS 199984, at *12) (citing *Rubio v. Capital One Bank*, 613 F.3d 1195,

21   1205 (9th Cir. 2010).  The tethering test requires a plaintiff to "tether" its allegation of unfair

22   competition to a specific constitutional, statutory, or regulatory provision.  *Scripps Clinic v. Superior*

23   *Court*, 108 Cal. App. 4th 917, 940 (2003); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854

24   (2002).  In contrast, the balancing test "involves an examination of [the] practice's impact on its

25   alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer; the

26   court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

27   victim." *Ticconi v. Blue Shield of Cal. Life & Health Ins. Co.,* 160 Cal. App. 4th 528, 539 (2008);

28   *Smith v. State Farm Mutual Automobile Ins. Co*., 93 Cal. App. 4th 700, 718-19 (2001).

KYL4819-4644-6311.1

1    The SAC fails to establish a plausible claim under either test for violation of the UCL's

2    "unfair" prong.  Plaintiffs have not tethered their claim to any constitutional, statutory, or regulatory

3    provision.  (SAC ¶ 81.)  The SAC also fails to satisfy the balancing test.  Courts require a plaintiff

4    alleging a UCL claim to state "with reasonable particularity the facts supporting the statutory elements

5    of the violation." *Khoury,* 14 Cal. App. 4th at 619.  Rather than plead facts satisfying the balancing

6    test, Plaintiffs simply make the conclusory allegation that E*TRADE's conduct was "immoral,

7    unethical, oppressive, or unscrupulous and has caused injuries … that outweigh any purported

8    benefit."  (SAC ¶ 81.)  These threadbare recitals are insufficient to state a plausible claim, and the

9    Court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft*, 556

10   U.S. at 678.  Finally, Plaintiffs cannot satisfy the balancing test by repleading and relying on the

11   identical allegations in the now-dismissed negligence and UCL claims in the First Amended

12   Complaint ("FAC"), or by relying on their inadequately pled contract claims, as discussed below.

13       a.   **Plaintiffs cannot resurrect their dismissed negligence and UCL**

14            **claims by recasting them as a "new" UCL claim.**

15   The SAC alleges eight ways in which Plaintiffs contend E*TRADE's conduct violated

16   the "unfair" prong of the UCL.  (SAC ¶ 81.)  The SAC's allegations are *identical* to the eight ways

17   that the now-dismissed FAC alleged that E*TRADE "breached its duties" (negligence and gross

18   negligence claim) and violated the "unfair" prong of the UCL.  (*Compare* eight alleged "breaches of

19   duty" in FAC negligence claim (FAC ¶ 68 (i) – (viii) (Dkt. No. 16 at 20)) and FAC gross negligence

20   claim (FAC ¶ 73 (i) – (viii) (Dkt. No. 16 at 21)) with identical eight instances of allegedly "unfair"

21   conduct in FAC UCL claim (FAC ¶ 81 (i) – (viii) (Dkt. No. 16 at 23)) and with identical eight

22   instances of allegedly "unfair" conduct in the SAC's UCL claim ((FAC ¶ 81 (i) – (viii).)

23   The Court dismissed Plaintiffs' negligence claim without leave to amend on March 11,

24   2021 because it was barred by an enforceable exculpatory clause in the Customer Agreement.  (Dkt.

25   No. 27 at 6:22-23.)  The Court also dismissed Plaintiffs' claims for negligence and gross negligence

26   because the FAC failed to establish that E*TRADE owed Plaintiffs a duty of care to prevent economic

27   losses under the alleged facts.  (Dkt. No. 27 at 13:26-14:5.)  The Court also dismissed Plaintiffs' UCL

28   claim because Plaintiffs conceded that the UCL claim failed if the negligence claims failed. (Dkt.

- 30 -

1   No. 27 at 14:5-7.)  The Court granted Plaintiffs leave to amend the gross negligence and UCL claims.

2   The SAC does not replead the gross negligence claim.

3          By dismissing Plaintiffs' negligence claims alleged in the FAC, this Court has already

4   determined that E*TRADE did not have a duty to Plaintiffs to do the eight things that Plaintiffs allege

5   violated the "unfair" prong of the UCL.  Given the enforceable exculpatory clause and the absence of

6   a duty, that conduct is not negligent and therefore cannot be an "unfair" business practice under the

7   UCL.  The SAC does not allege any new facts to establish that E*TRADE owed Plaintiffs a duty of

8   care to prevent economic losses, nor does the SAC plead any new facts in support of Plaintiffs'

9   allegations of "unfair" business conduct.  The Supreme Court of California has warned that a plaintiff

10  may not "plead around" an "absolute bar to relief" simply by recasting the cause of action as one for

11  unfair competition (*Cel-Tech Commc'ns, Inc.,* 20 Cal. 4th at 182), and that the UCL is not "an all-

12  purpose substitute for a tort or contract action."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.

13  4th 1134, 1151 (2003).  Plaintiffs cannot use the UCL as a back-door attempt to resurrect their

14  dismissed negligence and UCL claims.  Plaintiffs' current claim under the UCL's "unfair" prong

15  suffers from the same deficiencies as when it was asserted in—and dismissed from—the FAC.  The

16  UCL claim therefore remains deficient and must be dismissed from the SAC.

17           **b.**    <u>**Plaintiffs cannot state a claim for violation of the UCL's "unfair"**</u>

18                      <u>**prong by relying on the defective contract claims.**</u>

19         Of the eight ways in which the SAC alleges that E*TRADE's conduct was "unfair"

20  (SAC ¶ 81), four are identical to the conduct that is the basis of Plaintiffs' defective claims for breach

21  of contract and breach of the implied covenant of good faith and fair dealing.  (*Compare* breach of

22  contract alleged at SAC ¶ 68 (i), (ii), (iii) and (iv) and breach of the implied covenant of good faith

23  and fair dealing alleged at SAC ¶ 74 (i), (ii), (iii) and (iv) with UCL "unfair" conduct alleged at SAC

24  ¶ 81(i), (ii), (vi) and (viii).)  Because the SAC fails to adequately plead the predicate claims for breach

25  of contract and breach of the implied covenant of good faith and fair dealing, the UCL claim also fails

26  as a matter of law.  "[W]here the same conduct alleged to be unfair under the UCL is also alleged to

27  be a violation of another law, the UCL claim rises or falls with the other claims."  *Hicks*, 165 F. Supp.

28  3d at 911; *Taylor*, 2019 U.S. Dist. LEXIS 130776, at *8 (UCL claims dismissed where they were

MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE,
MOTION TO STRIKE – Case No. 3:20-cv-5803-JSC

1  dependent on defective Truth In Lending Act and contract claims); *Card*, 2018 U.S. Dist. LEXIS

2  147609, at *26 (UCL claim dismissed where it was dependent on plaintiff's inadequately pled price

3  discrimination and RICO claims); *Benson*, 2012 U.S. Dist. LEXIS 199984, at *13 (plaintiff's UCL

4  claim was moot because it was tethered to his dismissed claim for breach of contract and breach of the

5  implied covenant).  Additionally, far from being "immoral, unethical, oppressive, unscrupulous or

6  substantially injurious to consumers," a breach of contract is a morally neutral act.  *Prudential Ins. Co.*

7  *of Am. v. Herman*, No. SACV 09-00432-JVS (ANx) (C.D. Cal., Aug. 31, 2009) 2009 U.S. Dist.

8  LEXIS 135351, at *9-10 (C.D. Cal. Aug. 31, 2009)).  Without more, an alleged breach of contract

9  should not violate the "unfairness" prong of the UCL.  *Id.; Sybersound Records, Inc. v. UAV Corp.*,

10  517 F.3d 1137, 1152 (9th Cir. 2008) (UCL claim properly dismissed because mere breaches of

11  contract, without more, were insufficient to establish violation of UCL).

12        **6.**      **The SAC fails to establish an entitlement to an available UCL remedy.**

13        The SAC alleges that Plaintiffs are entitled to recover "restitution," "disgorgement of

14  ill-gotten gains," "refunds of moneys," and "reasonable attorneys' fees" on their UCL claim.  (SAC

15  ¶ 82.)  The SAC fails to allege facts establishing that Plaintiffs are entitled to any remedy available

16  under the UCL.  A UCL action is equitable in nature.  Damages are not an available remedy.  *Korea*

17  *Supply Co.*, 29 Cal. 4th at 1144; *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992).

18        **a.**      **The SAC fails to state a basis for restitution.**

19        Under California law, there are two forms of disgorgement:  "restitutionary

20  disgorgement, which focuses on the plaintiff's loss, and nonrestitutionary disgorgement, which focuses

21  on the defendant's unjust enrichment."  *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 899 (2015)

22  (quoting *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398 (2014)).  Nonrestitutionary disgorgement

23  of profits is not available in a UCL action.  *Korea Supply Co.*, 29 Cal. 4th at 1148, 1152.

24        The SAC fails to allege facts establishing that Plaintiffs are entitled to restitutionary

25  disgorgement.  Restitution under the UCL means an order "compelling …a defendant to return money

26  obtained through an unfair business practice to those persons in interest from whom the property was

27  taken …."  Cal. Bus. & Prof. Code §17203; *Korea Supply Co.*, 29 Cal. 4th at 1149 (quoting *Kraus v.*

28  *Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126-27 (2000)).  In other words, the object of restitution is

1    to restore the status quo by returning to the plaintiff funds in which he or she has an ownership

2    interest. *Id.*  Thus, in order to establish a basis for restitution in a UCL action, the plaintiff must

3    demonstrate that the  defendant holds funds *in which the plaintiff* has an ownership interest. *Madrid v.*

4    *Perot Sys. Corp.*, 130 Cal. App. 4th 440, 455 (2005) (emphasis added).  Where the complaint fails to

5    establish that the defendant has possession of funds in which the plaintiff has an ownership interest,

6    the UCL claim should be dismissed. *Napster Copyright Litig. v. Hummer Winblad Venture Partners*,

7    354 F. Supp. 2d 1113, 1127 (N.D. Cal. 2005) (dismissing UCL counterclaim that failed to establish

8    that plaintiffs were in possession of funds in which the counterclaimant had an ownership interest).

9            Plaintiffs have failed to plead facts establishing that E*TRADE obtained money or

10   property from them as a result of their *inability* to enter limit orders to sell their contracts at negative

11   prices on April 20, 2020.  Accordingly, the UCL claim fails to establish a basis for restitution. *See,*

12   *e.g., Wilens v. TD Waterhouse Grp., Inc.,* 120 Cal. App. 4th 746, 756 (2003) (where TD Waterhouse

13   did not charge a flat fee for access to its online trading platform but instead charged a commission

14   only if customers completed their trades, TD Waterhouse did not make illegal profits from plaintiffs'

15   inability to trade on the internet).  To the extent that Plaintiffs lost money as a result of their expired

16   contracts on April 20, that money is now in the hands of the contra-party on their oil futures contracts,

17   not E*TRADE, and therefore those "losses" cannot form the basis of restitution under the UCL.  The

18   decision in *Inline, Inc. v. Apace Moving Sys., Inc.*, 125 Cal. App. 4th 895 (2005) illustrates the point.

19   Apace was a storage company that auctioned off the entire contents of a storage lot for $20.  The

20   plaintiff bought the auctioned items from the buyer for $100,000.  The plaintiff sued Apace for

21   violating the UCL and sought as "restitution" the $100,000 that it paid to the buyer of the storage lot.

22   The trial court found that the plaintiff was entitled to only $20 as restitution under the UCL because

23   $20 was the only money that Apace received by means of unfair competition.  The Court of Appeal

24   affirmed because plaintiff sought more from Apace than the "return [of] something [it] wrongfully

25   received;" it sought damages, which are not available under the UCL.  *Id.* at 901.

26           Similarly, in this case any restitutionary remedy is limited to the money or property

27   E*TRADE received *from Plaintiffs* as a result of the allegedly unfair competition.  Plaintiffs have

28   failed to allege facts establishing that E*TRADE received money or property from them as a result of

- 33 -

KYL4819-4644-6311.1

1   their inability to place negatively-priced sell orders for 22 minutes on April 20.  Plaintiffs therefore

2   have failed to establish a basis for restitution.

3                    **b.**      __The SAC fails to state a basis for injunctive relief.__

4              Although the SAC seeks "injunctive relief as pleaded or as the Court may deem

5   proper" (SAC at p. 24, ¶ G), the SAC fails to state what particular business practices it seeks to enjoin.

6   Plaintiffs' request for injunctive relief therefore is insufficiently stated.  *Snyder v. Nationstar Mortg.*

7   *L.L.C.*, No. 15-cv-03049-JSC, 2015 U.S. Dist. LEXIS 154680, at *30 (N.D. Cal. Nov. 13, 2015)

8   (plaintiff failed to sufficiently state a request for injunctive relief because plaintiff failed to state the

9   particular unfair business practices she sought to enjoin); *O'Connor v. Wells Fargo, N.A.*, No. C-14-

10  00211 DMR, 2014 U.S. Dist. LEXIS 136451, at *25-26 (N.D. Cal. Sept. 26, 2014) (dismissing the

11  plaintiff's claim because the plaintiff did not specify what conduct he sought to enjoin).  In addition,

12  the SAC does not allege that Plaintiffs are suffering ongoing injury as a result of E*TRADE's

13  business practices.  For that additional reason, the SAC fails to state a basis for injunctive relief under

14  the UCL.  *Napster Copyright Litig.,* 354 F. Supp. 2d at 1127 (N.D. Cal. 2005) (granting motion to

15  dismiss the defendant's UCL counterclaim because the defendant failed to allege that it suffered any

16  ongoing injury from the plaintiff's conduct).

17                   **c.**      __Plaintiffs are not entitled to an award of attorneys' fees.__

18             The SAC seeks an award of "reasonable attorneys' fees" on the UCL claim.  (SAC

19  ¶ 82.)  A party is not entitled to attorneys' fees unless authorized by statute or contract.  *Mount Vernon*

20  *City Sch. Dist. v. Nova Cas. Co.*, 19 N.Y.3d 28, 39-40 (2012); Cal. Civ. Proc. Code §1021.  Attorneys'

21  fees are not available under the UCL.  *Cel-Tech Commc'ns, Inc.* 20 Cal. 4th at 179; *Bank of the W.*,

22  2 Cal. 4th at 1266.  Plaintiffs have previously conceded that they are not entitled to recover attorneys'

23  fees under the UCL.  (Dkt. 18 at 23:25-27.)

24        **D.**      __THE SAC SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.__

25             The Court may dismiss a complaint without leave to amend where it is clear that the

26  complaint cannot be saved by amendment.  Plaintiffs concede that their relationship with E*TRADE

27  is governed by the terms of the Customer Agreement.  (SAC ¶¶ 12 n.2, 34, 39, 45, 66 and 71.)  The

28  Customer Agreement does not obligate E*TRADE to provide Plaintiffs with access to its trading

                                          - 34 -

KYL4819-4644-6311.1

1   service "at all times," nor does it obligate E*TRADE to provide Plaintiffs with the ability to enter

2   orders to sell commodity futures at negative prices.  Plaintiffs likewise cannot state a claim under the

3   UCL because, among other things, they cannot identify any "unlawful" or "unfair" business practice,

4   and because they cannot establish that E*TRADE obtained any money or property from them as a

5   result of their *inability* to sell commodity futures on April 20.  Finally, Plaintiffs cannot establish that

6   E*TRADE caused their losses because Plaintiffs have failed to establish that their negatively-priced

7   sell orders would have been filled by a willing buyer on April 20 if those orders had been entered.

8   **E.**      **IF THE SAC IS NOT DISMISSED, THE IMMATERIAL AND IMPERTINENT**

9           **MATTER SHOULD BE STRICKEN.**

10          Immaterial, impertinent, or scandalous matter may be stricken from a pleading.  Fed. R.

11   Civ. Pro. 12(f).  The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and

12   money that must arise from litigating spurious issues by dispensing with those issues prior to trial.

13   *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  A matter is immaterial if it has

14   no essential or important relationship to the claim for relief pleaded.  *Barnes v. AT&T Pension Benefit*

15   *Plan*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010).  A matter is impertinent if it does not pertain and

16   is not necessary to the issues in question in the case.  *Id.*

17          **1.**      **Interactive Brokers' settlement of complaints.**

18          The SAC alleges that a competitor brokerage firm, Interactive Brokers ("IAB"),

19   received customer complaints arising out of the negative oil market on April 20, 2020, and that IAB

20   has "admitted" that it will "make[e] its customers whole," while "E*TRADE has failed and refused to

21   do the same."  (SAC ¶ 32.)  Settlement discussions are inadmissible to show fault and may be stricken

22   as immaterial and potentially prejudicial.  Fed. R. Evid. 408; *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40

23   (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994) (striking settlement discussions from complaint);

24   *Winkler-Koch Eng'g Co. v. Universal Oil Prods. Co.*, 79 F. Supp. 1013, 1019 (S.D.N.Y. 1947)

25   (striking allegations that defendant settled a similar claim with a stranger).  IAB's resolution of its

26   customers' complaints has no bearing on whether E*TRADE performed its obligations under the

27   Customer Agreement with Plaintiffs.  If this allegation is not struck, E*TRADE will be forced to

28   litigate whether IAB's customer contract contained the same terms as the Customer Agreement,

1    whether IAB's problem on April 20 was the same as E*TRADE's, and whether extraneous factors

2    influenced IAB's decision to settle.  E*TRADE will be prejudiced if the trier of fact erroneously

3    concludes that IAB has admitted liability and therefore E*TRADE also must be liable to Plaintiffs.

4    Paragraph 32 should be stricken.

5             **2.       E*TRADE's allegedly misleading statement regarding market liquidity.**

6             The SAC alleges that sometime after April 20, E*TRADE "misleadingly" told

7    investors that the negative price of the oil market on April 20 demonstrated a lack of active buyers and

8    that there was insufficient liquidity in the market to support exiting long positions.  (SAC ¶ 33.)  The

9    SAC fails to allege facts establishing that there was sufficient market liquidity in the last 22 minutes of

10   the trading session on April 20, 2020 to fill their negatively-priced sell orders.  Finally, the SAC does

11   not assert a misrepresentation claim, and therefore the allegation that E*TRADE's statement was

12   "misleading[]" is immaterial.  The matter is prejudicial because it attributes deception to E*TRADE.

13   *See, e.g., Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101, 1152-53 (C.D. Cal. 2003)

14   (striking allegations that bank was motivated by greed because allegations were immaterial and

15   prejudicial).  Paragraph 33 should be stricken.

16                                            **VI.**

17                                       **CONCLUSION**

18           The Customer Agreement does not obligate E*TRADE to provide Plaintiffs with

19   access to its trading system at all times, nor does it obligate E*TRADE to provide Plaintiffs with the

20   ability to enter orders to sell commodity futures at negative prices.  The SAC fails to state any claim

21   upon which relief can be granted.  The SAC should be dismissed without leave to amend.  In the

22   alternative, Paragraphs 32 and 33 should be stricken from the SAC.

23

24   DATED:  April 26, 2021              */s/ Stacey M. Garrett*
                                         STEPHEN YOUNG
25                                       BEN SUTER
                                         STACEY M. GARRETT
26                                       KEESAL, YOUNG & LOGAN
                                         Attorneys for Defendants
27                                       E*TRADE Securities LLC and E*TRADE
                                         Futures LLC
28

MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE,
MOTION TO STRIKE – Case No. 3:20-cv-5803-JSC
KYL4819-4644-6311.1