UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN WHITESIDES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> E*TRADE SECURITIES, LLC, et al., <br><br> Defendants. | Case No. 20-cv-05803-JSC <br><br> **ORDER RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Re: Dkt. No. 29 |

Three users of E*TRADE's electronic trading service allege that E*TRADE breached its customer agreement when it failed to process their orders as the crude oil futures market collapsed on April 20, 2020. Defendants E*TRADE Securities, LLC and E*TRADE Futures, LLC (collectively "E*TRADE") move to dismiss Plaintiffs' Second Amended Class Action Complaint ("SAC") for failure to state a claim for breach of contract.[1] (Dkt. No. 29.)[2] After carefully considering the parties' submissions, and having had the benefit of oral argument on June 17, 2021, the Court GRANTS Defendants' motion to dismiss Plaintiffs' SAC for failure to state a claim without leave to amend.

## BACKGROUND

**A. Second Amended Complaint Allegations**

E*TRADE is one of the largest online focused broker-dealers in the world. (SAC, Dkt. No. 28 ¶18.) Customers of E*TRADE's platform trade securities through a web-based application or by calling E*TRADE's help center. (*Id.* ¶ 1.) E*TRADE's platform allows retail investors to trade

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. Section 636(c). (Dkt. Nos. 6 and 9.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

oil futures contracts. (*Id.* ¶ 2.) A futures contract is effectively a promise to deliver a commodity at a certain time. (*Id.* ¶ 3.) The buyer of a futures contract takes on the obligation to buy and receive the underlying asset when the contract expires. (*Id.* ¶ 21.) The seller of a futures contract takes on the obligation to deliver the underlying asset at expiration. (*Id.*) However, nearly all retail investors trade commodity futures contracts without any expectation of receiving or delivering the underlying asset. (*Id.* ¶ 22.) These investors close out their positions prior to the expiration of the contract. (*Id.*) E*TRADE also allows customers to trade oil futures that are settled with cash instead of oil. (*Id.*) These futures are known as "e-mini futures." (*Id.*) Upon expiration, the value of "e-mini futures" converge with the value of regular oil futures. (*Id.*) The benchmark for oil futures is the contract on West Texas Intermediate ("WTI") crude oil delivered to Cushing, Oklahoma. (*Id.* ¶ 20.)

In early 2020, the global coronavirus pandemic caused a precipitous decline in demand for oil. (*Id.* ¶ 23.) In addition, on March 8, 2020, Russia and Saudi Arabia announced increases in oil production and Saudi Arabia announced price discounts. (*Id.* ¶ 24.) These announcements depressed crude oil prices. (*Id.*) On April 20, 2020, the day before the May 2020 WTI futures contracts expired, the price of these futures dropped precipitously. (*Id.* ¶ 30.) By the end of the day, the futures closed at a negative price of -$37.63 as investors became concerned that the cost to store these barrels of oil would be more than the oil was worth. (*Id.* ¶ 27.) When the price of these futures dropped below zero, E*TRADE's platform suffered a system failure. (*Id.* ¶ 31.) As a result of the system failure, the platform failed to display accurate prices for crude oil futures and did not allow users to close out their positions. (*Id.*) Prior to the system failure, it was known industrywide that oil futures could trade negative. (*Id.* ¶ 28.) The owner of the New York Mercantile Exchange sent a notice to its clearing-member firms on April 15, 2020, advising them how they could test their systems using negative prices. (*Id.* ¶ 29.) Furthermore, CME Group, Inc. warned on the day of the crash that the company's WTI futures had the potential to trade negative. (*Id.* ¶ 30.)

Plaintiffs, Benjamin Whitesides, Aziz Si Hadj Mohand, and Matthew Cheung, are customers of E*TRADE's trading platform who held "e-mini" oil futures contracts when the price fell below zero. (*Id.* ¶¶ 35, 41, 46.) Each Plaintiff claims that he immediately attempted to sell off

the contracts when the price fell below zero. (*Id.*) However, each Plaintiff alleges that he was unable to do so because of the system failure afflicting E*TRADE's platform. (*Id.*) Each Plaintiff alleges that he suffered substantial losses. (*Id.* ¶¶ 37, 43, 48.) E*TRADE's relationship with Plaintiffs is governed by a customer agreement (the "Agreement.") (*Id.* ¶¶ 12, 34, 39, 45.)

**B. Procedural Background**

On August 18, 2020, Plaintiffs filed a class action complaint against E*TRADE Securities, LLC and E*TRADE Futures, LLC, alleging causes of action for breach of contract, breach of the duty of good faith and fair dealing, negligence, gross negligence, and a claim under the California Unlawful Competition Law ("UCL"). (Dkt. No. 1.) Defendants then moved to dismiss. (Dkt. No. 12.) However, the parties subsequently stipulated to withdraw the motion to dismiss and allow Plaintiffs to file an amended complaint. (Dkt. Nos. 13, 14.)

Plaintiffs filed the First Amended Complaint ("FAC") on November 12, 2020, which eliminated the claims for breach of contract and breach of duty of good faith and fair dealing, but maintained the claims for negligence, gross negligence, and violation of UCL. (Dkt. No. 16.) Defendants again moved to dismiss, or in the alternative, to strike certain portions of the pleading. (Dkt. No. 17.) The Court thereafter granted Defendants' motion to dismiss without leave to amend for the ordinary negligence claim but with leave to amend as to Plaintiffs' other claims. (Dkt No. 27.)

Plaintiffs then filed the now operative SAC, which repleads the claims for breach of contract, breach of the duty of good faith and fair dealing, and violation under the UCL, but does not include any negligence claims. Defendants again moved to dismiss, or in the alternative, to strike certain portions of the pleading. (Dkt. No. 29.) Defendants' motion to dismiss is now fully briefed, and the Court heard oral argument on June 17, 2021.

**DISCUSSION**

In the SAC, Plaintiffs pivoted from negligence claims to breach of contract and breach of the covenant of good faith and fair dealing claims; however, in their motion to dismiss opposition, Plaintiffs withdrew their breach of the covenant and fair dealing claim and their UCL claim. (Dkt. No. 31 at 6 n.1.) Thus, the sole claim before the Court is a breach of contract claim based on the Agreement.

**A. Breach of Contract**

To state a claim for breach of contract under New York law, the plaintiff must show "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach."[3] *Canzona v. Atanasio,* 118 A.D.3d 837, 839 (N.Y. App. Div. 2014).

Plaintiffs allege that E*TRADE breached the Agreement by not permitting them to trade their shares on April 20, 2020 when the price of crude oil went negative. In particular, as to the breach they allege as follows:

> 68. E*TRADE breached its Customer Agreement by, among other things, (i) failing to provide adequate technological systems necessary to perform under these contracts; (ii) failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; (iii) failing to provide access to its trading services in a timely manner and (iv) otherwise permitting the Outage to occur and thereby prohibiting the parties from performing in a timely manner (or at all) under the contracts.

(Dkt No. 28 at 20 at ¶ 68.)

Defendants contend that the claim fails because Plaintiffs do not identify any Agreement provision which E*TRADE breached. Under New York law, a necessary element of a breach of contract claim is the identity of the contract provision allegedly breached. *Barker v. Time Warner Cable, Inc.,* 83 A.D.3d 750, 752 (N.Y. App. Div. 2011.) Further, to state a claim for breach of contract, a plaintiff must allege facts that plausibly support the existence of contractual terms that were allegedly breached by the defendant's conduct. *See Press Rentals Inc. v. Genesis Fluid Sols. Ltd.*, No. 5:11-CV-02579 EJD, 2013 WL 485654, at *4 (N.D. Cal. Feb. 6, 2013); *see also Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) ("to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief").

---

[3] The Court previously held that "New York Law governs all aspects of parties *contractual* rights and liabilities." (Dkt. No. 27 at 5:9-10) (emphasis added).

4

While the SAC attaches the Agreement, it does not identify any Agreement provision which required Defendants to offer trading services at all times such that its failure to do so on April 20, 2020 constitutes a breach of contract. Instead, the only Agreement provisions the SAC identifies are first, that "E*TRADE offers a variety of ways to access the Account, including telephone, online, mobile application and interactive voice response services." (Dkt. No. 28 ¶ 67.) And, second, "E*TRADE's website and mobile application may make available 'Market Data' which is defined as 'all data distributed by E*TRADE regarding bids, offers and market transactions and all information based on any such data." (*Id.*) Neither the SAC nor Plaintiffs' opposition explains how E*TRADE's trading system failure on April 20, 2020 was a breach of either provision. Neither provision supports an inference of the existence of a promise to offer trading services at all times, or at least offer trading services when the price of crude oil goes negative.

In their opposition and at oral argument Plaintiffs identified the Agreement's definition of Service as the breached Agreement provision. The Agreement defines Service to "mean the securities brokerage, commodity futures brokerage, financial, and other services that E*TRADE may offer from time to time." (Dkt. No. 28 at 28.) The plain language of that definition does not obligate E*TRADE to provide trading services at all times and Plaintiffs do not otherwise explain how that definition gave rise to such an obligation. It is not plausible that it did.

Plaintiffs' failure to identify an Agreement provision that required E*TRADE to give Plaintiffs the ability to execute trades at all times is unsurprising given that the Agreement specifically states: "The Account Holder understands and agrees that E*TRADE *does not guarantee uninterrupted access to the Service or any feature of the Service.*" (Dkt. No. 28 at 41, ¶11) (emphasis added). The Agreement thus specifically warns that E*TRADE is not promising that its brokerage services will be available at particular times, in contrast to Plaintiffs' unsupported theory that Defendants promised that the brokerage services would be available at all times, or, at least on April 20, 2020. Plaintiffs' attempt at oral argument to limit the reach of paragraph 11 to unavailability due to maintenance or repair of the System is unpersuasive. The first sentence of the paragraph is unambiguous and unequivocal: "E*TRADE does not guarantee uninterrupted access to the Service or any feature of the Service." (*Id.*) Plaintiffs have thus failed

to allege facts that support an inference that E*TRADE breached the Agreement by failing to offer uninterrupted access to the Service. *See Lowry v. EMC Mortg. Co.,* 710 Fed. Appx. 752 (9th Cir. 2018) (district court properly dismissed breach of contract claim because plaintiffs "failed to identify a contract provision" imposing legally enforceable obligations upon defendants).

In their written opposition Plaintiffs argue for the first time that E*TRADE made false and misleading statements on its website regarding the services it provided. (Dkt. No. 31 at 14.) The Court declines to consider this argument which is untethered to the SAC's allegations. *See Campanelli v. Bockrath,* 100 F.3d 1476, 1479 (9th Cir. 1996) (holding that when evaluating a Rule 12(b)(6) motion to dismiss courts may only review the contents of the plaintiffs' complaint). In any event, Plaintiffs do not identify any website statements, let alone plausibly false and misleading statements. The breach of contract claim fails.

### B. Leave to Amend

If a court grants a Rule 12(b)(6) motion, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

The Court dismisses Plaintiffs' contract claim without leave to amend as amendment would be futile. This is Plaintiffs' third iteration of their complaint. They omitted the contract claim from the FAC and only reasserted it after deciding not to pursue their negligence theory. Despite attaching the Agreement to the SAC, neither the SAC nor their written opposition identifies any contract provision that E*TRADE plausibly breached. Further, their opposition ignored paragraph 11 of the Agreement even though it was prominently raised in the motion to dismiss. The Court nonetheless gave Plaintiffs the opportunity to address the contract language at oral argument, but Plaintiffs did not persuade the Court that paragraph 11 does not defeat their claim. And the opposition's vague reference to a website representation is insufficient given that in three different versions of the complaint, two written oppositions, and two oral arguments they have failed to identify any website statements that obligated E*TRADE to provide Plaintiffs with uninterrupted access to the Trading Service. Accordingly, the motion is granted, and leave is denied.

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is granted without leave to amend. Defendants' request for judicial notice is denied as moot. A separate judgment will issue.

This Order disposes of Docket No. 29.

**IT IS SO ORDERED.**

Dated: June 24, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge